IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BETTY BULLARD, | § | |
| Plaintiff, | § | |
| | § | CASE NO. |
| vs. | § | |
| | | CV-2:05-cv-1217-MEF |
| UNUMPROVIDENT CORPORATION; | § | |
| UNUM LIFE INSURANCE COMPANY | | |
| OF AMERICA, et al., | § | |
| Defendants. | § | |
| | § | |

**UNUM LIFE INSURANCE COMPANY OF AMERICA'S
BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

Defendant Unum Life Insurance Company of America ("Unum Life") files this brief in support of its motion for summary judgment as to all claims and allegations, separately and severally, asserted against it in Counts One through Six of the Complaint of Betty Bullard, as last amended.  In addition to the pleadings and other papers on file with the Court, this motion is based upon the Affidavit of Teresa Ward ("Ward Affidavit") and other supporting materials filed contemporaneously herewith.

## I.  INTRODUCTION

Unum Life is entitled to summary judgment in its favor with respect to the claims of breach of contract, bad faith, fraud, suppression, misrepresentation and conspiracy set

- 1 -

forth against it in Counts One through Six of the Plaintiff's Complaint, as last amended. A review of the facts in this case reveals that Unum Life undertook a thorough review of Plaintiff's claim and properly determined that she did not qualify for benefits under the terms of the subject group policies.

## II.  NARRATIVE SUMMARY OF UNDISPUTED FACTS

### A.  Background Information

1.    The plaintiff, Betty Bullard, is a 51 year-old retired secretary. (March 8, 2006 Deposition of Betty Bullard ("Bullard Depo.") at 10).  She testified that she graduated from high school and attended college for a couple semesters.  (Bullard Depo. at 78-79). According to her Complaint, she worked as an administrative assistant or secretary for the Annuity Board of the Southern Baptist Convention ("ABSBC") through May 21, 2004. (Complaint at ¶ ¶ 18 and 19).  She claims that she ceased working on that date due to disabilities caused by physical ailments including, among others, arthritis, narcolepsy, colitis, back problems, fatigue, dizziness and difficulty concentrating.  (*Id*. at ¶¶ 17 and 19).

2.    According to testimony of Ms. Bullard and documentation provided by the ABSBC, her material and substantial job duties as a secretary included the following: prepare office correspondence (letters), prepare materials for conferences (both out of town and in office), prepare weekly requisitions and maintain financial records for the office, serve as point of contact for guests entering the office by phone or in person, assist in preparing for office related meetings, maintain databases for the office, and attend

conferences/events where assistance is needed. (Bullard Depo. at 131 and 147-148; State Board of Missions Job Description ("Job Description") (UACL00616), a copy of which is being filed contemporaneously herewith).

3.   The Job Description notes that "a minimum of eighty percent of the work day is spent seated at a desk." (*Id.*). Ms. Bullard admitted that, at times, she spent as much as ninety percent of her work days seated at a desk. (Bullard Depo. at 134). Regarding her job duties, she added that they also included assisting with the presentation of three to four out-of-town conferences per year sponsored by her employer and that these conferences required heavy lifting and a lot of standing. (*Id.* at 131-134). However, she had not participated in one of these out-of-town conferences since 2002. (*Id.*).

4.   Ms. Bullard maintains that she is unable to perform any of the duties of her occupation. (Bullard Depo. at 169-197). Specifically, she contends that her physical ailments prevent her from performing the typing, standing and lifting necessary to perform these duties. (*Id.*). She contends that she has been instructed by her rheumatologist not to sit for more than 30 minutes and not to stand for more than 30 minutes at a time. (*Id.* at 197).

5.   She testified that pain in her hands, neck and back prevents her from typing and that arthritis and degenerative joints in her back and hips prevent her from sitting or even performing such tasks as holding the phone on a regular basis. (Bullard Depo. at 172-173). She claims that she cannot assist in preparing materials for meetings that are office related because of the standing and lifting involved in preparing the packets for these meetings. (*Id.* at 171-172). She contends that sometimes the packets that she had

to prepare included as many as 100 sheets of paper. (*Id.* at 172). She further contends that she could not assist with even in-office conferences because she would be required to sit through meetings which could run an hour or two in length. (*Id.* at 197).

6.    Ms. Bullard claims that she has had sleep disturbance problems since she was a child and that she has suffered from headaches, jaw pain, neck pain, ear pain, and face pain for over 20 years. (Bullard depo. at 207 and 214). She admits that her TMJ problems, standing alone, do not keep her from performing the duties of a secretary. (*Id.* at 262). She testified that she has had sleep apnea for approximately ten years and narcolepsy for ten to fifteen years. (*Id.* at 233-234). There is no dispute that she has worked during these time periods.

7.    She also admitted that her colitis is the type that responds well to medication. (*Id.* at 217-220 and 253-254). Similarly, she testified that her diverticulitis is well managed and that neither her colitis nor diverticulitis, standing along, prevent her from performing the duties of a secretary. (*Id.* at 253-254).

8.    She testified that she had a discectomy and anterior cervical fusion at C4-5 approximately five years ago and does not maintain that her neck problems, standing alone, prevent her from performing the duties of a secretary. (Bullard Depo. at 210-211 and  256). She does not presently plan any further surgeries for her neck problems. (*Id.* at 257). While she maintains that she has foot problems and shoulder problems, she similarly admits that those problems, standing alone, do not prevent her from performing her duties as a secretary. (*Id*. at 257 and 261).

9.    She maintains that she has four bulging disks in her back caused by degenerative disk disease, but that no doctor has yet recommended surgery.  (*Id.* at 258). She does not know whether the four bulging disks in her back, standing along, prevent her from performing the duties of a secretary.  (*Id.* at 261).  She claims that she is on an anti-inflammatory for fibromyalgia, but admits that fibromyalgia does not, standing alone, keep her from performing the duties of a secretary. (*Id.* at 263 and 274).  While she claims that her problems with arthritis prevent her from performing the duties of a secretary, she admits that she is physically capable of standing, walking, sitting, and lifting certain amounts.    (*Id.* at 259 and 286-287).    Additionally, she admits that rheumatological studies by Dr. Thornbury were negative. (*Id.* at 283; February 26, 2004 Medical Record of Dr. Thornbury (UACL00161)).

10.  Despite her alleged disabling condition and alleged resulting inability to work, she testified that she has worked part-time, since 2002, and continues to work part-time as a testing proctor for Sylvan Learning Centers. (Bullard Depo. at 102).

11.    Plaintiff maintains that she was covered under a benefits plan offered by the ABSBC and obtained disability insurance under a group disability insurance policy issued by Unum Life to the ABSBC.  (Complaint at ¶ 16).  The policy had an effective date of January 1, 2002.   (Affidavit of Teresa Ward). A true and correct copy of the disability policy, Policy No. 111604 001 (the "Disability Policy"), is attached as Exhibit A to the Ward Affidavit, which is being filed contemporaneously herewith.

12.  In addition to disability insurance coverage, Ms. Bullard contends that she is owed benefits under a group life insurance policy insuring the lives of certain ABSBC

employees. (Complaint at ¶¶ 16 and 20).   A copy of the Summary of Benefits under the subject group life insurance policy issued by Unum Life, Policy No. No. 552580 (the "Life Policy"), is attached as Exhibit B to the Ward Affidavit.  Specifically, Ms. Bullard contends, in paragraph no. 20 of her Complaint, that she is entitled to "life premium waiver." (Complaint at ¶ 20).

13.    Ms. Bullard testified that she filed a disability claim with the Social Security Administration and that her claim was denied.  (Bullard Depo. at 32-34)  In fact, she admitted that, after reviewing her medical records, the Social Security Administration advised, by letter dated August 8, 2005, that it "determined that [Ms. Bullard's] condition is not severe enough to keep [her] from working." (Bullard Depo. at 34; August 8, 2004 Social Security Denial Letter, (BULL0881) a copy of which is being filed contemporaneously herewith).   Ms. Bullard testified that she has not appealed this decision.  (*Id.* at 34).

14.    Despite the fact that she last worked for the ABSBC in either March or May of 2004,[1] Ms. Bullard testified that her employer paid her regular salary[2] through May 31, 2005 and, thereafter, has continued to pay her $1,000.00 per month and continues to pay her health insurance premiums.  (Bullard Depo. at 82-84 and 87-91).   She has not sought further employment, aside from her job at Sylvan, since May of 2004.  (*Id.* at 141).

---

[1] She also testified that her employer paid off, on her behalf, a garnishment obligation that arose from a Chapter 13 Bankruptcy that she filed in 2001.  (Bullard Depo. at 87-88).

[2] She testified that her regular salary, as of 2003, was $18,108.00 per year.  (Bullard Depo. at 105).  Thus, based on the terms of the Disability Policy, her maximum benefit amount would be approximately $905 per month, assuming no deductible sources of income. (Disability Policy, Exhibit A to Ward Affidavit, at LTD-BEN-1 and LTD-BEN-2).

15.    Ms. Bullard initially claimed that she paid for her insurance coverage, but subsequently admitted that an employment statement submitted by the ABSBC accurately reflects that one hundred percent of the premiums were paid by her employer. (Bullard Depo. at 51-54; March 31, 2004 Employer's Statement (UACL00614 - 615), a copy of which is being filed contemporaneously herewith).

**B.  Terms and Conditions of the Policies**

16.    The Disability Policy issued to the ABSBC provides a monthly benefit equal to 60% of monthly earnings to a maximum benefit of $7,500.00 per month, less deductible sources of income such as benefits under the Social Security Act.  (Disability Policy, Exhibit A to Ward Affidavit, at LTD-BEN-1 and LTD-BEN-2). It further states that the maximum period of payment is to age 65 if the insured is less than age 60 at the time of disabilty.  (*Id.* at LTD-BEN-5 and LTD-BEN-6).

17.    The definition of disability contained in the Disability Policy states that an insured is disabled "**when Unum determines**" that: "you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and - you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury." (*Id.* at LTD-BEN-1 (emphasis added)). The Disability Policy states that "[l]imited means what you cannot or are unable to do" and that "material and substantial duties" means duties that "are normally required for the performance of your regular occupation - and cannot be reasonably omitted or modified."   (*Id.* at GLOSSARY-2). The Disability Policy further states that "after 24 months of payments, you are disabled "**when Unum determines**" that due to the same sickness or injury, you

are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience." (*Id.* at LTD-BEN-1 (emphasis added)).

18.     Significantly, the Disability Policy states that benefit payments will stop on the date that an insured fails to submit proof of continuing disability.  (*Id.* at LTD-BEN-6).  It further states that Unum Life may require proof of continuing disability and that a claim may be denied upon failure to submit appropriate proof.  (*Id.* at LTD-CLM-1). Thus, an insured has a contractual obligation to submit continuing proof of disability.

19.     Regarding Ms. Bullard's claim for waiver of life insurance premiums, the Life Policy provides coverage to certain classes of employees, including provisions for the waiver of premiums on life insurance coverage in the event a covered employee becomes "totally disabled" prior to age sixty and has been unable to work for nine months. (Life Policy, Exhibit B to Ward Affidavit, at EMPLOYEE-3).   "Totally Disabled" is defined to mean that "you are prevented from performing the usual tasks of any occupation for which you are reasonably suited by training and education in such a way as to procure and retain employment."  (Life Policy at GLOSSARY-4).  The Life Policy further provides that Unum Life will deny a claim if the insured does not provide appropriate proof of claim information.  (*Id.* at AD&D-CLM-1).  Unum Life denies that Ms. Bullard is entitled to any life premium waiver benefit under the Life Policy.

## C.  Submission of Plaintiff's Claim under the Policies.

20.     On or about March 25, 2004, Ms. Bullard submitted claim form documents, including a Claimant's Statement. (March 25, 2004 Claimant's Statement (UACL00022 -

23)), a copy of which is being filed contemporaneously herewith; Ward Affidavit). Ms. Bullard could not explain why her claim form was signed and dated March 25, 2004, but listed a date of disability of May 21, 2004. (Bullard Depo. at 108). While the documentation indicates that she worked through May of 2004, she was uncertain of her last day at work. (*Id*. at 114).

21.    In support of her claim for benefits, Ms. Bullard also submitted Attending Physician Statements ("APS") that had been completed by various attending physicians. (Bullard Depo. at 134-135). She admitted that her orthopaedist, Dr. Daniel Thornbury, noted, on his April 9, 2004 APS, that she was released to work in her occupation and stated that she had no restrictions and was capable of "activity as tolerated." (Bullard Depo. at 135; April 9, 2004 Statement of Dr. Thornbury (UACL00024)). She also admitted that her sleep disorder specialist, Dr. Reuben Richardson, listed no restrictions or limitations on an April 5, 2004 APS that he completed (Bullard Depo. at 136; April 5, 2004 Statement of Dr. Richardson (UACL00025)), and that her TMJ specialist, Dr. Albert Foy, also noted "none" when asked to identify Ms. Bullard's restrictions and limitations. (Bullard Depo. at 137-138; March 29, 2004 Statement of Dr. Foy (UACL00623)).

## D.  Unum Life's Review of Ms. Bullard's Claim

22.    As part of its claim review process, Unum Life reviewed all documents submitted by Ms. Bullard, including claim forms and attending physician statements. (Ward Affidavit). Unum Life also requested and reviewed medical records from Ms. Bullard's physicians. (*Id.*).

23.     While Ms. Bullard's family doctor, Rachel McKinney, M.D., stated, in her April 1, 2004 Attending Physician Statement that Ms. Bullard "is unable to do her job secondary to extreme fatigue, ulcerative colitis (diarrhea) and anxiety with panic attacks," an initial review of Ms. Bullard's medical records by an in-house registered nurse, Pam McMillan, RN, determined that the records did not support restrictions and limitations noted by Ms. Bullards' physician.  (April 1, 2004 Attending Physician Statement of Dr. McKinney (UACL00038); August 17, 2004 Clinical Review Notes (UACL00165-167)).

24.     After thoroughly reviewing Ms. Bullard's medical records, an in-house licensed physician, Dr. Richard D. Vatt, similarly determined, on 8/18/04, that available information did not provide a supportable explanation as to why Ms. Bullard could not return to work.  (August 18, 2004 Clinical Review Notes (UACL00168-170)).

25.     On September 1, 2004, Unum Life advised Ms. Bullard, by letter, that the records provided did not support her claim of disability.  (September 1, 2004 Letter to Ms. Bullard (UACL00186-189)).  Among other things, the letter noted that an arthitis workup was reported to be negative; that she had been diagnosed with narcolepsy, but that the treating physician that performed a sleep study did not identify naracolepsy as a diagnosis; and that certain treatment records predated the alleged date of disability and failed to note recommendations of additional testing as would be expected if a patient were not responding to the recommended treatment plan.  (*Id.*).  The letter encouraged Ms. Bullard to submit any addition information in support of her alleged disability and further advised of her right to appeal the denial.  (*Id.*).  A similar letter was sent on

September 9, 2004 denying Ms. Bullard's claim for waiver of premium under the Life Policy. (September 9, 2004 Letter to Ms. Bullard (UACL00803 - 805)).

26.    Following the denial, Ms. Bullard's family doctor, Dr. McKinney, wrote a further letter supporting Ms. Bullard's disability and noting worsening inflammatory arthritis and colitis.    (October 25, 2004 Letter from Dr. Rachel McKinney (UACL00200)).    Ms. Bullard appealed the denial of her claim on November 3, 2004. (October 29, 2004 Letter from Ms. Bullard (UACL00207)).

27.    During the appeal process, further records from Ms. Bullard's treating physicians were relayed and reviewed by in-house medical personnel. (Ward Affidavit; November 11, 2004 Letter from Ms. Bullard (UACL00301)).    In fact, a medical response memo completed by Latisha Toney, RN, on November 30, 2004 documents a review of all medical records, including additional records submitted during appeal.    (November 30, 2004 Medical Response (UACL00353-354)).    The report notes  that "the identified conditions have been present for a significant amount of time prior to the [date of disability], but that the medical documentation "would indicate a reasonable expectation of some functional loss." (*Id.*).    The report further notes that "appropriate restrictions/limitations will be deferred to doctoral level review."  (*Id.*).

28.    Inasmuch as Ms. Bullard submitted, on appeal, records from her therapist, Unum Life had the same reviewed by an in-house psychologist.  On December 14, 2004, a clinical note by David Goldsmith, PhD, reflects that he reviewed Ms. Bullard's records and found no reasonable basis for concluding that psychological factors changed around Ms. Bullard's date of disability or contributed to a loss of functional capacity. (December

14, 2004 Clinical Note (UACL00365-367)).  The note further reflects that Dr. Goldsmith attempted unsuccessfully to contact Ms. Bullard's therapist to discuss inadequacies in his records.  (*Id*.).  It should be noted that Ms. Bullard stipulated during her deposition that she is not making a claim on the basis of the diagnosis of a mental health condition and, thus, further discussion of Dr. Goldsmith's note is unnecessary.  (*See, e.g.*, Bullard Depo. at 223).

29.    On February 2, 2005, Dr. Susy L.L. Vergot, an in-house certified family practicioner, opined, after reviewing Ms. Bullard's updated records, that the clinical data supported a loss of some functional capacity, when considered as a whole person, that would impose restrictions and limitations.  (February 2, 2005 Review of Dr. Susy L.L. Vergot (UACL00319-320)).  In fact, Dr. Vergot specified the following restrictions and limitations: "avoid repetitive bending/twisting at the waist, avoid prolonged standing/walking, change position as needed for comfort, avoid above the shoulders work, close and readily available restroom facilities, occasional lifting up to 20 pounds, frequent lifting up to 10 pounds, no lifting above shoulders, avoiding lifting while bending at the waist, avoid fine acticulate movements of the hands when arthritis flares in hands."  (*Id.*).

30.    On February 7, 2005, Dr. Vergot wrote Ms. Bullard's treating physician, Dr. McKinney, and asked Dr. McKinney if she agreed with the above-referenced restrictions and limitations.  (February 7, 2005 Letter to Dr. McKinney (UACL00388 - 389)).  Dr. McKinney responded that she felt that Dr. Vergot "adequately listed her limitations from her ulcerative colitis and her rheumatoid arthritis," but mentioned that

reported fatigue from fibromyalgia and narcolepsy were not her area of expertise. (February 22, 2005 Letter from Dr. McKinney (UACL00417)).  Dr. Vergot reviewed the letter and documented her conclusion that Dr. McKinney's response had not altered her February 2, 2005 Review. (February 28, 2005 Review by Dr. Vergot (UACL00408)).

31.    Ms. Bullard's claim was also submitted for a vocational review by a vocational specialist.  A vocational rehabilitation report by Shannon O'Kelley dated February 8, 2005 concluded that Ms. Bullard's occupation could be performed within the restrictions and limitations provided by Dr. Vergot in the absence of an arthritis flare. (February 8, 2005 Vocational Review (UACL00383-385)).

32.    In March of 2005, Ms. Bullard advised Unum Life of treatment that she received from a rheumatologist, Dr. Donna Paul, and forwarded to Unum Life an Attending Physician Statement from Dr. Paul dated August 27, 2004.  (Bullard Depo. at 67-68).  Dr. Paul's records were requested and reviewed by a registered nurse, Laura Godwin, RN, on March 25, 2005 and by Dr. Vergot on March 29, 2005.  (March 2005 Clinical Review (UACL00514-515)).  In the Clinical Review report, Dr. Vergot opined, after reviewing those further records, that it appeared that Mr. Bullard was then having a flare with a slightly elevated sed rate and an elevated CRP.  (*Id.*).  However, improvement with a new treatment regime was noted and Dr. Vergot assigned restrictions and limitations identical to those she had previously assigned on February 2, 2005.  (*Id.*).

33.    On April 6, 2005, Unum Life advised Ms. Bullard that the denial of her claims for long term disability benefits and waiver of life premiums was being upheld. (April 6, 2005 Letter to Ms. Bullard (UACL00574-579)).

34.     Ms. Bullard filed the present lawsuit on November 15, 2005 in the Circuit Court of Montgomery County, Alabama and it was subsequently removed to this Court. While claims were initially asserted against a third defendant, Genex Services, Inc., those claims were dismissed by this Court's Order of January 24, 2006.  (January 24, 2006 Order, Document 8).    In her Complaint, Ms. Bullard sets forth claims for breach of contract, bad faith, fraud, suppression, misrepresentation and conspiracy. (Complaint).

35.     Regarding her breach of contract claims, Ms. Bullard testified that she understands that the policies are contracts, that the parties are bound by the terms of the contracts, and that the language of the contracts governs the obligations of the parties. (Bullard Depo. at 306-307).   She further acknowledged that she understands that she had to meet the definitions of disability in the policies in order to be entitled to benefits under the policies.   (*Id.*).   She claims that she requested, but did not receive, copies of the policies from her employer in 2002.  (*Id.* at 307).   While she testified that she received copies of the policies from her employer after filing her claim, she admits that she still has not read the policies.  (*Id.* at 305-306).    She further admits that she never asked Unum Life for copies of the policies.  (*Id.* at 60 and 308).

36.     Regarding her fraud claims, Ms. Bullard alleges, at paragraph 59 of her Complaint, that "defendants continuously represented to the plaintiff that defendants had provided plaintiff with a disability policy that would pay monthly disability benefits in the event the plaintiff were to become disabled and was unable to perform the duties of her occupation while said disability policy was in force."  (Complaint at ¶ 59).

37.     However, Ms. Bullard admits that she has never heard any representations about either of her policies from any employee or representative of Unum Life or UnumProvident.  (*Id.* at 319).  She further admits that she has no evidence that Unum Life or UnumProvident intended at the time she purchased the policies not to perform in accordance with the terms of the policies.  (*Id.* at 351-352).  Ms. Bullard testified that she has no evidence that Defendants intended to deceive her at the time when she was provided coverage under the subject policies. (*Id.* at 353-354).   Nor does she have any evidence that Unum Life or UnumProvident withheld information in an attempt to deceive her at the point that she received coverage under the policies.  (*Id.* at 354-355).

38.     Ms. Bullard does allege that employees of the ABSBC made certain representations regarding coverage under the policies, including a contention that they told her that if she paid her premiums and her doctors said she was disabled, then she would receive benefits.   (Bullard Depo. at 322-347). She further maintains that the ABSBC provided documentation outlining her coverage.  (*Id.* at 59-61).   However, documentation that Ms. Bullard produced, consisting of a three-page printout copyrighted by ABSBC, does not contain the alleged coverage representations.   (May 8, 2002 Printout entitled Employer Security Program).  Indeed, it makes no reference whatsoever to the opinions of treating physicians or medical review of claims.  (*Id.*).

## III.  ARGUMENT

For the reasons set forth herein, Unum Life is entitled to summary judgment in its favor with respect to the claims of breach of contract, bad faith, fraud, suppression,

misrepresentation, and conspiracy set forth against it in Counts One through Six of Ms. Bullard's Complaint, as last amended.

## A.  Plaintiff's Breach of Contract Claims Must Fail

Based upon the foregoing, together with the undisputed terms and conditions of the Disability and Life Policies, Ms. Bullard's breach of contract claims lack merit and should be dismissed as a matter of law.  In order to prevail on a claim for breach of contract under Alabama law, a plaintiff must establish: (1) a valid and enforceable contract; (2) the terms and conditions of the contract; (3) a breach of the contract; and (4) damages.  *See*, *e.g.*, *Whaley v. Sony Magnetic Products, Inc.*, 894 F. Supp. 1517, 1526 (M.D. Ala. 1995).

In this case, Ms. Bullard simply failed to meet the definition of disability under either the Disability Policy or the Life Policy.   She simply cannot show, in light of her own testimony, the aforementioned opinions of Drs. Vatt and Vergot, the vocational review, and the opinions of her own physicians, including those reflected in Attending Physician Statements completed by Drs. Thornbury, Richardson and Foy, that she is unable to perform the material and substantial duties of her occupation as a secretary. Indeed, Ms. Bullard testified that she understands that the policies are contracts and that the parties are bound by the terms of the contracts, and that the language of the contracts governs the obligations of the parties.   (Bullard Depo. at 306-307).    She further acknowledged that she understands that she had to meet the definitions of disability in the policies in order to be entitled to benefits under the policies.  (*Id.*).

Taken in their totality, Ms. Bullard's admissions, when read in light of the undisputed terms and conditions of the Disability and Life Policies, require the conclusion that Ms. Bullard is entitled to no benefits under the terms of the subject policies. Therefore, Unum Life is entitled to summary judgment in its favor with respect to Ms. Bullard's breach of contract claims.

## B.  Plaintiff's Bad Faith Claims are Without Merit.

Ms. Bullard's bad faith claims should not go to the jury. There can be no meritorious claim that Defendants did not conduct a thorough review of her claim or that there was no arguable reason for the denial of her claim. The evidence in this case reflects that Ms. Bullard's file was extensively reviewed by three registered nurses, a psychologist, two physicians and a vocational rehabilitation specialist. Additionally, in-house medical personnel contacted Ms. Bullard's medical providers during the claim evaluation process. The previously discussed reviews of those specialists clearly support the decision that Plaintiff does not meet the definition of disability under the Disability and Life Policies.

Under Alabama law, a plaintiff alleging bad faith must show (1) that there was an insurance contract between the parties; (2) an intentional refusal to pay the insured's claims; (3) the absence of any reasonably legitimate or arguable reason for that refusal; (4) the insurer's actual knowledge of the absence of any legitimate or arguable reason; and (5) if the intentional failure to determine the existence of a wrongful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim. *Smith v. MBL Life Assurance Corp.*, 589 So.2d 691, 697 (Ala. 1991) (quoting *National Sec. Fire & Cas. Co. v. Bowen*, 417 So.2d 179, 183

(Ala. 1982)).  Additionally, "[t]o prove a bad faith claim, a plaintiff must go beyond merely showing non-payment; *i.e.*, it is incumbent on the plaintiff to show that the insurance company had no legal or factual defense to the claim."  *Emanuelsen v. State Farm Auto Ins. Co.*, 651 So.2d 29, 31 (Ala. Civ. App. 1994).  Furthermore, a plaintiff must show that the insurer had actual knowledge that it had no legitimate or arguable reason to deny the claim. *Thomas v. Principle Fin. Group*, 566 So.2d 735 (Ala. 1990).  In *Thomas*, the court noted that the term "actual knowledge" implies conscious wrongdoing and noted that bad faith "is not simply bad judgment or negligence.  It imports a dishonest purpose and means a breach of known duty, *i.e.*, good faith and fair dealing, through some motive of self-interest or ill will." *Thomas*, 566 So.2d at 741.

The Alabama Supreme Court has also held as follows: "When a claim is 'fairly debatable' the insurer is entitled to debate it, whether the debate concerns a matter of fact or law."  *American General Life & Acc. Ins. Co. v. Lyles*, 540 So.2d 696, 698 (Ala. 1988). *See also, Waldon v. Cotton States Mut. Ins. Co.*, 481 So.2d 340, 341 (Ala. 1985) (noting that "[a]s the history of Alabama's bad faith cases amply demonstrates, this Court with purposeful design, has restricted the application of the bad faith doctrine to those rare and extreme cases where the insurance carrier, without debatable excuse, either fails to process a claim or, upon processing, fails to pay a claim for benefits as provided by the policy.").

In this case, Unum Life relied upon the material in the claim file, including plaintiff's medical records and in-house reviews of the same by qualified medical personnel.  Significantly, though noting restrictions and limitations based upon Ms.

Bullard's condition, a thorough review found that she was still capable of performing the duties of her occupation within those restrictions and limitations.

The denial decision is also supported by records from Ms. Bullard's own physicians, including Dr. McKinney's February 22, 2005 letter advising that she felt that Dr. Vergot "adequately listed her limitations from her ulcerative colitis and her rheumatoid arthritis." (February 22, 2005 Letter from Dr. McKinney (UACL00417)). Additionally, Ms. Bullard's orthopaedist, Dr. Daniel Thornbury, noted, on his April 9, 2004 APS, that she was released to work in her occupation and stated that she had no restrictions and was capable of "activity as tolerated." (Bullard Depo. at 135; April 9, 2004 Statement of Dr. Thornbury).  Her sleep disorder specialist, Dr. Reuben Richardson, listed no restrictions or limitations on an April 5, 2004 APS that he completed (Bullard Depo. at 136; April 5, 2004 Statement of Dr. Richardson), and her TMJ specialist, Dr. Albert Foy, also noted "none" when asked to identify Ms. Bullard's restrictions and limitations. (Bullard Depo. at 137-138; March 29, 2004 Statement of Dr. Foy).

In *Richter v. Fortis Benefits Insurance Company*, 41 F. Supp. 2d 866 (S.D. Ill. 1998), the plaintiff claimed to be disabled by reason of depression from performing his job and filed suit when his claim for benefits was denied, allegedly on improper grounds. Specifically, plaintiff argued that the decision to deny benefits should have been based upon the opinion of a physician.  The court disagreed after finding that the defendant insurer had requested the plaintiff's records and submissions and had them reviewed by a registered nurse, who served as a clinical review specialist for defendant, and by defendant's income replacement specialist.  Thus, the court found that defendant's denial

of benefits was based upon a thorough review of plaintiff's records and submissions. *Richter*, 41 F. Supp. at 870. *See also, O'Connor v. Equitable Life Assurance Society*, 592 F. Supp. 595 (N.D. Miss. 1984) (holding that defendant had no obligation to ask plaintiff for additional medical information or for an examination by a physician of defendant's choice before stopping benefits).

The facts in the present action are similar, if not stronger given the number of medical reviews undertaken by physicians in the present case, to the facts in the *Richter* case. Like the insurer in *Richter*, Unum Life relied upon the plaintiff's medical records and the results of medical reviews and, based upon their content, had a debatable reason for the denial of Plaintiff's claim for further benefits.

As is set forth above, the evidence shows that Plaintiff's claim was subjected to a thorough review and that her claim was, at best, debatable. Because Alabama law is clear that, where a claim is "fairly debatable," the insurer is entitled to debate it, Unum Life is entitled to summary judgment on Plaintiff's bad faith claims.

## C.  Plaintiff's Fraud, Suppression and Misrepresentation Claims Lack Merit.

Ms. Bullard's fraud, suppression and misrepresentation claims are wholly without merit. In her Complaint, she contends that "defendants continuously represented to the plaintiff that defendants had provided plaintiff with a disability policy that would pay monthly disability benefits in the event the plaintiff were to become disabled and was unable to perform the duties of her occupation while said disability policy was in force." (Complaint at ¶ 59).

1.   <u>No Actionable Fraud Occurred</u>.

Even if the alleged representations were actually made, they do not rise to the level of actionable misrepresentation or fraud because the statements are not false. The policies do in fact provide benefits if the insured meets the definitions of disability contained in the policies. Thus, there was neither an actionable misrepresentation nor fraud. *See, e.g., Johnson v. Anderson Ford, Inc.*, 686 So. 2d 224, 230 (Ala. 1996) (if the evidence reveals that only true representations were made to the plaintiff, no cause of action for misrepresentation exists); *Ex parte Ikner*, 682 So. 2d 8, 10 (Ala. 1996) (Blue Cross did not misrepresent the fact that Ikner had insurance, because that fact was true).

Furthermore, Ms. Bullard candidly admits that she has never heard any representations about either of her two policies from any employee or representative of Unum Life or UnumProvident. (*Id.* at 319). Thus, by Plaintiff's own admission, there was neither an actionable misrepresentation nor fraud and Unum Life should be granted judgment in its favor on all such claims. *See, e.g., Johnson v. Anderson Ford, Inc.*, 686 So. 2d 224, 230 (Ala. 1996); *Ex parte Ikner*, 682 So. 2d 8, 10 (Ala. 1996).

Additionally, under Alabama law, "[a] cause of action for misrepresentation arises when the plaintiff relies on a misrepresentation of a material fact and suffers damages because of his or her reliance." *Ex parte ERA Marie McConnell Realty*, 774 So. 2d 588, 591 (Ala. 2000). "[A] plaintiff must prove that he or she *reasonably* relied on the defendant's alleged misrepresentation." *Alfa Life Ins. Co. v. Green*, 881 So. 2d 987, 991 (Ala. 2003) (emphasis added); *Seward v. Dickerson*, 844 So. 2d 1207, 1210 (Ala. 2002). "If the circumstances are such that a reasonably prudent person who exercised ordinary

care would have discovered the true facts, the plaintiffs should not recover." *Marie McConnell*, 774 So. 2d at 591. Where a plaintiff "blindly trusts, where he should not, and closes his eyes where ordinary diligence requires him to see, he is willingly deceived . . . ." *Id.* As recently stated by the Alabama Supreme Court,

> "[B]ecause it is the policy of the courts not only to discourage fraud but also to discourage negligence and inattention to one's own interests, the right of reliance comes with a concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests. In order to recover for misrepresentation, the plaintiffs' reliance must, therefore, have been reasonable under the circumstances."

*Green*, 881 So. 2d at 992. *See also Liberty Nat'l Life Ins. Co. v. Allen*, 699 So. 2d 138 (Ala. 1997) (granting summary judgment where there was no evidence plaintiff reasonably relied on alleged misrepresentation); *Ex parte Ford Motor Credit Co.*, 717 So. 2d 781, 789 (Ala. 1997) (granting summary judgment on misrepresentation claim).

In the present case, Ms. Bullard did not reasonably rely on any alleged misrepresentations regarding the policies. The policies were provided by her employer as a benefit of employment and the employer paid one hundred percent of the premiums. (Bullard Depo. at 51-54). She contends that she asked her employer for copies of the policies in 2002 but never received the same before filing her claim. (*Id.* at 307). She does admit that she never asked Unum Life for a copy of the policies before making her claim for benefits.[3] (*Id.* at 60 and 308). Furthermore, the documents that she alleges to

---

[3] Plaintiff's fraud, suppression, and misrepresentation claims against these Defendants are also barred by the two-year statute of limitations. *Ala. Code* Section 6-2-38(*l*). The limitations period for a fraud claim does not begin to run until the fraud is discovered, or should have been discovered. *Ala. Code* Section 6-2-3; *Kelly v. Connecticut Mut. Life Ins. Co.*, 628 So.2d 454 (Ala.1993). However, a fraud is deemed to

have received from her employer offer no support for her assertion that her employer told her that she would receive benefits if her doctor said she was disabled. (Bullard Depo. at 322-347; May 8, 2002 Printout entitled Employer Security Program).

Ms. Bullard's suppression claims are likewise without merit. While she appears to contend that Defendants suppressed the fact that she would not be paid benefits if she became disabled, she cannot show that Defendants wrongfully concealed any material facts. The Alabama Supreme Court has held as follows: "A party must have knowledge of a fact in order to be liable for its suppression. *Cornelius v. Austin*, 542 So. 2d 1220, 1224 (Ala. 1989). The obligation to communicate, or the duty to disclose, must be evaluated in light of the particular facts and circumstances of each case." *McGowan v. Chrysler Corporation*, 631 So. 2d 842 (Ala. 1993). In *McGowan*, a suit involving claims by an automobile purchaser against a dealership for fraud, the court affirmed summary judgment in favor of defendant on plaintiff's suppression claims after holding that the plaintiff presented no evidence that the dealership knowingly or actively concealed a material fact with an intent to deceive. *McGowan*, 631 So. 2d at 847.

In the present action, there is absolutely no evidence that Unum Life knew in 2002, when the subject policies were issued to the ABSBC, the particulars of how an insured's claim filed years later would be handled. Plaintiff has simply failed to prove the essential

---

have been discovered, thereby starting the running of the limitations period, when it ought to have been discovered – "that is, at the time of the discovery of facts that, on the part of a person of ordinary prudence, would provoke inquiry that, if followed up, would lead to the discovery of the fraud." *Fabre v. State Farm Mutual Automobile Ins. Co.*, 624 So.2d 167, 168 (Ala.1993). *See also Fowler v. Provident Life and Accident Insurance Company*, 256 F. Supp. 2d 1243 (N.D. Ala. 2003). Had Ms. Beckham followed through and obtained a copy of the policy from Unum Life in 2002, she would have discovered the exact nature of the coverage provided therein more than two years before the filing of this suit on November 15, 2005.

element of knowledge.  *See e.g.*, *Brushwitz v. Ezell*, 757 So. 2d 423, 432 (Ala. 2000) (noting that "'[o]ne can be liable for suppression only of a fact of which one has knowledge'" and holding that plaintiff failed to provide substantial evidence that defendant had knowledge of the fact he allegedly suppressed and further holding that "[e]vidence supporting nothing more than speculation, conjecture, or a guess does not rise to the level of substantial evidence.").

2.    Plaintiff's Claims are for Promissory Fraud and are Without Merit.

Furthermore, Ms. Bullard's contentions that the policies did not live up to Defendants' promises or representations is, essentially, a promissory fraud claim.  In other words, she is alleging a representation relating to the policies' future performance when and if she were to make a claim.  The elements Ms. Bullard must prove to establish a claim for promissory fraud include: (1) a misrepresentation; (2) of a material existing fact; (3) on which the plaintiff relied; and (4) which proximately caused injury or damage to the plaintiff.   *Johnston v. Green Mountain, Inc.*, 623 So. 2d 1116, 1121 (Ala. 1993). "Also, to support a claim for promissory fraud, the plaintiff must show that at the time of the alleged misrepresentation (that is, the promise), the defendant intended not to do the act or acts promised, but intended to deceive the plaintiff."  *Goodyear Tire & Rubber Co. v. Washington*, 719 So. 2d 774, 776 (Ala. 1998).

Under Alabama law, to avoid summary judgment on such a claim, Ms. Bullard is required to present more evidence than simply the allegation that the alleged promise was not later kept:

> The burden is on the plaintiff to prove when the promise was made that the defendant intended to deceive. *Martin v. American Medical Int'l, Inc.*, 516 So. 2d 640 (Ala. 1987); *P&S Bus., Inc. v. South Cent. Bell Tel. Co.*, 466 So. 2d 928 (Ala. 1985). The plaintiff cannot meet his burden merely by showing that the alleged promise ultimately was not kept; otherwise, any breach of contract would constitute fraud. *Purcell Co. v. Spriggs Enterprises, Inc.*, 431 So. 2d 515, 519 (Ala. 1983). It is well settled that "a jury does not have untrammeled discretion to speculate upon the existence of [the requisite] intent [for promissory fraud]." There must be substantial evidence of a fraudulent intent that existed when the promise was made. *Martin*, 516 So. 2d at 642 (quoting *Purcell Co.*, 431 So. 2d at 519).

*Goodyear Tire*, 719 So. 2d 774, 776 (Ala. 1998). In the present action, Ms. Bullard admits that she has no evidence that Unum Life or UnumProvident intended at the time she purchased the policies not to perform in accordance with the terms of the policies. (Bullard Depo. at 351-352). She also testified that she has no evidence that Defendants intended to deceive her at the time when she was provided coverage under the subject policies. (*Id.* at 353-354). Nor does she have any evidence that Unum Life or UnumProvident withheld information in an attempt to deceive her at the point that she received coverage under the policies. (*Id.* at 354-355).

In essence, the real assertion by Ms. Bullard is a failure of performance, which Unum Life disputes. As noted above, "[t]he plaintiff cannot meet his burden merely by showing that the alleged promise ultimately was not kept; otherwise, any breach of contract would constitute a fraud." *Goodyear*, 719 So. 2d at 776. Furthermore, it is clear that a reckless, negligent or innocent misrepresentation cannot constitute fraud where the alleged misrepresentation relates to some future event. *Russellville Production Credit Assoc. v. Frost*, 484 So. 2d 1084, 1087 (Ala. 1986).

- 25 -

Based upon the foregoing analysis, Unum Life is entitled to summary judgment in its favor with respect to the claims of fraud, misrepresentation and suppression set forth in Ms. Bullard's Complaint.

## D.  Plaintiff's Conspiracy Claims are Without Merit.

Alabama law is clear that a conspiracy itself furnishes no cause of action. *Allied Supply Co. v. Brown*, 585 So. 2d 33, 36 (Ala. 1991).  Thus, if liability is not supported by the underlying torts which are the aim of the alleged conspiracy, then the tort of conspiracy fails as well. *See*, *e.g.*, *Callens v. Jefferson County Nursing Home*, 769 So.2d 273 (Ala., 2000).    In this case, Ms. Bullard cannot maintain a claim for conspiracy against Unum Life or UnumProvident because Plaintiff cannot prove, or for that matter, make out a prima facie case against the defendants regarding the alleged underlying causes of action.  Thus, her corresponding conspiracy claim must likewise fail.

## E.    Plaintiff Is Not Entitled To Future Benefits.

Even if Ms. Bullard had satisfied the definition of disability under either the Disability Policy or the Life Policy, which she did not, she would not be entitled to any damages for any alleged period of disability extending beyond the date that the jury deliberates and renders a verdict in this action.   Unum Life anticipates that Plaintiff will seek recovery of future benefits allegedly due under the policies and, thus, hereby seeks judgment in its favor with regard to all such claims.

Ms. Bullard cannot recover any damages for any alleged period of disability extending beyond the date that the jury deliberates and renders a verdict because she has not and cannot satisfy conditions precedent to recovery under the policies with respect to any

dates in the future.  Specifically, the Disability Policy provides that benefit payments will stop on the date that an insured fails to submit proof of continuing disability.  (Disability Policy at LTD-BEN-6).  It further specifically states that Unum Life may require proof of continuing disability and that a claim may be denied upon failure to submit appropriate proof.  (*Id.* at LTD-CLM-1).  Thus, an insured must submit continuing proof of disability in order to be entitled to continuing benefits under the Disability Policy.  Similarly, the Life Policy requires the insured to submit appropriate proof of eligibility for benefits.  (*Id.* at AD&D-CLM-1).

Because Ms. Bullard has an ongoing obligation to provide proof of continuing disability, entitlement to disability benefits, which accrue and are payable on a monthly basis, involves an ongoing assessment of plaintiff's condition.  Ms. Bullard cannot presently prove, with respect to any dates in the future, that she will continue to meet the policies' definitions of disability.  Indeed, allowing Plaintiff to recover any damages for any alleged period of disability extending beyond the date that the jury deliberates and renders a verdict would allow the jury to base its verdict upon pure conjecture and speculation, neither of which can properly serve as the basis for a verdict.

The United States Supreme Court, the Alabama Supreme Court, and many other courts have held that the measure of damages for a breach of contract based on the denial of disability insurance benefits does not include payment of future benefits.  The appropriate measure of recovery is the aggregate value of past benefits alleged to be wrongfully withheld.  *See, e.g., New York Life Ins. Co. v. Viglas*, 297 U.S. 672, 678 (1936) (holding that benefits in default at the commencement of the suit, and not future benefits, were the

proper measure of recovery); *Mobley v. New York Life Ins. Co.*, 295 U.S. 632, 638 (1935) (affirming directed verdict in favor of the insurer after finding that insured was not entitled to recover monthly payments for his expected life); *Williamson v. Indianapolis Life Ins. Co.*, 741 So. 2d 1057 (Ala. 1999), (holding that plaintiff had suffered no injury because the pertinent time period when performance under the contract would commence had not expired). *See also Box v. Metropolitan Life Ins. Co.*, 168 So. 220, 222 (Ala. 1936).

Based upon the foregoing, Unum Life is entitled to summary judgment in its favor directing that Ms. Bullard is entitled to recover no damages for any alleged period of disability extending beyond the date that the jury deliberates and renders a verdict.

## IV.  CONCLUSION

Wherefore, based upon the foregoing, Unum Life is entitled to summary judgment in its favor with respect to the claims of breach of contract, bad faith, fraud, suppression, misrepresentation and conspiracy set forth against it in Counts One through Six of the Plaintiff's Complaint.  Unum Life is also entitled to summary judgment in its favor regarding any claims by Ms. Bullard for future damages.

*s/Douglas W. Fink*
HENRY T. MORRISSETTE        (MORRH7622)
DOUGLAS W. FINK             (FINKD3798)
Attorneys for Defendant
Unum Life Insurance Company of America

OF COUNSEL:

HAND ARENDALL, L.L.C.
Post Office Box 123
Mobile, Alabama  36601
Phone: (251) 432-5511
Fax:    (251) 694-6375

## CERTIFICATE OF SERVICE

I hereby certify that on this day, October 5th, 2006, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which will send notifications of such filing to the following:

tsinclair@cwl-law.com

*s/Douglas W. Fink*