

QPS - BEHAVIORAL HEALTH UNIT

CLINICAL REVIEW -- DAVID A. GOLDSMITH, PH.D.

| | | | |
|---|---|---|---|
| Insured: | Betty Bullard | Claim Number: | Navilink 1358453 |
| QPS Specialist: | Teresa Ward | Phone: | 4-8086 |
| Identified DOD: | 5/22/2004 | Occupation: | Secretary |
| Referral Date: | 11/15/2004 | Completion Date: | 12/14/2004 |

**CLINICAL DATA REVIEWED:** I have reviewed all of the clinical information in the imaged file, with particular emphasis on those referencing Ms. Bullard's psychological and functional status. In addition, I telephoned Ms. Bullard's therapist to discuss inadequacies in the records he provided. However, Mr. Downs was not available and I left a voicemail message requesting that he return my call. That has not yet occurred. In the event I discuss this matter with Mr. Downs, I will amend my findings and conclusions -- as warranted.

**CLINICAL SUMMARY:**

> This analysis considers the assertion that *psychiatric illness caused or substantially contributed to a loss of functional capacity and/or imposed reasonable work-restrictions, continuously preventing Ms. Bullard from performing occupational duties beyond 5/22/04.*
>
> *Consideration of the functional consequences of her medical [non-psychiatric] condition is documented elsewhere.*

The divorced, morbidly obese, 49-year old Insured, who has a documented history of multiple medical conditions and psychiatric complaints, ceased working as a secretary[1] for her employer of 11 years (Alabama Baptist State Board of Missions[2]) in 5/04 - with no evident precipitating event.

Records around her identified date-of-disability suggest that Ms. Bullard was participating in physical therapy for a long-standing right shoulder problem and using narcotic pain medication. Her depression was considered "stable" but Ms. Bullard's colitis-related symptoms were worse. She had been trying to use CPAP-- for sleep apnea that was diagnosed six years earlier. Medical records reflect Ms. Bullard's history of using stimulant medications, including Provigil, Ritalin and Adderall, since at least 1999.

Mental-health Therapist **Allen Downs, MS**[3] submitted records that indicate:

- He treated Ms. Bullard four years before she returned for evaluation and treatment on 6/17/04. During the intervening span, Ms. Bullard received treatment at Alabama Psychiatric Services.
- Ms. Bullard reported having psychiatric problems throughout her life. Her father died when she was six years old and Ms. Bullard received psychiatric care at the age of 13.
- During recent years, particularly since 1996, her health progressively spiraled downward.
- A month after Ms. Bullard ceased working, she presented as a neat, clean, anxious lady who conveyed poor attention span and concentration, fair memory, adequate judgment, good insight into her problems and above-average intelligence. Ms. Bullard communicated a history of chronic depression and anxiety, fearfulness, obsessional thinking and patterns of compulsive eating. She denied hallucinations, delusions and suicidal thinking.

---

[1] **Betty Bullard** *(missions support/Secretarial)*, ext. 315: Christian Ethics Special Sundays; Racial Reconciliation Sunday; Social Issues Sunday: Religious Persecution; World Hunger/Rice Bowls/Envelopes;

[2] The purpose of Alabama Baptist State Board of Missions is to represent Christian moral and ethical concerns throughout the Alabama Baptist Convention and in the wider community. These include, but are not limited to: Christian citizenship, church and state issues, human relations, economic life, alcohol and drugs, abortion, family concerns, world hunger, race relations, health issues, gambling, poverty and the environment. This office works with the associations and churches to help develop Christian Life Committees. The office serves as a resource center to provide materials and information to the associations and churches. The office offers conferences, seminars and programs related to any moral issue upon request by an association or church. The office director is available to your association or church to speak to any group about the moral or ethical issues facing you. He will also speak to civic groups upon request. The Office of Christian Ethics/Chaplaincy Ministries has been assigned the responsibility of coordinating the work of the chaplaincy in the convention. The office will provide conferences, retreats, and share information with the chaplains serving in our state. The office, in cooperation with the North American Mission Board, will encourage the endorsement of chaplains and will give assistance in their work. [ http://www.alsbom.org/ ]

[3] (334) 269-0733

1

#20

## Behavioral Health QPS Review

- Her diagnosis was Major Depressive Disorder, with a GAF of 55 (8/04).
- In response to his assessment of 6/17/04, Mr. Downs recommended outpatient "solution focused" cognitive-behavioral at intervals of 2-3 weeks.
- Psychotropic medications were to be managed by Ruben Richardson, MD and Rachel McKinney, MD.  Reportedly, Ms. Bullard had used Adderall since 1999, as well as Serzone and Provigil since 6/01.  Although she ceased working a month earlier due to an exacerbation of her condition, her psychotropic medications have not been adjusted in more than three years -- according to her report in 6/04.  However, a medication log of 9/12/04 reflects a change of her antidepressant to Effexor.[4]
- It is not evident that Ms. Bullard returned to Mr. Downs until 9/6/04, when she completed an Incomplete Sentences Blank -- the only psychometric assessment instrument used.
- Mr. Downs completed an APS of 11/17/04 -- two months after his last reported contact with Ms. Bullard.  Mr. Downs asserted that his patient was restricted from performing "any important bookkeeping, administrative duties or tasks that involve sustained concentration."  Mr. Downs added information on an MSSQ, representing that his patient experienced moderate depression, as well as infrequent anxiety attacks.  He also completed an FCE Form, which depicted Ms. Bullard as moderately impaired in most rated areas, with other areas more or less impaired.

## ANALYSIS OF CLINICAL INFORMATION AND RESTRICTIONS/LIMITATIONS:

Available records reflect Ms. Bullard's chronic complaints of medical and psychiatric difficulties -- with which she maintained employment with Alabama State Baptist Convention for 11 years.

I find no basis for concluding that her psychiatric condition deteriorated around the identified date-of-disability or that psychological factors caused a loss of functional capacity -- compared with her recent level of performance.  Medical records provided around the identified DOD and since reflect no substantial change of Ms. Bullard's psychiatric symptoms.

Although a mental-health therapist completed disability paperwork that depicted his patient as substantially and globally impaired, his stated opinions are not compelling and warrant little weight.  Records reflect that Ms. Bullard returned to Mr. Downs a month _after_ she ceased working -- having had no documented contact with the therapist in four years.  Records leading up to the date-of-disability reflect no increased emotional or psychiatric symptoms -- and no efforts to modify Ms. Bullard's medications or mental-health treatment.  Within the context of a disability claim, she reconnected with Mr. Downs in 6/04, when he documented the patient's complaints and self-appraisal -- without memorializing any formal assessments of her functional capabilities.  In 6/04, Mr. Downs depicted Ms. Bullard as "somewhat scattered" and expansive in her speech; however, no data has been offered to substantiate an alleged cognitive deterioration -- particularly deficits caused by psychiatric illness.  Furthermore, records received from Mr. Downs in 11/04 reflect no intervening therapy, as was recommended five months earlier.

While it remains plausible that psychological factors -- or non-clinical issues -- could influence Ms. Bullard's clinical presentation and her communication of functional difficulties, available records do not substantiate the claim that Ms. Bullard's ability to perform any specific occupational duties diminished around her identified date-of-disability and has since continued.

Mr. Downs provided documentation that identified a work-restriction, as he apparently determined that Ms. Bullard should not perform "any important bookkeeping, administrative duties or tasks that involve sustained concentration."  The extent to which her occupation requires her to do so is not evident -- nor is the clinical foundation of Mr. Downs' stated opinion.

## CONCLUSIONS:

The available records provide reasonable documentation that Ms. Bullard continued to work for many years with psychiatric issues.  It is not evident that Ms. Bullard's psychiatric condition or symptoms substantially changed around her identified date-of-disability.

I do not find reasonable or compelling documentation that psychiatric illness caused or substantially contributed to an enduring loss of functional capacity or imposed clinically substantiated occupational restrictions -- for any continuous span beyond 5/22/04.

Mr. Downs' stated opinions have no evident clinical foundation.

---

[4] Contemporaneous medical records of 7/22/02 indicate that Ms. Bullard had been placed on Celexa a month earlier and she previously used trazodone, Wellbutrin, Paxil and Zoloft with minimal relief.  Yet, the physician also documented that Ms. Bullard had good results from BuSpar and Wellbutrin.

_Claimant Name: Betty W Bullard      Claim #: 1358453_

## Behavioral Health QPS Review

**REFERRAL QUESTION:**

Do the available records provide reasonable support for the assertion that psychiatric illness caused or substantially contributed to a loss of functional capacity and/or imposed substantiated work-restrictions since 5/22/04?

No. The available records do not indicate that Ms. Bullard's psychiatric status change around her identified date-of-disability. Similarly, her file provides no reasonable basis for concluding that psychological factors substantially contributed to a loss of functional capacity around 5/22/04 and since.

DAVID A. GOLDSMITH, Ph.D,
Clinical Psychologist
(TN: P-877/823; GA: 968)
VP, Medical Director

"I certify and affirm that this report represents my true findings and opinions, to a reasonable degree of professional certainty, based upon my training and experience in clinical psychology and my analysis of the documentation of evidence provided in the claim file, including consideration of the foundation and congruence of the available data."

12/14/2004 10:15:43 AM

[Dictated and signed but not read.]

Claimant Name: Betty W Bullard    Claim #: 1358453