IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| **BETTY BULLARD** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **CASE NO.** |
| **UNUMPROVIDENT CORPORATION;** | ) | |
| **UNUM LIFE INSURANCE COMPANY** | ) | **CV-2:05-cv-1217-MEF** |
| **OF AMERICA, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Comes now the Plaintiff, Betty Bullard, and respectfully submits the following brief in support of her opposition to Defendant's motion for summary judgment. Plaintiff respectfully requests this Court deny the defendant's motion for summary judgment.

The Plaintiff has contemporaneously filed a brief in support of her opposition to Defendant UnumProvident's motion for summary judgment. This brief shall address the Defendant UnumProvident and Unum Life Insurance Company's arguments on the merits of the Plaintiff's claim while the brief addressing UnumProvident's "improper entity" argument will address solely UnumProvident's assertion that UnumProvident played no role in the Plaintiff's claim for benefits. Plaintiff adopts and incorporates by reference herein the statement of facts and the arguments set forth in that brief addressing UnumProvident's "contractual relationship" argument.

## STATEMENT OF FACTS

1.    At all times relevant, Plaintiff was employed by the Annuity Board of the Southern Baptist Convention ("ABSBC") as an administrative assistant. (Complaint at ¶ 15). Plaintiff received disability insurance coverage and life insurance coverage from

UnumProvident and Unum Life Insurance Company of America.[1]  *See* Exhibit 1 (Life Insurance and Long-Term Disability Policy); *See also* Exhibit 17 (Bullard Depo at 52-55).

2.    Defendant UnumProvident asserts that Plaintiff's insurance policies were issued by Unum Life, not UnumProvident, and cites to Plaintiff's Complaint and provides a citation to a portion of the Plaintiff's complaint at ¶ 16 as the authority for this statement.  *See* UnumProvident's Memorandum in Support of MSJ at 2.  However, a complete citation to the Plaintiff's complaint reveals the Plaintiff accurately states the fact that her insurance policies were "issued by UnumProvident Corporation, and underwritten by UNUM Life Insurance Company".  Complaint at ¶ 16.

3.    Plaintiff's policies provide that a person is deemed "disabled" when, as a result of injury or sickness, she is "limited from performing the material and substantial duties" of her regular occupation and has a 20% or more loss in her indexed monthly earnings.  Complaint at ¶ 16 *see also* Exhibit 1.  The long-term disability policy is an "own occupation" policy whereby the defendants have to measure the plaintiff's ability to perform in her regular occupation not simply any occupation in the economy.  *Id.*

4.    On May 21, 2004, Plaintiff was forced to cease working for ABSBC due to the debilitating nature of her disabilities.  Complaint at ¶ 19.  Plaintiff has been diagnosed with arthritis, fibromyalgia, cataplexy narcolepsy, hypersomnia with sleep apnea, ulcerative colitis, and degenerative disk disease.  Exhibit 2 (Attending Physician Statements);  Exhibit 17 Bullard Depo at 250, 254, 259, 261.

5.    Plaintiff's disabilities cause her to suffer great pain and discomfort, fatigue, dizziness, and difficulty with concentration.  As a result Plaintiff is unable to perform her job responsibilities.  Complaint at ¶ 17; Exhibit 17 (Bullard Depo at 145,

---

[1] Plaintiff's disability policy number is 1358453 and her life insurance policy number is 1358879.

172-173, 177-178, 192-196, 214).

6.    As a result of Plaintiff's disabilities, she has had to endure many surgical procedures, including diskectomies, cervical fusions, and foot surgery. Exhibit 17 (Bullard Depo at 245, 250). Plaintiff requires additional surgeries in the future that she cannot currently afford. Exhibit 17 (Bullard Depo at 257).

7.    In May 2004, Plaintiff filed a long term disability claim on her disability and life insurance policies. *See* Exhibit 3. In support of her application, Plaintiff included four (4) Attending Physician's Statements. *See* Exhibit 2.

8.    The Attending Physician's Statement completed by Dr. Reuben C. Richardson, M.D. and submitted by Plaintiff in support of her claim for long term disability, listed his diagnoses of cataplexy narcolepsy and hypersomnia with sleep apnea and indicated that, based on his diagnoses alone, Plaintiff could not be released to return to work in any occupation. Exhibit 2.

9.    The Attending Physician's Statement completed by Dr. Rachel M. McKinney, M.D. and submitted by Plaintiff in support of her claim for long term disability, lists multiple diagnoses and indicates that, based on her diagnoses alone, Plaintiff "will be unable to return" to work. Exhibit 2.

10.    On August 18, 2004, a disability consultant for Defendant recommended the claim be closed based upon incomplete medical documentation, and on August 19, 2004, Plaintiff's claim for disability benefits and life insurance premium waiver was closed. At the same time, Defendant cancelled all outstanding, unfulfilled requests for medical documents from Plaintiff's medical providers. Complaint at ¶ 21.

11.    Defendants notified Plaintiff by letter dated September 1, 2004, of their denial of her claim for disability benefits; and subsequently notified her by letter dated September 9, 2004, that she was denied waiver of life insurance premiums. Complaint at ¶ 22, Exhibit 4 (Claim Denial Letter).

12.     Plaintiff appealed the denial of her claim for benefits through the administrative appeals process provided by her policies.  Complaint at ¶ 23, Exhibit 5 (Notice of Appeal).

13.     On October 25, 2004, Dr. Rachel M. McKinney, M.D., sent a letter to Defendant in which she stated that Plaintiff "is permanently unable to perform [a] full-time job of any kind secondary to her multiple medical conditions." Exhibit 6.

14.     Defendant's Senior Clinical Consultant, Latisha L. Toney, RN, upon review of Plaintiff's claim file, found that Plaintiff's documentation "would indicate a reasonable expectation of some functional loss." Exhibit 7.

15.     Dr. Susy Vergot, Defendant's Medical Director, noted upon her review of Plaintiff's claim file that "[s]ome functional loss is supported with [Plaintiff's] individual conditions".  Exhibit H.  Dr. Vergot recommended the following reasonable limitations based upon Plaintiff's individual conditions:

        avoid repetitive bending/twisting at the waist
        avoid prolong[ed] standing/walking
        change position as needed for comfort
        avoid above the shoulders work
        close and readily available restroom facilities
        occasional lifting up to 20 pounds
        no lifting above shoulders
        avoid lifting while bending at the waist
        avoid fine articulate movements of the hand when arthritis flares

*Id.*

16.     Despite Plaintiff's numerous diagnoses, limitations, and Doctor's written recommendations that Plaintiff not return to any form of work, Defendants notified Plaintiff by letter dated April 6, 2005, of their decision to uphold their denial of her claim for disability benefits.  Exhibit 9.

17.     Defendant notified Plaintiff by letter dated April 22, 2005, that pursuant to the multi-state settlement agreement executed by Defendant, they were required to offer a Claim Reassessment Process related to their denial of her claim for benefits.  Exhibit 10. This multi-state settlement agreement referenced by the Defendant was part of 47

4

jurisdictions investigation of UnumProvident. This investigation revealed numerous deficiencies in UnumProvident's claims handling process and required UnumProvident to change the way in which it processed claims. Exhibit 16.

18.    On May 9, 2005, Plaintiff's employer, Alabama Baptist Convention, wrote a letter in which it expressed its disagreement with Defendant's decision to deny Plaintiff's disability claim and in support of the Plaintiff's assertion and attending physician's assertions that she was incapable of returning to work. Exhibit 11.

19.    The Alabama Department of Rehabilitation Services interviewed Plaintiff and reviewed her treating physician's statements and determined that she "has permanent disabilities that will prevent her from returning to work." The ADRS further noted that "there is no expected improvement for her conditions anytime in the immediate future" and that her "disabilities prevent her from working on a regular and continuing basis and from performing any substantial gainful activity." Exhibit 12.

20.    Plaintiff instituted this action on November 15, 2005, against UnumProvident and Unum Life Insurance Company, based upon their wrongful denial of her claim for benefits under policies 1358453 and 1358879.

## STANDARD OF REVIEW

Under Rule 56 (c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1496 (11th Cir.1996) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323.

Once the moving party has met its burden, <u>Rule 56(e)</u> "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " <u>*Id.*</u> at 324. On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255.

*Perdue v. Pilgrim Pride*, Slip Copy, 2006 WL 2355408 (M.D. Ala. 2006) (Fuller, J. ).

## <u>ARGUMENT</u>

I.    **Summary Judgment is Inappropriate as to Plaintiff's Breach of Contract Claim.**

### A. Terms of the Contract

The Defendants assert that Plaintiff "simply failed to meet the definition of disability under either the Disability Policy or the Life Policy." (Defendant's Brief in Support of MSJ, pg 16.) Defendant further asserts that Plaintiff cannot establish that she is "unable to perform the material and substantial duties of her occupation as a secretary." *Id.*

Defendant is correct in its recital of the required elements of a breach of contract claim. Under Alabama law, to establish a prima facie case of breach of contract, the plaintiff must show (1) a valid and enforceable contract; (2) the terms and conditions of the contract; (3) a breach of the contract; and (4) damages. *Whaley v. Sony Magnetic Products, Inc.*, 894 F. Supp. 1517, 1526 (M.D. Ala. 1995).

Plaintiff has provided the valid and enforceable contracts, which provide the terms and conditions of the contracts. Exhibit 1. Plaintiff has also provided proof that Defendant breached the contract. As is stated *supra*, all evidence must be viewed in the light most favorable to the non-movant, here the Plaintiff, and all inferences must be made in her favor. *Hairston*, 9 F.3d at 919; *Anderson*, 477 U.S. at 255. Plaintiff has provided the Court with a copy of the contract, which provides that Defendant will provide benefits in the case of a "a disability", which the contract defines as being

6

"**limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and ... hav[ing] a 20% or more loss in weekly earnings due to the same sickness or injury." Exhibit 1. (Emphasis in original). The policy provides the following definitions of the highlighted terms:

> **LIMITED** means what you cannot or are unable to do.
> **MATERIAL AND SUBSTANTIAL DUTIES** means duties that:
> - are normally required for the performance of your regular occupation; and
> - cannot be reasonably omitted or modified.
> **SICKNESS** means an illness or disease.

Exhibit 1.

The policy does not define "illness" or "disease". "Illness" is defined by Webster's dictionary as "the condition of being ill, or in poor health; sickness; disease". "Disease" is defined by Wester's dictionary as follows:

> 1) any departure from health; illness in general
> 2) a particular destructive process in an organ or organism, with a specific cause and characteristic symptoms; specif., an illness, ailment.

**B. Plaintiff's Condition and Diagnoses**

Plaintiff submitted four (4) Attending Physician's Statements with her disability claim in which four (4) separate doctors listed multiple diagnoses. Dr. Rachel M. McKinney, M.D., listed Plaintiff's diagnoses as "556.9 [ulcerative colitis], 211.3 [benign neoplasm of colon], 347 [narcolepsy], 300.01[panic disorder without agoraphobia], 401.1 [benign essential hypertension], [and] 722.2 [displacement of invertebral disk site]". Exhibit 2. Plaintiff's ulcerative colitis causes her "a lot of pain" and requires her to remain in close proximity to a restroom. Exhibit 17 (Bullard Depo at 253). Plaintiff takes medicine in attempt to control her ulcerative colitis but still experiences painful and inconvenient flare ups of the disease. Exhibit 17 (Bullard Depo at 254). Plaintiff has had surgery related for herniated disk on her neck yet continues to experience pain. Exhibit 17 (Bullard Depo at 256-257). Plaintiff also suffers from four bulging disks in her back which requires her to wear a back brace and apply electrical pulses from a Tens Machine.

Exhibit 17 (Bullard Depo at 258-259).

Dr. DD Thornbury, M.D., listed Plaintiff's diagnosis as relating to "pain, ankle and foot". Exhibit 2. Plaintiff has testified that she has had pins placed in her foot and experiences pain related to complications of the pins and surgery. Exhibit 17 (Bullard Depo at 250-251). This pain makes it difficult for Plaintiff to stand and walk and impossible for Plaintiff to climb stairs. Exhibit 17 (Bullard Depo at 257-258).

Dr. Reuben C. Richardson, M.D., listed her as having the diagnoses of cataplexy narcolepsy and hypersomnia with sleep apnea. Exhibit 2. Plaintiff's sleep disorders cause her to suffer from lack of concentration and pain and therefore prevent her from being able to do her job as a secretary. Exhibit 17 (Bullard Depo at 252). Plaintiff's sleep disorders are progressively worsening, even with the treatment of medication. Exhibit 17 (Bullard Depo at 251-252).

Dr. Albert I. Fey, III, DMD, listed Plaintiff's diagnosis as "sleep apnea", "TMJ disorder", and "MPDS". Exhibit B. Plaintiff's TMJ causes her pain and is so progressed that even a mouth piece will not help. Exhibit 17 (Bullard Depo at 257, 263). Plaintiff requires surgery for her TMJ, which she cannot afford. *Id.*

Plaintiff additionally suffers from bursitis, diverticulitis, arthritis, and fibromyalgia. Exhibit 17 (Bullard Depo at 250, 254, 259, 261). Plaintiff's numerous painful conditions render her incapable of working in any full time position.

### C. Plaintiff's Limitations

The Attending Physician's Statements that Plaintiff submitted with her original disability claim stated that, based on their diagnoses alone, and not taking into account the aggregate effect of all of Plaintiff's diagnoses, Plaintiff could not return to work. Dr. Reuben C. Richardson, M.D., indicated that based solely upon his diagnoses of cataplexy narcolepsy and hypersomnia with sleep apnea, Plaintiff was not released to work in any occupation. Exhibit B. Dr. Rachel M. McKinney indicated that, based upon her numerous diagnoses, Plaintiff "will be unable to return" to work. Exhibit 2.

Inexplicably, despite Plaintiff's more than adequate documentation to Defendant of her numerous illnesses and multiple Doctors' recommendation that Plaintiff not be allowed to return to work in any occupation, Defendant denied Plaintiff's claim for benefits.  In a letter dated September 9, 2004, Defendant notified Plaintiff of their decision to deny her disability claim.  Exhibit 4.  Defendant stated that Plaintiff does not "satisfy the definition of disability as defined by [her] employer's Life policy." *Id.*

On October 25, 2004, following Defendant's denial of Plaintiff's claim for benefits, Dr. McKinney sent a follow-up letter to Defendant in which she stated that Plaintiff "is permanently unable to perform [a] full-time job of any kind secondary to her multiple medical conditions."  Exhibit 6.  Pursuant to Plaintiff's request, Defendant conducted an appellate review of her claim for benefits.

Defendant's employees conducted a medical review of only those medical records provided to them by Plaintiff and her doctors.  Defendant never conducted an examination of Plaintiff with an independent medical examiner.  Defendant's Senior Clinical Consultant, Latisha L. Toney, RN, upon her appellate review of Plaintiff's claim file, found that Plaintiff's documentation "would indicate a reasonable expectation of some functional loss."  Exhibit 7.  In addition, Dr. Susy Vergot, Defendant's Medical Director, noted upon her review of Plaintiff's claim file that "[s]ome functional loss is supported with [Plaintiff's] individual conditions".  Exhibit 8.  Dr. Vergot also recommended the following limitations: 1) avoid repetitive bending/twisting at the waist; 2) avoid prolong[ed] standing/walking; 3) change position as needed for comfort; 4) avoid above the shoulders work; 5) close and readily available restroom facilities; 6) occasional lifting up to 20 pounds; 7) no lifting above shoulders; 8) avoid lifting while bending at the waist; and 9) avoid fine articulate movements of the hand when arthritis flares. *Id.*

Defendant nonetheless upheld its decision to deny Plaintiff's claim.  Therefore Defendant notified Plaintiff by letter dated April 6, 2005, that her "claim file does not

9

provide support for a disability that would preclude [her] from working." Exhibit 9.

**D. Defendant's Motion for Summary Judgment is Not Properly Supported.**

Defendant offers <u>no</u> evidence to call into question the validity of Plaintiff's assertions in the complaint. At this stage of the proceedings any questions regarding the validity of the Plaintiff's assertions within the complaint must be construed "so as to resolve all doubts concerning the sufficiency of the complaint in favor of the plaintiff." *Boykin v. Arthur Andersen & Co.*, 639 So.2d 504, 507 (Ala. 1994). The question is not whether the Plaintiff will prevail upon her claims, "only whether [s]he has stated a claim under which [s]he *may* possibly prevail. Id.

As stated *supra*, Plaintiff has offered the diagnoses of multiple doctors and the written opinion of at least two that she cannot return to work. Additionally, Plaintiff has presented evidence of the opinions of Defendant's own employees that her disabilities have caused her functional loss. The limitations recommended by Dr. Vergot effectively eliminate Plaintiff from performing her former job as secretary and any other full time jobs. When the evidence that has been presented to this Court is viewed in the light most favorable to the Plaintiff, as it must be at this stage of the proceedings, it is clear that there is a genuine issue of material fact as to whether Plaintiff is entitled to disability benefits, and whether Defendant committed a breach of the contract, the insurance policy, it entered into with Plaintiff. Summary judgment is therefore inappropriate as to Plaintiff's breach of contract claim.

**II.    Summary Judgment is Inappropriate as to Plaintiff's Bad Faith Claims.**

**A. Plaintiff Has Presented a Prima Facie Case of Bad Faith**

Defendant asserts that Plaintiff's bad faith claim must fail because her "file was extensively reviewed". Defendant's Brief in Support of MSJ, pg 17. Defendant sets forth the appropriate elements that Plaintiff must set forth in order to establish a prima facie bad faith claim:

> (a) an insurance contract between the parties and a breach thereof by the defendant;

(b) an intentional refusal to pay the insured's claim;
(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.

*Brooks v. J. C. Penney Life Insurance Co.*, 231 F. Supp. 2d 1136, 1144 (N.D. Ala. 2002) (quoting *National Sec. Fire & Cas. Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982)).

As discussed in section I, *supra*, Plaintiff has presented evidence of an insurance contract between the parties and the Defendant's intentional refusal to pay Plaintiff's claim. There is also an absence of a debatable reason that Defendant could have relied upon in its refusal to pay Plaintiff's claim. Plaintiff has submitted evidence of the diagnoses of four (4) doctors, two (2) of whom submitted written statements to Defendant that Plaintiff could <u>not</u> return to work. Exhibit 2.

Bad faith is the intentional failure of an insurer to perform its duty of good faith and fair dealing with the insured. *Mordecai v. Blue Cross-Blue Shield of Alabama, Inc.*, 474 So. 2d 95, 97 (Ala. 1985). "An actionable tort arises for an insurer's intentional refusal to settle a direct claim where there is either (1) no lawful basis for the refusal coupled with actual knowledge of that fact or (2) intentional failure to determine whether or not there was any lawful basis for such refusal." *Id.* (quoting *McLaughlin v. Alabama Farm Bureau Mut. Cas. Ins. Co.*, 437 So. 2d 86 (Ala. 1983)). "The plaintiff must show there is no legal or factual defense to the insurance claim." *Mordecai*, 474 So. 2d at 98.

Plaintiff has shown there is no legal or factual defense to the insurance claim. She has submitted the written statements of two doctors that she is not capable of returning to work due to her illnesses. Defendant's response to Plaintiff's evidence is that her file was extensively reviewed by its employees, whose reviews supported its decision to deny her coverage.

### B. The Defendants' Employees are Rewarded for Denying Claims

Defendant's employees are directly rewarded in relation to the number of claims they recommend denying. *See* Exhibit 13. Plaintiff intends to question Defendant's employees as to their motives and bias in denying her claim, in light of the evidence that their motivation is to deny as many claims as possible in an effort to maximize their compensation. Exhibit 13. Defendant's employees will therefore be witnesses whose credibility will be an issue for the jury. "Under Alabama law, there is no presumption that a witness is testifying truthfully." *Ex parte Musgrove*, 638 So. 2d 1360, 1365 (Ala. 1993). The issue of witness credibility is an issue solely left to the jury. *Living v. State*, 796 So. 2d 1121 (Ala. Crim. App. 2000); *Musgrove*, 638 So. 2d at 1366.

### C. Defendant Has Engaged in Wrongful Claims Denial Practices for Years

Furthermore, Plaintiff has presented ample evidence of Defendant's wrongful claims denial practices. In 2004 and 2005, forty-nine (49) states participated in a Multi state Market Conduct Examination of Defendant's claims denial practices. The Multi state Examination resulted in a report detailing Defendant's wrongful practices and a Multi state settlement agreement Defendants entered into with the participating states. Exhibit 16. The Multi state Examination Report identified the following instances of wrongful conduct that the Defendants engaged in during the review and denial of Plaintiff's claim:

> In-house medical professionals do not examine or otherwise interact with claimants directly. ... The examination team identified numerous instances in which the Companies relied heavily upon the analysis of their in-house medical professionals, and refrained from securing an IME [Independent Medical Examination]. In many instances, the [Defendant] discounted or disputed the opinions of claimants' attending physicians, but chose not to invoke the requirement that the claimant attend an IME. Where there is conflicting medical evidence or conflicting medical opinions with respect to a claimant's eligibility for benefits, the [Defendant] has the ability to invoke the policy provision and obtain an IME, and should do so.

Exhibit 16.

Despite the multi state's finding and recommendation that the Defendant obtain

12

an IME on a claimant with conflicting medical opinions, Defendant has continued to conduct its business in the same wrongful manner. Defendant engaged in this same wrongful conduct in its review and denial of Plaintiff's claim. Defendant disputed the opinions of Plaintiff's attending physicians that she was disabled and incapable of work and therefore denied her claim, <u>without obtaining an IME</u> first.

The Report also outlined the multi state's findings that Defendant's in-house medical professionals "often resulted in a Company bias and the inappropriate interpretation or construction of medical reports, to the detriment of claimants." Exhibit 16. The report indicated the finding that Defendant therefore unfairly interpreted physician's reports in its attempt to deny claims, rather than attempt to understand claimants' true conditions. Exhibit 16. Defendant has continued in this wrongful practice, and engaged in the same wrongful inappropriate interpretation of physician reports in its review and denial of Plaintiff's claim. Defendant requested numerous medical reports from Plaintiff and her attending physicians throughout its review of her claim. Defendant, however, refused to consider Plaintiff's Attending Physicians' medical recommendation that she not be allowed to return to work, instead interpreting the records as supporting "a reasonable expectation of some functional loss." Exhibit 7.

The multi state report also indicated the finding that Defendant failed to properly evaluate the cumulative effects of multiple medical conditions on claimants. The report indicated that "the [Defendant's] failure to properly evaluate such 'co-morbid' conditions appeared to stem from an excessively narrow focus upon the specific medical condition for which benefits had originally been sought by the claimant." Exhibit 16. Defendant engaged in this same wrongful conduct in its review and denial of Plaintiff's claim. In a letter to Dr. McKinney, it asked her whether she agreed with certain limitations their doctors had found appropriate allegedly based upon Plaintiff's "co-morbid conditions". Exhibit 18. Dr. McKinney responded by letter dated February 22, 2005, that the limitations Defendant provided were adequate based only upon her "ulcerative colitis and

her rheumatoid arthritis". Exhibit 19. Dr. McKinney further stated that she was "unable to give an opinion on her true limitation" based upon all of her diagnoses because they included areas beyond her expertise. Exhibit 19. Despite Dr. McKinney's statements that she could not list Plaintiff's limitations created by all of her diagnoses, Defendant used these selective limitations in its denial of her claim. Defendant continues to use these limitations in its Motion for Summary Judgment before this Court. Defendant's Brief in Support of MSJ, pgs 12-13.

The report also includes the finding that Defendant placed an inappropriate burden on claimants to justify their eligibility for benefits. Exhibit 16. The multi state review revealed that Defendant made a concerted effort "to 'shift' the burden of responsibility to the claimant to provide medical or other records in support of the claim". Exhibit 16. Defendant engaged in this wrongful behavior in its evaluation and denial of Plaintiff's claim. Plaintiff originally included four (4) Attending Physician's statements, as well as their medical records, with her original claim to Defendant. As stated *supra*, two of these original reports included her doctors' findings that she not be released to work. Exhibit 2. Defendant, however, repeatedly required Plaintiff to submit additional records and contacted her doctors in attempt to interpret further statements to support their intention to deny Plaintiff's claim.

### D. Conclusion

Plaintiff has presented a prima facie claim of bad faith related to Defendant's wrongful denial of her claim. Defendants' history of wrongful claims denial practices is evidence of the manner in which it intended to treat any claim Plaintiff might make at the time the parties entered into their contract. Defendant followed its established practices of bad faith in its subsequent denial of Plaintiff's claim. Plaintiff has also presented an issue as to these witnesses' credibility and therefore an issue that should rightfully be decided by a jury.

**III.     Summary Judgment is Inappropriate as to Plaintiff's Fraud, Suppression and Misrepresentation Claims.**

14

Plaintiff has presented evidence of the terms of the insurance contract she executed with Defendant. In Defendant's description of the coverage it would provide to Plaintiff in exchange for the payment of monthly premiums, it warranted that it would pay her benefits if she could not perform the substantial duties of her occupation due to sickness or injury. Defendant never intended to provide Plaintiff with such coverage, as is evidence by their numerous written policies to deny claims, in particular claims for fibromyalgia. *See* Exhibits 13 and 14.

Defendant asserts that Plaintiff's fraud claim must fail because it never made any representations to her regarding her insurance policy. Defendant's statement is patently false. Defendant provided a manual to Plaintiff describing the insurance coverage she was purchasing. Exhibit 17 (Bullard Depo at 330-343). This manual contains numerous representations from Defendant made to Plaintiff to induce her to purchase their insurance policies. Statements made in a manual are sufficient representations to support a claim for fraud or misrepresentation. *Campisi v. Scoles Cadillac, Inc.* 611 So. 2d 206 (Ala. 1992). Defendant relied upon this manual and the information provided therein, in her determination to purchase Defendant's insurance policies. Defendant has now refused to provide Plaintiff with a copy of this manual in discovery. Plaintiff asserts that the manual contains statements that if her doctors find her disabled, Defendant must pay her in accordance with the terms of her policy. *Id.* Additionally, Plaintiff asserts that the manual provides, just as the insurance policy itself provides, that if Plaintiff is disabled or injured, Defendant must pay her in accordance to the terms of the insurance policy. *Id.*

Furthermore, Plaintiff asserts that her employers made numerous representations to her describing the terms of Defendants' insurance policy. Defendants provided Plaintiff's employers with manuals describing their policy and gave Plaintiff's employers authority to offer their insurance policy to their employees. Plaintiff's employers were thus acting as Defendants' agents and therefore Defendants are liable for any

misrepresentations they made while attempting to sign up their employees to Defendants' insurance policy.

Defendant asserts that Plaintiff's fraud claim must fail because the statements and representations they made to her are not false. In support of its argument, Defendant cites *Ex parte Ikner*, 682 So. 2d 8 (Ala. 1996). *Ikner*, however, is not only distinguishable but involves completely different facts than those at issue in this case. In *Ikner*, the Plaintiff paid premiums on an insurance policy from 1988 to 1993. *Ikner*, 682 So. 2d at 9. The plaintiff's policy was subsequently cancelled by the defendant due to ineligibility. *Id.* The plaintiff never made a claim on his insurance during the period it was effective. *Id.* The plaintiff then filed suit against the defendant, claiming that it misrepresented to him that he had insurance from 1988 to 1993. *Id.* The court found that because the statements were true, plaintiff did indeed have insurance during the period in question, there could be no actionable misrepresentation or fraud.

Defendant continuously represented to Plaintiff that it would provide her coverage if she could not perform her job due to injury or illness. Defendant's own documents indicate that these representations were false when made. *See* Exhibits 13 and 14. Additionally, Defendant did deny Plaintiff's claims, in accordance to their written guidelines. *Id.* Furthermore, the evidence and practices in this case mirror the illegal practices described in the Decision and Order of the California Insurance Commissioner Upon Settlement, which is attached as Exhibit 15. Those findings include, in pertinent part, the following:

> Selectively using portions of medical records and IME findings to Respondents' own advantage;
> Overruling the opinion of the attending physician after Respondents' in-house medical personnel have conducted a "paper review" of the medical file;
> Targeting certain types of claims for "resolution" (i.e., denial or termination of benefits) in the interest of improving "net termination ratios" - that is, for reasons other than the merits of individual claims or fair, thorough, objective investigations into these claims, such claims generally arising out of high benefit, noncancellable long term disability income policies previously heavily marketed, which had become costly for

the company through increasing claims;

Failing to refer the claimant to the Department of Insurance in the event the claimant believes his or her claim has been denied or benefits have been terminated unfairly;

Continuing to seek additional information where claimants have provided adequate proof of disability, thus unfairly shifting the burden of investigation to the claimant.

Exhibit 16.

Plaintiff engaged in the same wrongful practices in this case that the California Commissioner found they engaged in October 2005. Defendants continuously represented to Plaintiff that in the event that she was unable to perform her job due to sickness or injury they would provide her disability benefits. Defendants never had an intent to uphold their representations of coverage. The Defendants' lack of intention to uphold their representations of coverage is evidenced by the Exhibits discussed *supra*, as well as Plaintiff's adequate documentation of her disabilities and Defendant's refusal to pay her benefits in accordance to the terms of their contract.

**IV. Summary Judgment is Inappropriate as to Plaintiff's Conspiracy Claim**

Defendant's sole argument for summary judgment as to Plaintiff's conspiracy claim is that she cannot maintain the underlying causes of action. As has been discussed *supra*, summary judgment is not warranted as to any of Plaintiff's causes of action. Because summary judgment is not warranted as to Plaintiff's underlying causes of action and this is the only argument Defendant offers in support of its request for motion for summary judgment as to conspiracy, this Court cannot grant summary judgment on Plaintiff's count of conspiracy. *Callens v. Jefferson County Nursing Home*, 769 So. 2d 273 (Ala. 2000).

**V. Future Benefits.**

Defendant claims that Plaintiff is not entitled to future benefits because they allege that the Alabama Supreme Court has held that "the measure of damages for a breach of contract based on the denial of disability insurance benefits does not include

payment of future benefits." (Memorandum in Support of MSJ at pg 27). In support of this assertion Defendant quotes *New York Life Ins. Co. v. Viglas*, 297 U.S. 672, 678 (1936); *Mobley v. New York Life Ins. Co.*, 295 U.S. 632, 638 (1935); *Williamson v. Indianapolis Life Ins. Co.*, 741 So. 2d 1057 (Ala. 1999); and *Box v. Metropolitan Life Ins. Co.*, 168 So. 220, 222 (Ala. 1936). Each of these cases, however, is distinguishable from this case because the cases cited by Defendant do not involve complete repudiation of a contract.

The law applicable to this case, in which the Defendant totally breached the contract is that the Plaintiff is entitled to damages in the amount of "all the injured party's remaining rights to performance." *Dunkin' Donuts of America, Inc. v. Minerva, Inc.*, 956 F.2d 1566, 1582 (11th Cir. 1992) (quoting Restatement (Second) of Contracts§ 236(a) (1979)). Where an insurance company, who has contracted to make money payments to another, "absolutely repudiates and abandons the obligation without just excuse, the obligee is entitled to maintain his action in damages at once for the entire breach." *Williams v. Mutual Ben. Health & Acc. Ass'n*, 100 F.2d 264 (5th Cir. 1938).

Plaintiff has presented evidence that she was disabled and unable to continue to work, verified by Doctors' statements, and Defendant should have paid disability payments in accordance to the contract. Defendant thereafter repudiated and abandoned his duty to make payments to Plaintiff without just cause. In accordance to the applicable law, as is outlined *supra*, Plaintiff is therefore entitled to the payment of future benefits under the terms of the contract.

## III. Conclusion.

Because genuine issues of material fact exist, Plaintiff respectfully requests the Court to deny Defendant's motion for summary judgment.

Respectfully submitted,

/s/ Thomas O. Sinclair
Thomas O. Sinclair (SIN018)
Attorney for Plaintiff

18

OF COUNSEL:
Thomas O. Sinclair
Campbell, Waller & Poer, LLC
2100-A SouthBridge Parkway, Suite 450
Birmingham, AL 35209
(205).803-0051
Fax: (205).803-0053
E-mail: tsinclair@cwp-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2006, I elecrtonically filed the forgoing pleading with the Clerk of the court using the CM/ECF system which will send notifications of such filing to the following:

dfink@handarendall.com
hmorrissette@handarendall.com


  /s/ Thomas O. Sinclair
Thomas O. Sinclair (SIN018)