IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BETTY BULLARD, | § | |
| Plaintiff, | § | |
| | § | CASE NO. |
| vs. | § | |
| | § | CV-2:05-cv-1217-MEF |
| UNUMPROVIDENT CORPORATION; UNUM LIFE INSURANCE COMPANY OF AMERICA, et al., | § | |
| Defendants. | § | |
| | § | |

**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT
UNUM LIFE INSURANCE COMPANY OF AMERICA'S
MOTION FOR SUMMARY JUDGMENT**

Unum Life Insurance Company of America ("Unum Life") filed a motion for summary judgment and a brief in support thereof. Plaintiff has filed an opposition to that motion. This brief is a reply to plaintiff's opposition.

**I.     Introduction.**

Unum Life is entitled to summary judgment on plaintiff's claim for breach of contract because plaintiff is not unable to perform the material and substantial duties of her regular occupation as a secretary, based on plaintiff's undisputed restrictions and limitations and a vocational analysis. At minimum, Unum Life is entitled to summary judgment on plaintiff's claim for bad faith because it is clear that Unum Life conducted a

thorough review of plaintiff's claim, and its decision was based on restrictions and limitations that were agreed upon by plaintiff's own treating physician and on a vocational analysis.    Furthermore, Unum Life is entitled to summary judgment on plaintiff's fraud claims because there is no evidence of any misrepresentation by Unum Life, no evidence of reasonable reliance, and there is no evidence that Unum Life did not intend to perform in accordance with any representation or that Unum Life intended to deceive plaintiff.    Plaintiff's conspiracy claim also fails because there is no underlying tort liability that would support a conspiracy claim.    Finally, plaintiff is not entitled to future benefits.

## II.    Based on the Undisputed Evidence in This Case, Ms. Bullard's Restrictions and Limitations Do Not Prevent Her From Performing the Material and Substantial Duties of Her Occupation as a Secretary Under the Definition in the Policy.

After reviewing all of plaintiff's medical records, Dr. Susy Vergot, assigned restrictions and limitations resulting from plaintiff's medical conditions.    (February 2, 2005 review of Dr. Susy L.L. Vergot (UACL00319-320), Defendant's Exhibit 21)[1].    Plaintiff's own treating physician, Dr. Rachel McKinney, confirmed that Dr. Vergot "adequately listed her limitations from her ulcerative colitis and rheumatoid arthritis," but mentioned that the reported fatigue from fibromyalgia and narcolepsy were not her area of expertise. (February 22, 2005 letter from Dr. McKinney (UACL00417) Defendant's Exhibit 23).

---

[1] All exhibits referenced as "Defendant's Exhibits" are attached to Unum Life's Evidentiary Submissions filed with the original brief.

While plaintiff asserts that the restrictions and limitations from Dr. Vergot failed to take into account fatigue from fibromyalgia and narcolepsy, plaintiff presents no evidence that there were any additional restrictions and limitations relating to those conditions. Plaintiff also acknowledged that her fibromyalgia condition does not, standing alone, keep her from performing the duties of a secretary. (Bullard Depo. at 263, 274)[2]. Furthermore, Plaintiff has presented no evidence that Dr. Vergot did not consider Plaintiff's alleged fatigue. To the contrary, Dr. Vergot's subsequent report, attached as Defendant's Exhibit 24, confirms that Dr. Vergot did consider these concerns in developing the restrictions and limitations.

Moreover, the Attending Physician's Statement from Dr. Ruben Richardson, the only physician listed as treating her for her sleep disorders, did not list any restrictions or limitations on his Attending Physician's Statement. (Attending Physician's Statement from Dr. Ruben C. Richardson (UACL00025), Defendant's Exhibit 9). While Dr. Richardson indicated by checking the box on the Attending Physician's Statement form that Bullard was not released from work in any occupation, that form is dated April 5, 2004 and shows the last date of examination as January 12, 2004. It is undisputed that plaintiff was working full-time in her secretarial position well beyond January 12, 2004.

Dr. Vergot's review of Dr. Richardson's records did not support additional restrictions and limitations from her sleep disorder. (*See* Defendant's Exhibit 21, at

---

[2] Plaintiff cites to plaintiff's complaint on a number of occasions in plaintiff's brief as support for factual assertions. *See* Plaintiff's Brief, p. 2, ¶ 2; ¶ 3; ¶4; ¶ 5; p. 3, ¶10. It is well settled that plaintiff cannot rest on mere allegations of the complaint, even references to specific provisions in the pleadings, to create a material issue of fact sufficient to defeat summary judgment. *See* 6 James Wm. Moore et al., Moore's Federal Practice § 56.10 (3d ed. 1999). Statements supported solely by these citations should be disregarded.

UACL00319-320).    Plaintiff also testified that it was hard for her to say whether her narcolepsy prevented her from performing her duties as a secretary, although she claimed that it was getting close to that point. (Bullard Depo. at 251-252, attached as part of Plaintiff's Exhibit 17).    Furthermore, plaintiff's claim that her sleep disorder prevents her from working as a secretary is contradicted by her ongoing work at Sylvan Learning Center. (Bullard Depo. at 11-18 and 102)[3]. Indeed, she testified that she started working at Sylvan as a testing proctor in 2002, that she continues to work at least eight hours per week for Sylvan in that capacity, and that her duties include greeting examinees, checking their identification against a roster, showing them to the test area and watching them via monitor while they are taking tests. (*Id.*)

Unum Life had the restrictions and limitations assigned by Dr. Vergot reviewed by Shannon O'Kelley, M.Ed., C.R.C., a Senior Vocational Rehabilitation Consultant. (Defendant's Exhibit 25, UACL00383-384).    Shannon O'Kelley opined that Ms. Bullard's restrictions and limitations should not prevent her from performing her job. (*Id.*).[4]

Based on the above, Unum Life is entitled to summary judgment on plaintiff's contract claim because plaintiff's restrictions and limitations do not prevent her from performing the material and substantial duties of her occupation.

---

[3] Additional testimony of Ms. Bullard referenced in this reply brief is being filed contemporaneously herewith as Defendant's Exhibit 29, contained in Unum Life's Supplemental Evidentiary Submissions.

[4] Plaintiff cites to Exhibit 12, which purports to be a letter from the Alabama Department of Rehabilitation Services to defendant.  This letter is not authenticated or even dated.  Moreover, there is no record of this letter ever being received by Unum Life during the handling of plaintiff's claim.  Furthermore, the information in the report constitutes expert opinion and plaintiff has not disclosed the author of this letter in her Initial Disclosures or in any expert disclosures.  For those reasons, this document is inadmissible and this Court should ignore it and any arguments based on it.  Furthermore, the letter is clearly contradicted by plaintiff's ongoing work at Sylvan Learning Center. (Bullard Depo. at 11-18, 102).

There is certainly no basis for concluding that plaintiff is unable to perform the duties of "any gainful occupation for which she is reasonably fitted by education, training, or experience," which is the definition that would apply after twenty-four months of payments under the Disability Policy. (Disability Policy, Exhibit A to Ward Affidavit, which is Defendant's Exhibit 2, at LTD-BEN-1).

Furthermore, Unum Life is entitled to summary judgment on plaintiff's claim for waiver of life insurance premiums. The disability definition for that benefit requires that plaintiff be "prevented from performing the usual tasks of any occupation for which you are reasonably suited by training and education in such a way as to procure and retain employment." (Life Policy, Exhibit B to Ward Affidavit, at Employee-2 and Glossary-3). In addition to the lack of restrictions and limitations that would support such a claim, plaintiff's ongoing work at Sylvan Learning Center precludes a finding that she is entitled to a life waiver insurance premium benefit.

For the above reasons, and the reasons in Unum Life's original brief, this Court should grant Unum Life's motion for summary judgment on plaintiff's contract claims relating to her disability insurance coverage and her life insurance premium waiver.

## III.   Plaintiff has Failed to Provide Evidence of Bad Faith Sufficient to Survive Summary Judgment on That Claim.

### A.   Unum Life thoroughly investigated plaintiff's claim and had a debatable reason for its decision.

As established in Unum Life's original brief, the claim file documents, including the medical reviews and the vocational analysis, establish that Unum Life had, at a

minimum, a debatable reason for finding that plaintiff did not qualify for benefits.[5] While plaintiff makes the conclusory argument that there was no debatable reason for defendant's decision, plaintiff contradicts that argument in her brief by stating that "when the evidence that has been presented to this Court is viewed in the light most favorable to the plaintiff, as it must be at this stage of the proceedings, it is clear that there is a genuine issue of material fact as to whether plaintiff is entitled to disability benefits." (Plaintiff's Brief, at 10). Therefore, even plaintiff's own brief acknowledges that there is at least a dispute of fact, i.e., reason for debate, as to whether plaintiff is entitled to disability benefits, which alone should be the end of plaintiff's bad faith claim.

Furthermore, it cannot be seriously argued that Unum Life failed to determine whether there was a legitimate or arguable reason to refuse to pay plaintiff's claim. All of the documents initially submitted by Ms. Bullard were reviewed, including the claim forms and Attending Physician's Statements. (Ward Affidavit ¶ 4). Medical records from Ms. Bullard's physicians were also requested and reviewed. (*Id.*). In fact, those records were reviewed by a registered nurse and also by a board certified physician, who determined that the available information did not support restrictions and limitations sufficient to explain why Ms. Bullard could not return to work. (August 27, 2001 Clinical Review Notes (UACL00165-167), Defendant's Exhibit 12; August 18, 2004 Clinical Review Notes (UACL00168-170), Defendant's Exhibit 13).

---

[5] Obviously, to the extent Unum Life is awarded summary judgment on plaintiff's breach of contract claims, plaintiff's bad faith argument essentially becomes moot.

After informing Ms. Bullard of the results of this review, Unum Life encouraged Ms. Bullard to submit any additional information in support of her disability and further advised her of her right to appeal the denial. (September 1, 2004 Letter to Ms. Bullard (UACL00186-189), Defendant's Exhibit 14). After Ms. Bullard appealed the denial of her claim and forwarded additional medical records, Unum Life again had all of the records reviewed by a registered nurse. (November 30, 2004 Medical Response (UACL00353-354), Defendant's Exhibit 19). Unum Life also had records from plaintiff's therapist reviewed by a Ph.D. psychologist, who found no basis for a loss of functional capacity as a result of psychological factors. (December 14, 2004 Clinical Note ( UACL00365-367), Defendant's Exhibit 20). Unum Life then had all of plaintiff's medical records reviewed by Dr. Susy L.L. Vergot, a board certified family practice physician, who considered the impact of all of Ms. Bullard's conditions on her as a whole person, and developed restrictions and limitations based on those records. (February 2, 2005 Review by Dr. Vergot (UACL00319-320), Defendant's Exhibit 21).

Dr. Vergot forwarded those restrictions and limitations to Dr. McKinney, plaintiff's primary treating physician, and Dr. McKinney confirmed that Dr. Vergot had adequately listed plaintiff's restrictions and limitations from her ulcerative colitis and her rheumatoid arthritis. (February 22, 2005 Letter from Dr. McKinney (UACL00417), Exhibit 25). Dr. Vergot reviewed Dr. McKinney's letter and the records and documented her conclusion that Dr. McKinney's response did not alter the restrictions and limitations which she previously assigned. (February 28, 2005 Review by Dr. Vergo (UACL00408), Defendant's Exhibit 24).

Unum Life also had a vocational rehabilitation specialist, Shannon O'Kelley, perform a vocational review, and Ms. O'Kelley concluded that Ms. Bullard could perform her occupation within the restrictions and limitations provided by Dr. Vergot. (February 8, 2005 Vocational Review (UACL00383-385), Defendant's Exhibit 25).

Upon receiving additional records, Unum Life had Dr. Vergot review the additional records, which resulted in Dr. Vergot confirming the previously assigned restrictions and limitations. (March 2005 Clinical Review (UACL00514-515), Defendant's Exhibit 26).

Even after informing Ms. Bullard that Unum Life was upholding the denial of her claim for disability benefits and her life waiver claim, Unum Life again offered plaintiff an opportunity to have her claim reassessed, but plaintiff did not take advantage of this opportunity. (Plaintiff's Exhibit 10).

These undisputed material facts establish that Unum Life thoroughly investigated plaintiff's claim and subjected the results of that investigation to cognitive review. Plaintiff has presented no evidence to the contrary, and this Court should, therefore, enter summary judgment on plaintiff's bad faith claim.

**B.  Plaintiff's arguments on her bad faith claims also fail.**

In a failed effort to save her bad faith claim, plaintiff argues that Unum Life wrongfully failed to obtain an independent medical examination.  In addressing a similar Unum Life policy, the Eleventh Circuit recently recognized that there is no provision in Unum Life's policy obligating Unum Life to obtain an independent medical examination. *Muzyka v. Unum Life Insurance Company of America*, Slip Opinion No. 05-14289, *5,

2006 WL 2613726 (11th Cir. September 13, 2006).  *See also Marques v. Reliance Standard Life Insurance Company*, 1999 WL 1017475 (E.D. Pa. 1999) (the policy does not grant plaintiff a right to an independent medical examination.  Rather, the policy grants the defendant the right, if it chooses, to have a plaintiff interviewed and examined).  Likewise, under the policies in this case, Unum Life had no obligation to obtain an independent medical exam.

Furthermore, in addition to failing to cite to any policy provision requiring an independent medical examination, plaintiff fails to present any evidence as to any benefit that would have been achieved by an independent medical examination under the facts of this case.  It is undisputed that the restrictions and limitations defined by Unum Life's board certified reviewing physician were endorsed by plaintiff's own treating physician as being accurate.  Moreover, Unum Life had records from a recent sleep study on plaintiff.  Accordingly, there is no evidence that there was any need for an independent medical examination.  Under the facts of this case and the above Eleventh Circuit authority, Unum Life had no obligation to obtain an independent medical exam.

In an apparent recognition of the insufficiency of her bad faith claim based on the facts of this case, plaintiff improperly seeks to bolster her bad faith claim by referencing various documents unrelated to this case that are unauthenticated, constitute inadmissible hearsay, and are irrelevant to the matters at issue in this case.

Plaintiff first makes the completely unsupported assertion that Unum Life's employees are rewarded for denying claims.  Plaintiff offers no support for this assertion

other than a general citation to Plaintiff's Exhibit 13,[6] a 95 page document that is unauthenticated, but purports to be a document prepared by an outside law firm uninvolved in this case. Plaintiff's general citation to this document violates Section 2 of the Scheduling Order in this case providing that, "the discussion of the evidence in the brief must be accompanied by a specific reference, by page and line, to where the evidence can be found in the supporting deposition or document. Failure to make such reference will result in the evidence not being considered by the Court." *See also* 6 James Wm. Moore et al., Moore's Federal Practice § 56.10 at p. 56-153 (3d ed. 1999) (the party opposing summary judgment has an affirmative duty to direct the court's attention to those specific portions of the record on which the party relies to create a genuine issue of material fact). For that reason alone, this Court should disregard that document and plaintiff's argument.

Furthermore, plaintiff fails to show a date for the document and fails to provide any authentication or other supporting evidence that would tie this document, which references Provident Life & Accident Insurance Company, rather than Unum Life, to this case. Plaintiff provides no basis for concluding that any information in the report was ever adopted by UnumProvident or Unum Life, or that UnumProvident or Unum Life were even affiliated with Provident Life & Accident Insurance Company at the time that the report was prepared. Furthermore, there is no evidence tying this document to defendant's procedures at the time of the handling of plaintiff's claim. Therefore, in

---

[6] Unum Life and UnumProvident have filed contemporaneously herewith a motion to strike this exhibit and certain other exhibits submitted by plaintiff, including Plaintiff's Exhibits 12, 14, 15 and 16, from the record.

addition to being excluded because of the violation of the Scheduling Order, this Court should ignore this exhibit and plaintiff's argument relying on it on the basis that it is unauthenticated, is inadmissible hearsay not within any exception, and there has been no showing by plaintiff of any relevance to the present case.  Finally, the document, which was not produced in this case, is clearly protected by the attorney-client privilege, as indicated on every page of the document.

In plaintiff's final attempt to rescue her bad faith claim, she seeks to rely on the Targeted Multi-State Market Conduct Examination Report, which is Plaintiff's Exhibit 16.  Plaintiff provides no basis for establishing that this document is admissible.  Indeed, the report is clearly inadmissible hearsay and is not subject to any exception.  It is anticipated that plaintiff will argue that the document is admissible under *Federal Rule of Evidence* 803(8), the exception for public records and reports.  However, Section (C) of that Rule dictates that the exception only applies to "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate a lack of trustworthiness."  The Report makes no conclusions or "factual findings."  It only identifies several "areas of concern" identified for discussion.  (Plaintiff's Exhibit 16, at 6, 10).  As explained in the report:

> after consultation with the Companies' senior management
> and the Board of Directors of the Parent Company,
> agreement in principle was reached between the Lead States
> and the Companies on the Plan of Corrective Action described
> below.  This agreement obviated the need for additional
> investigation, review of a larger claim sample, **specific claim
> findings or reaching a formal conclusion concerning the
> examination objective**....

(Plaintiff's Exhibit 16) (emphasis added).

This language establishes that the report contains no specific findings or formal conclusions. In discussing the same report, the court in *Ralston v. Suiza Dairy Group, L.P.*, 2006 WL 2917343 (N.D. Indiana October 10, 2006) held as follows:

> [t]he "general areas of concern" expressed in the Report
> hardly rise to the level of findings of fact, as a plan of
> corrective action agreed upon by the parties and set forth
> in the Report, which appears in essence to be a settlement
> agreement, "obviated the need for... specific claim findings
> or reaching a formal conclusion concerning the examination
> objective."

*Ralston* 2006 WL 2917343 at *10, fn. 6 (quoting the Report at 10).

As indicated in *Ralston*, the above-quoted language from the Report also makes it clear that the Report is tentative or interim, subject to additional investigation and review, which was obviated by a settlement agreement. (*Id.* at 10). Controlling Eleventh Circuit authority holds that Rule 803(8) does not provide an exception to the hearsay exclusion for tentative or interim reports subject to revision and review. *Toole v. McClintock*, 999 F. 2d 1430, 1434-1435 (11th Cir. 1993).

In addition, because it is essentially a settlement agreement, the Report clearly lacks the trustworthiness required for the 803(8)(C) exception. *See General Electric Capital v. Lease Resolution*, 128 F. 3d 1074, 1084 (7th Cir. 1997) (a settlement agreement has none of the indicia of trustworthiness found in a public record).

Finally, it appears from the face of the Report that the Report was not a report of a public agency as referenced by 803(8), but rather is a report made to the agencies by

outside counsel and outside examiners. *See* Report, at 14. This provides an additional reason for taking the report outside of Rule 803(8) hearsay exception.

In addition to the above, the Report is irrelevant to this case. As recognized by the court in *Ralston:* "the report, which reviewed 299 randomly-selected claim files and identified 'several general areas of concern' but reached no conclusions (Report at 6, 10), is seemingly irrelevant to this Court's determination as to whether Unum acted arbitrarily and capriciously in Ralston's case." *See also Stenner-Muzyka v. Unum Life Insurance Company of America,* 2005 WL 1610708 (M.D. Fla. July 7, 2005) (holding that the regulatory settlement agreement is not relevant and is unpersuasive in that case). At minimum, the Report should be excluded under Rule 403 because any probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.

Moreover, as noted above, the arguments made by plaintiff based on the Report are not pertinent in this case. Controlling authority provides that there was no requirement to conduct an independent medical examination under the policy. Plaintiff has failed to show any benefit that would have been gained from an independent medical examination under the facts of this case, particularly when plaintiff's own treating physician agreed to the restrictions and limitations assigned by Unum Life's board certified reviewing physician. Unum Life's board certified reviewing physician reviewed all of the records submitted by plaintiff's treating physicians in the process of assigning the restrictions and limitations and Unum Life subjected those restrictions and limitations to review by a vocational consultant. Unum Life concluded that those reviews and the

agreed upon restrictions and limitations from the records did not support the conclusion that plaintiff was disabled under the terms of the policies. There is absolutely no legitimate basis for concluding that Unum Life acted in bad faith.

For the above reasons, this Court should reject plaintiff's bad faith claim and enter summary judgment in favor of Unum Life because plaintiff has failed to provide sufficient evidence to survive summary judgment on that claim.

**IV.    There is No Evidence to Support Plaintiff's Fraud, Suppression, and Misrepresentation Claims.**

    **A. Plaintiff has failed to show any fraudulent misrepresentation.**

As established in Unum Life's initial brief, no actionable fraud occurred in this case because Ms. Bullard admitted that she had never heard any representations about either of her policies from any employee or representative of Unum Life or UnumProvident. (Bullard Depo. at 319).

In an attempt to avoid the impact of this testimony, plaintiff now shifts from the fraud claim asserted in the complaint to a new claim that Unum Life provided "a manual" to plaintiff describing the insurance that she was purchasing. At page 15 of her brief in opposition to Unum Life's motion for summary judgment, plaintiff states that "defendant provided a manual to plaintiff describing the insurance coverage that she was purchasing" and that "defendant has now refused to provide plaintiff with a copy of this manual in discovery." Both of these assertions are false.

Regarding documents which she contends contain representations regarding the policy, Ms. Bullard testified that she received a three-page handout regarding her

coverage from Ginny Hancock, who worked for plaintiff's employer - **not Unum Life or UnumProvident**. (Bullard Depo. at 59-61).   Ms. Bullard provided a copy of this handout during her deposition, and it is included in this defendant's previously filed evidentiary submissions.   Ms. Bullard also testified that she received an employee manual from her employer that she believes contained a description of her insurance coverage. (Bullard Depo. at 312).   There is absolutely no evidence that Unum Life or UnumProvident furnished Ms. Bullard with an employee manual. (*Id.* at 327-331).   Ms. Bullard agreed to furnish a copy of the employee manual to her attorney if she was able to locate the manual. (*Id.* at 313).

Ms. Bullard testified that the employee manual and handout from Ginny Hancock are the only additional documents upon which she bases her claim that defendant promised to pay her disability benefits. (Bullard Depo. at 316-317).   Inasmuch as neither of these documents came from the defendants, plaintiff's assertion that the statements "made in the manual are sufficient representations to support a claim for fraud or misrepresentation [against defendants]" is without merit.   Moreover, plaintiff provides absolutely no evidentiary support for her statement that "this manual contains numerous representations from defendant made to plaintiff to induce her to purchase their insurance policies."

Plaintiff then goes a step further and attempts, again without citing any evidentiary support, and asserts that plaintiff's employers were acting as defendants' agents for which defendants are liable.   Plaintiff has cited no evidentiary support for her assertion that her

employers were acting as agents for defendants. Furthermore, she has plead no agency theory in her complaint.

Under Alabama law, a "plaintiff must present substantial evidence of an agency relationship" and agency "may not be presumed." *Youdath v. Great Atlantic & Pacific Tea Company*, 844 So. 2d 1242, 1247 (Ala. Civ. App. 2002) (affirming summary judgment for supplier after noting that plaintiff's complaint failed to aver that third party was supplier's agent). In order to recover under an agency theory, plaintiff must sufficiently plead an agency relationship in her complaint. *Morton v. Jackson Hospital and Clinic, Inc.*, 548 So. 2d 1015, 1017 (Ala. 1989) (affirming summary judgment in favor of defendant after holding that the allegations of plaintiff's complaint did not give defendant adequate notice of plaintiff's agency claim). Indeed, the Alabama Supreme Court, in *Robinson v. Allstate Insurance Company*, 399 So. 2d 288 (Ala. 1981), stated as follows: "While the Alabama Rules of Civil Procedure liberalized our forms of pleading, they did not throw the baby out with the wash. We opine that the pleader must, in pleading agency, allege some facts that show an agency relationship; that the agent was acting within the line and scope of his authority; and that the injury complained of was the proximate result of the agent's negligence or wantonness." *Robinson*, 399 So. 2d at 290.

In her Complaint, Ms. Bullard does not allege facts showing an agency relationship. Indeed, she doesn't even allege that her employer was an agent of the defendants. Nor has she cited, in her brief, any evidence, much less substantial evidence,

of an agency relationship between her employer and defendants. For these reasons, the new claim in her brief based on these agency assertions must fail.

### B. Plaintiff has failed to show reasonable reliance.

As also asserted in Unum Life's original brief, plaintiff's fraud claims fail because plaintiff has failed to provide evidence of reasonable reliance, or any reliance for that matter. Plaintiff does not dispute this assertion in her brief. The requirement of reasonable reliance applies not only to a claim for fraudulent misrepresentation, but also to a suppression claim. As explained by the Alabama Supreme Court: "[T]o prove fraudulent suppression, the plaintiff must show that he acted, or refrained from acting, in reliance on a false impression that the non-disclosed fact did not exist, or that he relied on his 'erroneous impression created by the ambiguous representation.'" *Ford New Holland, Inc. v. Proctor Russell Tractor Co.*, 630 So. 2d 395, 399 (Ala. 1993). It is undisputed in this case that the policies at issue were selected and provided by plaintiff's employer as an employee benefit and that the employer paid 100% of the premiums. (See Defendant's original brief at 22). Plaintiff has failed to cite evidence to show that she acted in reliance on any alleged misrepresentation or non-disclosure.[7]

---

[7] Plaintiff has also completely failed to respond to Unum Life's showing that it is entitled to summary judgment on plaintiff's suppression claim because plaintiff has failed to prove the essential element of knowledge. (Unum Life Summary Judgment Brief, pp. 23-24). This Court should grant Unum Life's motion for summary judgment on plaintiff's suppression claim for that reason as well. (Fed. R. Civ. P. 56(e)).

**C.  Plaintiff provides no evidence to support her promissory fraud claim.**

Finally, plaintiff's misrepresentation claims in the complaint are claims of promissory fraud.  Plaintiff has failed to provide any evidence in this case that anyone making representations on behalf of Unum Life in this case did not intend that Unum Life would perform as represented or that Unum Life intended to deceive plaintiff at the time of the alleged representations.  Therefore, under Alabama law, plaintiff's promissory fraud claims fail as a matter of law for that reason as well.  *Goodyear Tire & Rubber Co. v. Washington*, 719 So. 2d 774, 776 (Ala. 1998).

In an attempt to make a showing of intent, plaintiff again turns to inadmissible documents that have no connection to this case.  Plaintiff first makes a general citation to Exhibits 13 and 14, which consist of the report by the outside law firm of LeBoeuf, Lamb, Greene & MacRae, LLP to Provident Life, and a document entitled "Fibromyalgia Position Statements and Guidelines."  Plaintiff once again violates the Scheduling Order by failing to cite any specific information in either of these documents to support her argument or to explain how either of these documents provides any evidence in support of her promissory fraud claim.  Scheduling Order, Section 2.  *See also* 6 James Wm. Moore et al., Moore's Federal Practice § 56.10 at p. 56-153 (3d ed. 1999) (the party opposing summary judgment has an affirmative duty to direct the court's attention to those specific portions of the record on which the party relies to create a genuine issue of material fact).  For that reason alone, the Court should ignore these exhibits.  Furthermore, these exhibits are unauthenticated, and plaintiff provides absolutely no evidence or indication that they are in any way tied to the facts of this case.

- 18 -

In an attempt to rescue her fraud claims, plaintiff next cites Plaintiff's Exhibit 15, which is titled Decision and Order of the California Insurance Commissioner Upon Settlement. That document, like the Multi-State Market Conduct Exam report discussed above, is inadmissible hearsay, not within any exception. This document is not a final finding of liability, but rather outlines a settlement agreement. The report provides as follows:

> "WHEREAS Respondents neither admit nor concede any actual or potential fault, wrongdoing or liability in connection with the allegations contained in the Accusation; and
>
> WHEREAS the Department of Insurance contends that the violations alleged in the Accusation, **if heard and proved**, would constitute grounds for the Insurance Commissioner to suspend Respondents' Certificates of Authority, impose civil penalties and issue an order prohibiting Respondents from engaging in the conduct at issue; and
>
> WHEREAS, Respondents and the Department of Insurance have undertaken extensive discussions to resolve the issues in this proceeding, without either party admitting the other's contentions, through **compromise settlement without litigating the issues**...."

(Plaintiff's Exhibit 15, at 1-2) (emphasis added).

That language establishes that the Report makes no final findings or conclusions because of the settlement and that, like the Multi-State Exam Order discussed above, the statements in the document are tentative and would be subject to review, but for the settlement. Therefore, for the same reasons stated above regarding the Multi-State Order, this report is inadmissible hearsay.

Plaintiff also fails to provide any explanation as to how the Report, which addresses California claims and is dated after the final decision on plaintiff's claim in this case, provides evidence that Unum Life intended that any representations concerning plaintiff's coverage would not be performed as represented or that Unum Life intended to deceive plaintiff at the time of any alleged misrepresentations.

For each of the above reasons, which are sufficient in and of themselves, this Court should enter summary judgment on plaintiff's claims for fraud, suppression, and misrepresentation.

**V.      This Court Should Grant Summary Judgment on Plaintiff's Conspiracy Claim Because Plaintiff Cannot Maintain Any Underlying Cause of Action to Support Conspiracy.**

Under Alabama law "if the underlying cause of action is not viable, the conspiracy claim must also fail." *Massengill v. Malone Freight Lines*, 528 So. 2d 784, 787 (Ala. 1988).  Since, as explained in UnumProvident's summary judgment briefing, UnumProvident cannot be held liable for breach of contract or bad faith, there can be no conspiracy between Unum Life and UnumProvident on the breach of contract or bad faith claims.  *Wright v. State Farm*, 1997 WL 114902 at *3 (M.D. Ala. 1997) (since non-parties to the contract cannot be held liable for bad faith, they may not be held liable for conspiracy to commit bad faith).  Also, as established above, plaintiff's allegations of fraudulent misrepresentation and suppression fail; therefore, those claims will likewise not support a conspiracy claim.  This Court, therefore, should reject plaintiff's conspiracy claim.

## VI.    Unum Life is Entitled to Summary Judgment on Any Claim by Plaintiff for Future Benefits.

In an attempt to escape the clear Alabama law holding that recovery of future benefits on an insurance contract is not permitted, plaintiff makes the argument that Unum Life completely repudiated the contract in this case.    There is simply no evidentiary basis for finding repudiation in this case.  The Alabama Supreme Court has been very clear as to the proof necessary to show complete repudiation, holding as follows:

> The evidence must show words or acts of evincing an
> intention to refuse performance within the future time
> allowed by the contract…. "Merely because a given act
> or course of conduct of one party to a contract is inconsistent
> with the contract is not sufficient; it must be inconsistent with
> the intention to be longer bound by it."

*Johnston v. Green Mountain, Inc.*, 623 So. 2d 1116, 1121 (Ala. 1993) (quoting *Draughon's Business College v. Battles*, 50 So. 2d 788, 790 (Ala. App. 1951)).

Regardless of this Court's ultimate findings on liability, there is no evidence in this case that Unum Life did not intend to be bound by this contract in the future.  To the contrary, in its correspondence with plaintiff concerning her claim, Unum Life repeatedly invited her to submit additional information for further consideration, and also to submit an appeal of the decision. Moreover, even after rendering a decision on plaintiff's appeal, Unum Life offered plaintiff the opportunity to submit her claim for reassessment. (Plaintiff's Exhibit 10).    Plaintiff chose not to submit her claim for reassessment. Certainly, this course of conduct by Unum Life refutes any assertion that Unum Life

completely repudiated the contract. There is no basis, and plaintiff has provided no basis for finding a complete repudiation in this case.

The only insurance contract case cited by plaintiff, *Williams v. Mutual Benefit Health & Accident Ass'n.*, 100 F. 2d 264 (5th Cir. 1938), actually demonstrates that Unum Life did not completely repudiate the contract in this case. In *Williams*, a case decided under Texas law, the court noted that the doctrine of anticipatory repudiation is not applicable to cases where the insurer "merely denies liability or claims defenses under the terms of the policy." The allegation in *Williams* was that the insurance company told the plaintiff that it would not pay him "in any event" under the contract. The court found in that case that the refusal to pay "in any event" goes beyond the denial of liability or the assertion of defenses under the terms of the policy. (*Id.* at 265).

In the present case, Unum Life did not refuse to pay "in any event," but rather Unum Life refused to pay because it denied liability under the terms of the policy. As exemplified by its offer of reassessment, Unum Life stood ready to pay if plaintiff met the policy requirements for receiving benefits under the policy.

Accordingly, this Court should reject plaintiff's repudiation argument and enter summary judgment in favor of Unum Life on plaintiff's claim for future benefits.

## VII.  Conclusion.

Based on the above facts and authority and those in Unum Life's original brief, this Court should grant Unum Life's motion for summary judgment as to each of plaintiff's claims.

*s/Douglas W. Fink*
HENRY T. MORRISSETTE          (MORRH7622)
DOUGLAS W. FINK                      (FINKD3798)
Attorneys for Defendants Unum Life and
UnumProvident Corporation

OF COUNSEL:

HAND ARENDALL, L.L.C.
Post Office Box 123
Mobile, Alabama  36601
Phone: (251) 432-5511
Fax:     (251) 694-6375

## CERTIFICATE OF SERVICE

I hereby certify that on this day, November 6th, 2006, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which will send notifications of such filing to the following:

tsinclair@cwl-law.com

*s/Douglas W. Fink*