IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BETTY BULLARD ) ) Plaintiff, ) ) v. ) ) CASE NO. UNUMPROVIDENT CORPORATION; ) UNUM LIFE INSURANCE COMPANY ) 2:05-cv-1217-MEF OF AMERICA, et al., ) ) Defendants. ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE**

COMES NOW, the Plaintiff, Betty Bullard, by and through her undersigned counsel of record and respectfully requests the Court deny the defendants' motion to strike plaintiff's evidentiary submissions in support of her motion for summary judgment. Defendants misstate the standard regarding what evidence a court may consider when ruling on a motion for summary judgment. The evidence Plaintiff has submitted in support of her motion for summary judgment is evidence "which can be reduced to an admissible form", *Rowell v. Bellsouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005), in accordance to long standing Alabama law.

    I.    **Evidence A Court May Consider When Ruling on a Motion for Summary Judgment**

Defendants falsely assert that "[o]n a motion for summary judgment, the court may consider only that evidence that is in admissible form" and cite *Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005), as the basis for this incorrect statement of law. (Defendants' Motion to Strike and Memorandum of Law in Support, pg. 1). In *Rowell*, the Eleventh Circuit actually noted that "[o]n motions for summary judgment, we may consider only that evidence which can be reduced to an admissible form." 433 F.3d at 800. This has long been the rule. *See Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999) (holding that a hearsay statement may be considered in ruling on a motion for

summary judgment if it can be reduced to admissible evidence at trial or reduced to admissible form); *see also McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996) (allowing "otherwise admissible evidence to be submitted inadmissible form at the summary judgment stage, though at trial it must be submitted in admissible form").

It is therefore clear that a court may consider evidence in an inadmissible form when ruling on a motion for summary judgment, if it may be reduced to an admissible form for trial. Defendants' assertion to the contrary is simply false.

## II.     November 18, 2004 Report of the Targeted Multistate Market Conduct Examination, Plaintiff's Exhibit 16

### A. The Report

Plaintiff included, as Exhibit 16 to her opposition to Defendants' motion for summary judgment, the November 18, 2004 Targeted Multi-State Conduct Examination Report (hereinafter "the Report"). The Report was generated pursuant to a targeted multistate examination of the Defendants' claims handling practices. *See* Plaintiff's Exhibit 16 to Opp to Defs' MSJ, pg 3. The multistate examination was commenced by the Maine Bureau of Insurance, the Massachusetts Division of Insurance and the Tennessee Department of Commerce and Insurance "[p]ursuant to the authority granted by Section 24-A *Maine Revised Statutes Annotated*, Chapter 175 *Massachusetts General Laws* Section 4 and *Tenn. Code Ann.* § 56-1-408. *Id.*, see also pg. 1. The Report details specific findings of wrongdoing on behalf of the Defendants in relation to their practice of wrongfully denying insurance claims that the multistate examination revealed. The Defendants now move to strike the Report.

### B. Argument

**1. Correct standard by which a federal Court may consider evidence in support of an opposition to motion for summary judgment.**

In support of their motion, the Defendants assert that the federal court for the Northern District of Indiana held, in *Ralston v. Suiza Dairy Group, L.P.*, 2006 WL 2917343 (N.D. Indiana October 10, 2006) (Exhibit 1), that this report merely identified general areas of concern that did not rise to the level of findings of fact. (Defendants' Motion to Strike and Memorandum of Law in Support, pg. 3). Contrary to this assertion, the Northern District did not hold any such thing. Defendants' citation points to a

2

footnote in which the Court addressed the issue of whether it would take *judicial notice* of the report of the targeted multistate market conduct examination. *Ralston*, 2006 WL 2917343 at *10. fn. 6. The Court noted that Federal Rule of Evidence 201 permits a federal court to take judicial notice only of an "'adjudicative fact that is both 'not subject to reasonable dispute' and either 1) 'generally known within the territorial jurisdiction of the trial court' or 2) 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Ralston*, at *10, fn. 6 (quoting *General Electric Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) (quoting in turn Fed. R. Evid. 201(b))). The Court found that the Report could not be held to the high standard of a finding of fact, as is required by Fed. R. Evid. 201, and therefore it could not take judicial notice of it.

Clearly this standard is inapplicable in this case. Plaintiff is not asking this Court to take judicial notice of the Report. Plaintiff is merely including the Report as an Exhibit in support of its Opposition to Defendants' motion for summary judgment. Plaintiff's evidence submitted in support of its opposition to Defendants' motion for summary judgment does not have to meet the stringent test required for a court to take judicial notice of evidence. Such an argument would effectively eliminate all of Defendants' own evidence submitted in support of its motion for summary judgment. As discussed *supra*, this Court may properly consider any evidence *that may be reduced to admissible form* when ruling on a motion for summary judgment.[1]

**2. The Report is not irrelevant.**

Defendants assert that the Report is inadmissible evidence because it is irrelevant, pursuant to Fed. R. Evid. 401-402, and that it is inadmissible hearsay, pursuant to Fed. R. Evid. 802. Defendants' argument that the Report is irrelevant is clearly incorrect. Plaintiff's complaint has asserted claims of breach of contract, bad faith, fraud, suppression, misrepresentation, and conspiracy. *See* Plaintiff's Complaint, ¶¶ 47-74. In support of Plaintiff's claims, Plaintiff has asserted that Defendants "entered into a pattern and practice of fraudulent conduct … by denying benefits that were due to be paid [to] …

---

[1] Plaintiff issued a 30(b)(6) notice to Defendants seeking to take a corporate representative's deposition on this topic. Plaintiff is currently allowing Defendants time to reconsider their objection to this area of testimony. If Defendants continue to refuse to produce a witness on this topic, Plaintiff will file a motion to compel.

Plaintiff, and other insureds[.]" *See* Plaintiff's Complaint, ¶ 62. Plaintiff's Complaint further sets forth that "the Defendants intentionally, deliberately, and maliciously failed to disclose to the Plaintiff and similarly situated insureds that Defendants would not honor the terms of Plaintiff's policies of insurance, that the true facts would be disregarded[.]" *See* Plaintiff's Complaint, ¶ 67.

Fed. R. Evid. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence of the wrongful practices that Defendants undertook in their "evaluation" of their insureds' claims is clearly relevant to Plaintiff's claims against the Defendants. Plaintiff is asserting claims against the Defendants that they fraudulently misrepresented to her that they would pay her benefits in the event that she was disabled. Plaintiff's claims center around the fact that Defendants never had an intention of fulfilling these representations and Defendants' practices in how they evaluated their insureds' claims, as is discussed in the Report, is thus clearly relevant.

**3. The Report falls within the exception to hearsay embodied in Fed. R. Evid. 803(8)(c).**

Defendants' hearsay argument likewise has no merit. The Report is admissible pursuant to the exceptions embodied in Fed. R. Evid. 803(8)(c). Fed. R. Evid. 803(8)(c) provides an exception from the hearsay rule for "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth … factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate a lack of trustworthiness." As stated *supra*, the Report was commenced by the Maine Bureau of Insurance, the Massachusetts Division of Insurance and the Tennessee Department of Commerce and Insurance "[p]ursuant to the authority granted by Section 24-A *Maine Revised Statutes Annotated*, Chapter 175 *Massachusetts General Laws* Section 4 and *Tenn. Code Ann.* § 56-1-408." The report was thus generated by a public office or agency and sets forth factual findings from an investigation made pursuant to authority granted by law. The Report clearly falls within the exception to hearsay provided by Fed. R. Evid. 803(8)(c). Defendants blindly assert that the Report "is essentially a settlement agreement" and thus

4

lacks the trustworthiness required for the 803(8)(c) exception. The Report is <u>not</u> a settlement agreement and Defendants offer no further support for its bare assertion that the Report lacks trustworthiness. Fed. R. Evid. 803(8)(c) clearly requires an indication of a lack of trustworthiness, which the Defendants have failed to produce because it simply does not exist.

Even if this Court holds that the Report is not admissible pursuant to one of the aforementioned exceptions to the hearsay rule, the Report would still be admissible for impeachment purposes. *See Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999). Defendants have asserted in response to Plaintiff's claim of fraud that "[t]he policies do in fact provide benefits if the insured meets the definition of disability contained in the policies." *See* Defendants' Motion for Summary Judgment, pg. 21. Plaintiff has presented evidence that she is and was disabled in accordance to the terms of the policies but that Defendants engaged in a pattern and practice of wrongfully denying insureds' disability claims. The Report details the extent to which Defendants manipulate their insureds' claims for benefits in order to assert that their insureds do not meet the definition of disability contained in their policies. *See* Plaintiff's Exhibit 16, to Opp to Defs' MSJ, pgs 6-9. Plaintiff has presented evidence that Defendants engaged in the same patterns and practices described in the Report in its wrongful denial of her claims. *See* Plaintiff's Opp to Def Unum Life's MSJ, pgs 12-14. Plaintiff intends to question Defendants on their pattern and practice of wrongfully denying their insured's claims in an effort to maximize their profit.

In addition, Plaintiff has served upon the Defendants a Request for Admission seeking to have the Defendants either authenticate the documents as "true and accurate copies of the documents maintained by you in the ordinary and regular course of business" <u>or</u> produce a copy of the document from their business records. The document will thus be "reduced to admissible form" through a corporate representative's testimony or through the authentication of the document.

### C. Conclusion

When reviewing a motion for summary judgment, a federal Court may consider evidence that may be reduced to an admissible form. *Rowell*, 433 F.3d at 800; *Macuba*, 193 F.3d at 1323; *McMillian*, 88 F.3d at 1584. The Report is clearly relevant and is

excepted from hearsay in accordance to Fed. R. Evid. 803(8)(c). Plaintiff therefore respectfully requests this Court deny Defendants' motion to strike the November 18, 2004 Report of the Targeted Multistate Market Conduct Examination.

### III.   Letter from Alabama Department of Rehabilitation Services to Plaintiff, Plaintiff's Exhibit 12

In support of Plaintiff's opposition to Defendants' motion for summary judgment, Plaintiff included as Exhibit 12 a letter from the Alabama Department of Rehabilitation Services to Defendants. *See* Plaintiff's Exhibit 12 to Opp to Defs' MSJ. Defendants' one-paragraph argument in support of its motion to strike this letter appears to stand for the proposition that this Court cannot consider the letter because it is unauthenticated, it is hearsay, and it has not previously been disclosed to Defendants.

Defendants' assertion that this document has not previously been disclosed to them is patently false. This letter from the Alabama Department of Rehabilitation Services, Bates numbered BUL857, was provided to Defendants on March 8, 2006, before Plaintiff's deposition, in response to their discovery requests. Defendants therefore could have questioned Plaintiff about this evidentiary submission but simply chose not to do so.

Defendants' argument that this letter should be struck because it is unauthenticated is likewise without merit. As is discussed *supra*, when reviewing a motion for summary judgment, a federal Court may consider evidence that may be reduced to an admissible form. *Rowell*, 433 F.3d at 800; *Macuba*, 193 F.3d at 1323; *McMillian*, 88 F.3d at 1584. Plaintiff will authenticate this letter at the proper time but that time has not yet come. It is not necessary for the letter to be authenticated at this summary judgment stage. *Id.*

Defendants' final argument is that this letter constitutes inadmissible hearsay. The letter from the Alabama Department of Rehabilitation Services is not hearsay because it is not being offered for the truth of the matter asserted. The letter includes a summary of Plaintiff's medical documentation and concludes with the opinion that her disability renders her unable from performing "any substantial gainful activity", facts that are established in Plaintiff's treating physicians' statements and documents. Plaintiff's Exhibit 12 to Opp to Defs' MSJ. Plaintiff offers this letter as evidence that an objective analysis of her medical documentation and limitations imposed by her disability results in the conclusion that she is permanently disabled and unable to return to work.

Furthermore, Plaintiff intends to depose Don Stephens and possibly call him as a witness at trial. *See* Exhibit 2, Don Stephens Subpoena and Depo Notice. Any objections as to authentication of this letter or hearsay are therefore premature and can be handled at trial.

### IV. Defendant's Reengineering Project ("The LeBoeuf Report"), Plaintiff's Exhibit 13

In support of Plaintiff's opposition to Defendants' motion for summary judgment, Plaintiff included as an exhibit a document known as "the LeBoeuf Report". *See* Plaintiff's Exhibit 13 to Opp to Defs' MSJ. The LeBoeuf Report outlines the findings of a study undertaken by a law firm entitled LeBoeuf, Lamb, Greene & MacRae, L.L.P. In this report, the firm recommends ways in which Defendants can improve their corporate profits. One of these strategies is for Defendants to involve attorneys in their claims denial processes in order to invoke the attorney-client privilege when asked to provide all documents related to a denied claim. *See* Plaintiff's Exhibit 13 to Opp to Defs' MSJ, pgs 45-50. In fact, Recommendation IIA 2(3)1 of LeBoeuf Report blatantly states that "in the event of a [claim] denial, … request for legal advice in order to obtain attorney-client protection." *Id.*, pg. 45. Yet another strategy recommended to Defendants is to implement a mandatory rehabilitation program then to reissue policies so that insureds would be subjected to the mandatory rehabilitation program. *Id.* at 5-7. Plaintiff has presented evidence that Defendants engaged in these bad faith behaviors in its "review" of her claim for benefits.

An identical situation involving the LeBoeuf Report and a Plaintiff's right to have the Court consider it in its review of Defendants' motion for summary judgment is found in *Saldi v. Paul Revere Life Ins. Co.*, 224 F.R.D. 169 (E.D. Pa. 2004). *See* Exhibit 3. In *Saldi*, a case in which these Defendants were also involved as Defendants, Defendants raised the same arguments against the Court's consideration of the LeBoeuf Report in its review of a motion for summary judgment. Defendants asserted that the LeBoeuf Report was protected by attorney-client privilege, was irrelevant to Plaintiff's individual claims of wrongful denial, and was proprietary, privileged and confidential. *Saldi*, 224 F.R.D. at 186-187. The District Court disagreed and held that the LeBoeuf Report was "relevant to

Defendants' state of mind" and that Defendants had "failed to meet their burden to show they are protected by any privilege." *Id.*

Defendants state that Plaintiff has failed to cite adequately to the LeBoeuf Report and therefore the entire Report should be stricken. The fact of the matter is that the <u>entire</u> LeBoeuf Report is evidence of Defendants' bad faith business practices. Specific references are included in this brief and will certainly be highlighted at trial but this summary judgment stage, Plaintiff offers the entire document as evidence of Defendants' bad faith practices and procedures, which were followed in Defendants' denial of Plaintiff's claim.

## V. Defendant's Position Statements and Guidelines Regarding Fibromyalgia, Plaintiff's Exhibit 14

In support of Plaintiff's opposition to Defendants' motions for summary judgment, Plaintiff included as Exhibit 14 Defendants' Position Statement and Guidelines Regarding Fibromyalgia. Defendants argue that this document should be stricken because Plaintiff does not cite to it with specificity, provide any authentication for it, or show how it is relevant.

As has been stated numerous times *supra*, this Court may consider any "evidence which can be reduced to an admissible form" when ruling on a motion for summary judgment. *Rowell*, 433 F.3d at 800. Therefore any authentication argument is premature at this point in the proceedings. Furthermore, Plaintiff has served upon the Defendants Requests for Admissions relating to several documents, the Fibromyalgia document included. Plaintiff's Requests for Admission seek to have the Defendants either authenticate the documents as "true and accurate copies of the document maintained by you in the ordinary and regular course of business" <u>or</u> produce a copy of the document from their business records. The Fibromyalgia document will thus be "reduced to admissible form" either through a corporate representative's testimony or through the authentication of the document.

In addition, the <u>entire</u> Position Statement and Guidelines Regarding Fibromyalgia are relevant to Plaintiff's claims. Defendant's Position Statements and Guidelines regarding fibromyalgia explicitly outline Defendants' guidelines, position, policies and processes it utilizes in cases in which its insureds suffer from fibromyalgia and make

benefit claims. *See* Exhibit 3[2]. The document reflects Defendants' position that "[t]he vast majority of individuals labeled with fibromyalgia have no physical impairment [and] are on a physical basis able to return to work[.]" *Id.* at pg. 5 of 66. Just as the LeBeouf report was found by the district court in *Saldi* to be admissible of the Defendants' state of mind, Defendant's Position Statement and Guidelines Regarding Fibromyalgia are admissible in this case as evidence of the Defendants' state of mind when issuing Plaintiff's policy and wrongfully denying her claim.

## VI. Insurance Commissioner of the State of California Decision and Order Upon Settlement, Plaintiff's Exhibit 15

Lastly, Defendants move to strike Exhibit 15 of Plaintiff's Opposition to Defendant's Motions for Summary Judgment. Exhibit 15 is the Decision and Order of the California Insurance Commissioner Upon Settlement. *See* Exhibit 15, Plaintiff's Opp to Defs' MSJ. In this document, the California Insurance Commissioner made the finding of twenty-eight (28) acts or practices in violation of the California Insurance Code, many of which Plaintiff claims Defendants implemented in their issuance of her policies and wrongful denial of her claims for benefits. This document is relevant and admissible, just as the LeBoeuf Report and the Fibromyalgia report, of Defendants state of mind when issuing Plaintiff's policy and wrongfully denying her claim. The document also provides evidence of Defendants' patterns and practices of wrongfully denying its insureds' claims.

## VII. Conclusion

For the above reasons, this Court should deny Defendants' motion to strike.

Respectfully submitted,

  /s/ Thomas O. Sinclair_____
Thomas O. Sinclair (SIN018)
Attorney for Plaintiff

OF COUNSEL:

---

[2] A new copy of Defendants' Position Statements and Guidelines Regarding Fibromyalgia, which was attached to Plaintiff's Opposition to Defendants' Motions for Summary Judgment as Exhibit 14, is attached hereto as Exhibit 3.

Thomas O. Sinclair
Campbell, Waller & Poer, L.L.C.
2100-A SouthBridge Parkway, Suite 450
Birmingham, AL 35209
(205).803-0051
Fax:  (205).803-0053
E-mail:  tsinclair@cwp-law.com

CERTIFICATE OF SERVICE

      I hereby certify that on November 17th, 2006, I electronically filed the foregoing pleading with the Clerk of the court using the CM/ECF system which will send notifications of such filing to the following:

dfink@handarendall.com
hmorrissette@handarendall.com
jjohnson@handarentdall.com

      /s/Thomas O. Sinclair_____
      Thomas O. Sinclair (SIN018)