# ATTACHMENT

# "A"

ATTACHMENT "A"

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| BETTY BULLARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO.:** |
| | ) | **2:05-1217-MEF** |
| | ) | |
| UNUMPROVIDENT CORPORATION; | ) | |
| and | | |
| UNUM LIFE INSURANCE COMPANY | ) | |
| OF AMERICA; | ) | |
| | ) | |
| Defendants | ) | |

<u>**PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**</u>
<u>**& 30(b)(5) DOCUMENT REQUEST**</u>

**TO:**    Unum Life Insurance Company of America
c/o:
DOUGLAS W. FINK
Attorney for Defendants
HAND ARENDALL, L.L.C.
Post Office Box 123
Mobile, Alabama 36601
(251) 432-5511
(251) 694-6375 Facsimile

**"MUTUALLY CONVENIENT" DEPOSITION NOTICE**

This Notice intended to place Counsel on notice that the Plaintiff intends to depose the party or a representative of the party noted above. While this notice leaves open the date, time and location, these will not be left open indefinitely. We will send out a second notice twenty-one (21) days from the date this notice is served if the party fails to provide a mutually convenient date and time. The Notice requires within thirty (30) days from the date served the identification of the party who will be deposed as the representative of the party identified above.

**I. <u>DEPOSITION NOTICE PURSUANT TO RULE 30(b)(6)</u>**

PLEASE TAKE NOTICE THAT the Plaintiff, pursuant to Rule 30(b)(6) of the Rules of Civil Procedure, will take the deposition of the Designated Representative(s) of the Defendant beginning <u>at a time and place to be determined, at a location to be determined.</u> The Designated

Representative(s) Testimony will be taken by way of oral and videotape deposition, and will be used for evidence, or for any other purpose of discovery, and shall be taken before a court reporter authorized to administer oaths under the laws of the United States and shall continue from day to day until complete.

## A.    AREAS OF TESTIMONY

The Defendant is directed to "designate one or more officers, directors, or managing agents, or other persons who consent to testify on [the defendant's] behalf," and furthermore provide designations as to the "matters on which the persons will testify." The person(s) designated for the following areas shall be those person(s) most knowledgeable and able to testify as to the following matters known or reasonably available to the Defendant. The following specific areas of testimony are included within this notice:

1. The Defendant's document retention policy(ies) pertaining to the maintenance of claim files, and any other documents related to, referencing or pertaining to claim(s).
2. The Defendant's policies and procedures pertaining to the production of documents pursuant to a pre litigation request for production by the claimant/Plaintiff.
3. The Defendant's policies and procedures pertaining to the preparation of "administrative records" as that term is defined within Affidavits prepared and submitted by the Defendant.
4. The name, title, and employer of all individuals involved in the evaluation and determination of the Plaintiff's claim(s), and a description of the activities undertaken by each individual with regard to the Plaintiff's claim(s) for benefits.
5. The identity of all company personnel and subsidiary personnel who worked on this claim.
6. The identity of all individual(s) who are responsible for the ultimate decision to deny the claim.
7. The policies and procedures of the Defendant in making a determination as to entitlement to benefits.
8. The Defendants policies and procedures with regard to payment of bonuses, awards, or other indices of recognition of job performance, and if any individual involved in the determination or the administration of the Plaintiff's claim(s) was eligible for said bonuses, awards or other indices of recognition, then the criteria under which said bonuses, awards or other indices of recognition were paid. This area of testimony is to include the policies and procedures in place with regard to the management incentive compensation program (MICP), the performance recognition program (PRP), and any other bonus system or incentive system in which the Defendants employees involved in the determination or the administration of the Plaintiff's claim(s) were entitled to participate.
9. The business relationship, ownership relationship, stock sharing, stock swapping, general services agreement, or other business or contractual relationships between the Defendant and any other Defendant concerning the administration and claims handling procedures of the insurance policy(ies) at issue in this matter.
10. Any regulatory actions regarding the Defendant's claims handling practices.
11. The restrictions and limitations assigned the Plaintiff by the attending physicians, the assessment of the Plaintiff's restrictions and limitations by the Defendant's employees or consultants, the Plaintiff's job duties, and any vocational assessment of the Plaintiff.

12. The objective criteria by which the Defendant's employees job performance is assessed, whether through an informal process or through company-wide policy.

13. Identification and maintenance of records in any databases used, and / or maintained, by the Defendant in the management and administration of claims for benefits, to include any and all electronic databases used in the handling of the Plaintiff's claim(s) for benefits.

14. Identification of all documents (to include any documents on electronic databases) that were generated during the course of the Plaintiff's claim(s) but not placed in the Plaintiff's claim(s) file(s).

15. The Defendants policies and procedures regarding the document retention policy as to what documents are to be maintained with the claim file(s), what documents are to be maintained in other databases, other files, as well as the policies and procedures governing what documents are to be produced in response to pre litigation requests for production, and what documents are to be destroyed, to include documents maintained on the K-vault system regarding this case.

16. The documents produced by the Defendant in this matter, and identification of any documents in the possession, custody, or control of the Defendant (to include electronic databases) which reference or pertain to the Plaintiff's claim(s) for benefits but were not produced with the Defendant's initial disclosures or discovery responses.

17. The Defendants policies and procedures regarding the sale of "group" policies; the administration of "list billing accounts"; the company's instructions on how to establish "group"policies.

**B.     DESIGNATION PURSUANT TO RULE 30(b)(6)**

Pursuant to Rule 30(b)(6), you are hereby commanded to designate **ON OR BEFORE THIRTY (30) DAYS FROM THE DATE OF SERVICE NOTED BELOW**, the name, title, job description, and the area of testimony (as set forth above) that the officer, director, managing agent, or other person is expected to testify to on behalf of the Defendant. The failure to provide said designations within the time period specified shall constitute the Defendant's consent to a two hour extension of the time provided for this deposition by the Rules of Civil Procedure or any applicable scheduling order.

## II. PRODUCTION OF DOCUMENTS PURSUANT TO RULE 30(b)(5)

In addition to those designations set forth above, and pursuant to Rule 30(b)(5) of the Rules of Civil Procedure, the deponent is hereby directed to produce the documents identified on exhibit "A" attached hereto **ON OR BEFORE THIRTY DAYS FROM THE DATE OF SERVICE SET FORTH BELOW**. The failure to produce the documents requested within the time period specified shall constitute the Defendant's consent to a two hour extension of the time provided for this deposition by the Rules of Civil Procedure or any applicable scheduling order.

Thomas O. Sinclair

3

Thomas O. Sinclair
**CAMPBELL, WALLER & POER, LLC**
2100-A SouthBridge Parkway, Suite 450
Birmingham, Alabama 35209
(205) 803-0051
(205) 803-0053, fax

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served on all counsel of record by facsimile and U. S. Mail, postage prepaid, properly addressed on February 1, 2006.

DOUGLAS W. FINK
Attorney for Defendants
HAND ARENDALL, L.L.C.
Post Office Box 123
Mobile, Alabama 36601
(251) 432-5511
(251) 694-6375 Facsimile

OF COUNSEL

4

## Exhibit "A"

1.  Produce all "relevant" documents regarding the Plaintiff's claim(s), as that term is defined within 29 C.F.R. § 2560.503-1.

2.  Produce all documents pertaining to the receipt of any management incentive compensation program bonus or award received by any employee or consultant of the Defendant during the time period that the Plaintiff's claim(s) was pending, as to each employee or consultant who participated in any way in the management and administration of the Plaintiff's claim(s).

3.  Produce all documents pertaining to the receipt of any performance recognition program bonus or award received by any employee or consultant of the Defendant during the time period that the Plaintiff's claim(s) was pending, as to each employee or consultant who participated in any way in the management and administration of the Plaintiff's claim(s).

4.  Produce all documentation regarding the objective criteria by which employee performance is measured (whether "used" or not in employee assessments) for all the Defendant's employees and or consultants who participated in any way in this claim for the time period from the date the claim was first submitted through the date of the deposition.

5.  Produce all documents detailing the Defendants organizational structure of the claims handling department to include the departments, investigational departments, reference departments, medical departments, or any other departments which played any role in the management and administration of the Plaintiff's claim(s), investigation of the Plaintiff's claim(s), or provided any services in relation to the management and administration of the Plaintiff's claim(s). These documents should identify, among others, those persons who are involved in the adjudication and / or administration of the Plaintiff's claims, and those individual supervisors and consultants who are involved in the management and administration of the Plaintiff's claim(s).

6.  Produce all documents, correspondence, policies, notes, memoranda, and all documents in your possession, custody or control pertaining, referring or relating in any way to the Plaintiff.

7.  Produce all documents, correspondence, policies, notes, memoranda, and all documents in your possession, custody or control pertaining, referring or relating in any way to the Plaintiff.

8.  Produce a list of all cases in which the deponent produced in response to this deposition notice has offered testimony whether in trial, in deposition, or in affidavit form.  Include in this list the style of the case, the name of the attorneys for the company and any opposing attorney along with their contact information.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BETTY BULLARD, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: |
| | ) | 2:05-1217-MEF |
| | ) | |
| UNUMPROVIDENT CORPORATION; | ) | |
| and | | |
| UNUM LIFE INSURANCE COMPANY | ) | |
| OF AMERICA; | ) | |
| | ) | |
| Defendants | ) | |

## PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE & 30(b)(5) DOCUMENT REQUEST

TO:    UnumProvident Corporation
        c/o:
        DOUGLAS W. FINK
        Attorney for Defendants
        HAND ARENDALL, L.L.C.
        Post Office Box 123
        Mobile, Alabama 36601
        (251) 432-5511
        (251) 694-6375 Facsimile

**"MUTUALLY CONVENIENT" DEPOSITION NOTICE**

    This Notice intended to place Counsel on notice that the Plaintiff intends to depose the party or a representative of the party noted above. While this notice leaves open the date, time and location, these will not be left open indefinitely. We will send out a second notice twenty-one (21) days from the date this notice is served if the party fails to provide a mutually convenient date and time. The Notice requires within thirty (30) days from the date served the identification of the party who will be deposed as the representative of the party identified above.

## I. DEPOSITION NOTICE PURSUANT TO RULE 30(b)(6)

    PLEASE TAKE NOTICE THAT the Plaintiff, pursuant to Rule 30(b)(6) of the Rules of Civil Procedure, will take the deposition of the Designated Representative(s) of the Defendant beginning <u>at a time and place to be determined, at a location to be determined.</u> The Designated

Representative(s) Testimony will be taken by way of oral and videotape deposition, and will be used for evidence, or for any other purpose of discovery, and shall be taken before a court reporter authorized to administer oaths under the laws of the United States and shall continue from day to day until complete.

## A.    AREAS OF TESTIMONY

The Defendant is directed to "designate one or more officers, directors, or managing agents, or other persons who consent to testify on [the defendant's] behalf," and furthermore provide designations as to the "matters on which the persons will testify." The person(s) designated for the following areas shall be those person(s) most knowledgeable and able to testify as to the following matters known or reasonably available to the Defendant. The following specific areas of testimony are included within this notice:

1. The Defendant's document retention policy(ies) pertaining to the maintenance of claim files, and any other documents related to, referencing or pertaining to claim(s).
2. The Defendant's policies and procedures pertaining to the production of documents pursuant to a pre litigation request for production by the claimant/Plaintiff.
3. The Defendant's policies and procedures pertaining to the preparation of "administrative records" as that term is defined within Affidavits prepared and submitted by the Defendant.
4. The name, title, and employer of all individuals involved in the evaluation and determination of the Plaintiff's claim(s), and a description of the activities undertaken by each individual with regard to the Plaintiff's claim(s) for benefits.
5. The identity of all company personnel and subsidiary personnel who worked on this claim.
6. The identity of all individual(s) who are responsible for the ultimate decision to deny the claim.
7. The policies and procedures of the Defendant in making a determination as to entitlement to benefits.
8. The Defendants policies and procedures with regard to payment of bonuses, awards, or other indices of recognition of job performance, and if any individual involved in the determination or the administration of the Plaintiff's claim(s) was eligible for said bonuses, awards or other indices of recognition, then the criteria under which said bonuses, awards or other indices of recognition were paid. This area of testimony is to include the policies and procedures in place with regard to the management incentive compensation program (MICP), the performance recognition program (PRP), and any other bonus system or incentive system in which the Defendants employees involved in the determination or the administration of the Plaintiff's claim(s) were entitled to participate.
9. The business relationship, ownership relationship, stock sharing, stock swapping, general services agreement, or other business or contractual relationships between the Defendant and any other Defendant concerning the administration and claims handling procedures of the insurance policy(ies) at issue in this matter.
10. Any regulatory actions regarding the Defendant's claims handling practices.
11. The restrictions and limitations assigned the Plaintiff by the attending physicians, the assessment of the Plaintiff's restrictions and limitations by the Defendant's employees or consultants, the Plaintiff's job duties, and any vocational assessment of the Plaintiff.

2

12. The objective criteria by which the Defendant's employees job performance is assessed, whether through an informal process or through company-wide policy.

13. Identification and maintenance of records in any databases used, and / or maintained, by the Defendant in the management and administration of claims for benefits, to include any and all electronic databases used in the handling of the Plaintiff's claim(s) for benefits.

14. Identification of all documents (to include any documents on electronic databases) that were generated during the course of the Plaintiff's claim(s) but not placed in the Plaintiff's claim(s) file(s).

15. The Defendants policies and procedures regarding the document retention policy as to what documents are to be maintained with the claim file(s), what documents are to be maintained in other databases, other files, as well as the policies and procedures governing what documents are to be produced in response to pre litigation requests for production, and what documents are to be destroyed, to include documents maintained on the K-vault system regarding this case.

16. The documents produced by the Defendant in this matter, and identification of any documents in the possession, custody, or control of the Defendant (to include electronic databases) which reference or pertain to the Plaintiff's claim(s) for benefits but were not produced with the Defendant's initial disclosures or discovery responses.

17. The Defendants policies and procedures regarding the sale of "group" policies; the administration of "list billing accounts"; the company's instructions on how to establish "group" policies.

## B.    DESIGNATION PURSUANT TO RULE 30(b)(6)

Pursuant to Rule 30(b)(6), you are hereby commanded to designate **ON OR BEFORE THIRTY (30) DAYS FROM THE DATE OF SERVICE NOTED BELOW**, the name, title, job description, and the area of testimony (as set forth above) that the officer, director, managing agent, or other person is expected to testify to on behalf of the Defendant. The failure to provide said designations within the time period specified shall constitute the Defendant's consent to a two hour extension of the time provided for this deposition by the Rules of Civil Procedure or any applicable scheduling order.

## II.  PRODUCTION OF DOCUMENTS PURSUANT TO RULE 30(b)(5)

In addition to those designations set forth above, and pursuant to Rule 30(b)(5) of the Rules of Civil Procedure, the deponent is hereby directed to produce the documents identified on exhibit "A" attached hereto **ON OR BEFORE THIRTY DAYS FROM THE DATE OF SERVICE SET FORTH BELOW**. The failure to produce the documents requested within the time period specified shall constitute the Defendant's consent to a two hour extension of the time provided for this deposition by the Rules of Civil Procedure or any applicable scheduling order.

Thomas O. Sinclair

3

Thomas O. Sinclair
**CAMPBELL, WALLER & POER, LLC**
2100-A SouthBridge Parkway, Suite 450
Birmingham, Alabama 35209
(205) 803-0051
(205) 803-0053, fax

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served on all counsel of record by facsimile and U. S. Mail, postage prepaid, properly addressed on February 1, 2006.

DOUGLAS W. FINK
Attorney for Defendants
HAND ARENDALL, L.L.C.
Post Office Box 123
Mobile, Alabama  36601
(251) 432-5511
(251) 694-6375 Facsimile

_____
OF COUNSEL

4

### Exhibit "A"

1.   Produce all "relevant" documents regarding the Plaintiff's claim(s), as that term is defined within 29 C.F.R. § 2560.503-1.

2.   Produce all documents pertaining to the receipt of any management incentive compensation program bonus or award received by any employee or consultant of the Defendant during the time period that the Plaintiff's claim(s) was pending, as to each employee or consultant who participated in any way in the management and administration of the Plaintiff's claim(s).

3.   Produce all documents pertaining to the receipt of any performance recognition program bonus or award received by any employee or consultant of the Defendant during the time period that the Plaintiff's claim(s) was pending, as to each employee or consultant who participated in any way in the management and administration of the Plaintiff's claim(s).

4.   Produce all documentation regarding the objective criteria by which employee performance is measured (whether "used" or not in employee assessments) for all the Defendant's employees and or consultants who participated in any way in this claim for the time period from the date the claim was first submitted through the date of the deposition.

5.   Produce all documents detailing the Defendants organizational structure of the claims handling department to include the departments, investigational departments, reference departments, medical departments, or any other departments which played any role in the management and administration of the Plaintiff's claim(s), investigation of the Plaintiff's claim(s), or provided any services in relation to the management and administration of the Plaintiff's claim(s). These documents should identify, among others, those persons who are involved in the adjudication and / or administration of the Plaintiff's claims, and those individual supervisors and consultants who are involved in the management and administration of the Plaintiff's claim(s).

6.   Produce all documents, correspondence, policies, notes, memoranda, and all documents in your possession, custody or control pertaining, referring or relating in any way to the Plaintiff.

7.   Produce all documents, correspondence, policies, notes, memoranda, and all documents in your possession, custody or control pertaining, referring or relating in any way to the Plaintiff.

8.   Produce a list of all cases in which the deponent produced in response to this deposition notice has offered testimony whether in trial, in deposition, or in affidavit form.  Include in this list the style of the case, the name of the attorneys for the company and any opposing attorney along with their contact information.

# ATTACHMENT

## "B"

ATTACHMENT "B"

HAND ▦ ARENDALL   L.L.C.   LAWYERS

Henry T. Morrissette
Direct Dial (251) 694-6364
Direct Fax (251) 544-1625
hmorrissette@handarendall.com

3000 AMSOUTH BANK BUILDING   ∗   107 SAINT FRANCIS STREET   ∗   MOBILE, ALABAMA 36602   ∗   (251) 432-5511
Post Office Box 123   ∗   Mobile, Alabama 36601   ∗   Facsimile (251) 694-6375

October 30, 2006

**VIA E-MAIL**
Thomas O. Sinclair, Esquire
Campbell, Waller & Poer, LLC
2100-A SouthBridge Parkway, Suite 450
Birmingham, Alabama 35209

Re:   Case No. : 2005-1217   (U.S. District Court, Middle District of AL, Northern Div)
       *Betty Bullard v. UnumProvident Corporation, et al.,*

Dear Tom:

I wanted to get back with you regarding the 30(b)(6) notice and areas of testimony that you designated.

We will agree to put up a witness as to Topic No. 1, but only with regard to plaintiff's claim file. We object to the extent that the topic is broader than that.

Topic Nos. 2 and 3 are not relevant to the present action and appear to be directed toward ERISA cases.

We will provide a witness for Topic Nos. 4 through 7 to the extent that they relate to plaintiff's claim.

As to Topic No. 8, you can ask the witnesses who are being deposed in this file about their compensation, including bonuses and recognition for job performance, but we object to producing a witness on this topic beyond that information.

With regard to Topic No. 9, we will produce a witness on the relationship between UnumProvident and Unum Life as it relates to the handling of plaintiff's claim.

We object to putting up a witness as to Topic No. 10, as that topic is completely irrelevant to plaintiff's claim.

MOBILE   ∗   BIRMINGHAM   ∗   FOLEY
Lawyers also admitted in Florida, Georgia, Louisiana, Mississippi and the District of Columbia

Thomas O. Sinclair, Esquire
October 30, 2006
Page 2

As to Topic No. 11, the individuals who are being deposed in this case who assigned restrictions and limitations to plaintiff or provided any vocational assessment of the plaintiff can testify as to those items. As to the restrictions provided by plaintiff's attending physicians or any other individual in the file, no other witness could have testimonial knowledge on those points aside from the information provided in the documents in the claim file and in the medical records.

We object to Topic No. 12, except to the extent that you want to ask the witnesses involved in this case about their job performance and how it is assessed.

We will produce a witness as to Topic Nos. 13, 14, and 15 to the extent those topics relate to plaintiff's claim at issue in this case.

We will also provide a witness as to Topic No. 16.

We object to Topic No. 17 on the basis that your client has acknowledged that she had no communications with any of defendants' employees or agents relating to the coverage at issue in this case.

Please call me if you have any questions or if you would like to discuss the above.

Very truly yours,

Henry T. Morrissette
For the Firm

HTM/joc

# ATTACHMENT

# "C"

ATTACHMENT "C"

Report of the

# Targeted Multistate Market Conduct Examination

As of December 31, 2002 ("Initial Review") and
February 29, 2004 ("Follow-Up Review")

For

## Maine Bureau of Insurance

## Massachusetts Division of Insurance

## Tennessee Department of Commerce and Insurance

And

**Forty-Nine Participating Jurisdictions:** Alabama, Alaska, American Samoa, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin and Wyoming

Of

## Unum Life Insurance Company of America
NAIC Company #62235
Portland, Maine

## The Paul Revere Life Insurance Company
NAIC Company #67598
Worcester, Massachusetts

## Provident Life and Accident Insurance Company
NAIC Company #68195
Chattanooga, Tennessee

NAIC Group # 0565

November 18, 2004

BULL1346

Contents

| Topic | Page |
|---|---|
| Salutation | 1 |
| Foreword | 2 |
| Background and Scope of Examination | 2 |
| Profile of the Companies | 4 |
| Claim Selection Methodology | 5 |
| Areas of Concern | 6 |
| Plan of Corrective Action | 10 |
| Report Submission | 14 |
| Exhibit A | |
| Exhibit B | |
| Exhibit C | |
| Exhibit D | |
| Exhibit E | |
| Exhibit F | |

BULL1347

RACKEMANN, SAWYER & BREWSTER
PROFESSIONAL CORPORATION
COUNSELLORS AT LAW
ESTABLISHED 1866
ONE FINANCIAL CENTER
BOSTON, MASSACHUSETTS 02111-2659
TELEPHONE 617-542-2300
FACSIMILE 617-542-7437
www.rackemann.com

November 18, 2004

Honorable Alessandro A. Iuppa
Superintendent
State of Maine
Bureau of Insurance
124 Northern Avenue
Gardiner, ME 04345

Honorable Julianne M. Bowler
Commissioner of Insurance
Commonwealth of Massachusetts
One South Station
Boston, MA 02110

Honorable Paula A. Flowers
Commissioner
State of Tennessee
Department of Commerce and Insurance
500 James Robertson Parkway - 5th Floor
Davy Crockett Tower
Nashville, TN 37243-1162

To:    The Chief Insurance Regulator of Each of the Jurisdictions Participating in the
       Targeted (Disability Income) Multistate Examination

Dear Superintendent Iuppa, Commissioner Bowler, Commissioner Flowers and the Chief
Insurance Regulators of the Participating States:

        Pursuant to the authority granted by Section 24-A *Maine Revised Statutes
Annotated,* Chapter 175 *Massachusetts General Laws* Section 4 and *Tenn. Code Ann.* §
56-1-408, your instructions, and in accordance with the *NAIC Handbook on Market
Conduct Examinations,* a targeted multistate examination has been conducted of the
disability income claim handling practices of:

        **Unum Life Insurance Company of America ("Unum")**
        **The Paul Revere Life Insurance Company ("Revere")**
        **Provident Life and Accident Insurance Company ("Provident")**
                (collectively, the "Companies")

The report of examination is herewith respectfully submitted.

BULL1348

RACKEMANN, SAWYER & BREWSTER
November 18, 2004
Page 2

## Foreword

The report on the targeted multistate market conduct examination of the Companies is provided pursuant to the *NAIC Market Conduct Examiner's Handbook, Chapter VI*. This report is made by exception, i.e. it omits discussion of those claim files reviewed during the examination that did not show improprieties.

## Background and Scope of Examination

On January 7, 2003, the Massachusetts Division of Insurance initiated a targeted market conduct examination of the individual disability income ("IDI") claims handling practices of Revere. That examination was organized into two phases. The first phase involved the review of Revere's IDI policy forms, claim administration manuals, claim training manuals, claim administration and organizational charts. The second phase of the examination involved the review of a random sample of 100 IDI claim files, the selection methodology for which is described in further detail below.

The Tennessee Department of Commerce and Insurance had initiated a market conduct examination of Provident's disability income business as part of its financial examination as of December 31, 2000. The market conduct examination focused on litigated disability income claims. The resulting examination report did not refer to market conduct issues due to the initiation of the multistate examination described below.

BULL1349

RACKEMANN, SAWYER & BREWSTER
November 18, 2004
Page 3

On September 2, 2003, a multistate targeted market conduct examination was commenced by the Maine Bureau of Insurance, the Massachusetts Division of Insurance and the Tennessee Department of Commerce and Insurance concerning, respectively, Unum, Revere and Provident. Each domiciliary state acted as the Lead State (as defined in the *Market Conduct Examiners Handbook* adopted by the National Association of Insurance Commissioners ("NAIC")) for its respective domiciled company, and the other two Lead State chief regulators were Active Participants. All fifty states, the District of Columbia and American Samoa chose to act as Participating States in the multistate examination.

The multistate examination addressed claims handling practices for both IDI and group long term disability ("LTD") policies. The first phase of the multistate examination involved the review of policy forms, claim administration manuals, claim training manuals, claim administration and organizational charts. The second phase of the multistate examination involved the review of a random sample of 200 Provident and Unum claim files, the selection methodology for which is described in further detail below. After the completion of the second phase of the multistate examination, an update review of a random sample of 75 additional Provident, Revere and Unum claim files was performed, as further described below.

The purpose of the multistate examination was to determine if the disability income claims handling practices of the Companies reflected systemic "unfair claim settlement practices" as defined in the *NAIC Unfair Methods of Competition and Unfair and Deceptive Acts and Practices in the Business of Insurance Model Act* (1972) or *NAIC*

RACKEMANN, SAWYER & BREWSTER
November 18, 2004
Page 4

*Claims Settlement Practices Model Act* (1990) (collectively, the "Model Act"), and particularly, as defined in ME. REV. STAT. ANN. tit. 24-A, § 2164-D(3), (4) & (5); MASS. GEN. LAWS ch. 176D, § 3; and TENN. CODE ANN. § 56-8-104(8). The claim file reviews were conducted in the Worcester, Massachusetts and Glendale, California offices of the Companies during the months of June, November and December 2003 and April 2004.

### Profile of the Companies

Unum, Revere and Provident are subsidiaries of UnumProvident Corporation ("the Parent Company"), a Delaware corporation. The Parent Company is the result of a merger between Unum Corporation and Provident Companies, Inc. on June 30, 1999. Previously, on March 27, 1997, Provident Companies, Inc. had acquired The Paul Revere Corporation. The four primary operations centers for the Companies are located in Chattanooga, Tennessee, Portland, Maine, Worcester, Massachusetts and Glendale, California.

Unum, a Maine corporation, primarily markets short term disability and group and individual long term disability insurance as well as long term care insurance and group life insurance. It is licensed to transact business in the District of Columbia and all states, except New York. Revere, a Massachusetts corporation, primarily markets individual long term disability insurance. Revere is licensed to transact business in all fifty states and the District of Columbia. Provident, a Tennessee corporation, primarily markets individual long term disability insurance as well as life insurance through an employee-paid voluntary benefits program. It is licensed to transact business in the District of Columbia and all states, except New York.

BULL1351

RACKEMANN, SAWYER & BREWSTER
November 18, 2004
Page 5

The Parent Company uses common management and processes in the administration of the business for Unum, Revere and Provident as well as for its New York subsidiary, First Unum Life Insurance Company.   Specifically, the UnumProvident Companies adjust claims for each member insurer from common locations using common procedures.  The issues identified by the Multistate Examination are therefore assumed to also be present for each member company.  The Companies and their New York affiliate are ranked first in market share—based on annual premium—in both IDI and LTD insurance and in group short term disability insurance, according to the 2003 JHA U.S. Group Disability Market Survey and the JHA 2003 U.S. Individual Disability Market Survey published in April 2004.

### Claim Selection Methodology

The multistate examination team requested the Companies to provide a comprehensive database including all claims closed during 2002.  Initially, 300 claim files randomly selected from IDI and LTD claims closed during 2002, or for which benefit determinations were appealed or litigated during 2002, or claims open as of year-end 2002 were reviewed (the "Initial Review").  The Initial Review comprised 100 claims each for Unum, Revere and Provident. The proportion of selected IDI and LTD claims was based on the relative reported reserves for each company as of December 31, 2002.  Based upon representations by the Companies that a number of changes in claim administration were implemented during 2003, the examination team subsequently reviewed 75 claim files (25 each for Unum, Revere and Provident) which were randomly selected from the Companies' IDI and LTD claims for which benefit determinations were

BULL1352

RACKEMANN, SAWYER & BREWSTER
November 18, 2004
Page 6

first appealed during the period of December 2003 through February 2004 ("the Follow-up Review"). Exhibit "A" depicts the distribution of such claims by company, by line of business and by category for both the Initial Review and the Follow-up Review, including the total number of claims in the population, and the claims randomly selected for review. Exhibit "B" depicts the distribution of the claims included in the Initial Review by the state of residence of the claimant. Exhibit "C" depicts the distribution of the claims included in the Follow-up Review by the state of residence of the claimant.

**Areas of Concern**

The Initial Review of 299 claim files (the Companies were not able to locate one claim file which had been selected for review) noted several general areas of concern, which applied to the Companies' handling of both IDI and LTD claims. The examination team identified no material differences in claim handling among the individual companies or among their claim offices. The general areas of concern included the following:

1.    Excessive reliance upon in-house medical professionals: The Companies have invested significant resources in the creation of a staff of physicians and nurses whose function is to provide support to and education of claim handling personnel. These in-house medical professionals include both full-time and part-time employees. The Companies also use the services of medical professionals who are independent contractors. These medical professionals review medical records of claimants and provide interpretation and analysis of such records to the claim staff who are ultimately

BULL1353

HACKEMANN, SAWYER & BREWSTER
November 18, 2004
Page 7

responsible for making the claims decisions.  In certain instances, in-house medical professionals will interact by telephone or by correspondence with attending physicians or other treatment providers of the claimants.  In so doing, their objective is to determine whether sufficient medical evidence exists for restrictions and/or limitations which will be used to determine if the claimant meets the policy's definition for total, partial or residual disability.   In-house medical professionals do not examine or otherwise interact with claimants directly.  The Companies' insurance contracts generally allow the Companies to require claimants to submit to an independent medical examination ("IME") conducted by a physician of the Companies' choice.  The examination team identified numerous instances in which the Companies relied heavily upon the analysis of their in-house medical professionals, and refrained from securing an IME.  In many such instances, the Companies discounted or disputed the opinions of claimants' attending physicians, but chose not to invoke the requirement that the claimant attend an IME.  Where there is conflicting medical evidence or conflicting medical opinions with respect to a claimant's eligibility for benefits, the Companies have the ability to invoke the policy provision and obtain an IME, and should do so.

　　2.　　Unfair construction of attending physician or IME reports: The Companies' excessive reliance upon in-house medical professionals also suggests the Companies' employment of such professionals often resulted in a Company bias and the inappropriate interpretation or construction of medical reports, to the detriment of claimants.  In certain instances, this bias was reflected in the interpretation of attending physicians' statements or medical records supplied by attending physicians.  In other

BULL1354

RACKEMANN, SAWYER & BREWSTER
November 18, 2004
Page 8

instances in which the Companies had obtained an IME, the reports supplied by the IME providers were narrowly or even incorrectly construed.  The bias of the in-house medical professionals was also reflected in attempts to focus upon any apparent inconsistencies in the medical records or other information supplied by claimants, rather than attempt to derive a thorough understanding of the claimant's medical condition.

    3.   <u>Failure to evaluate the totality of the claimant's medical condition</u>:  The examination team identified instances in which claimants who suffered from multiple medical conditions were denied benefits as a result of the Companies' apparent failure to properly evaluate the cumulative effects of such conditions.  In some instances, the Companies' failure to properly evaluate such "co-morbid" conditions appeared to stem from an excessively narrow focus upon the specific medical condition for which benefits had originally been sought by the claimant.  By way of example, certain claimants exhibited a psychological "overlay" which was related to or may have resulted from an underlying medical condition.  Although the Companies' claim handling may have included an evaluation of each separate condition, there was an insufficient effort made to assess the disabling effects of the conditions cumulatively.

    4.   <u>Inappropriate burden placed on claimants to justify eligibility for benefits</u>: The examination team identified a significant number of instances in which benefits were denied by the Companies on the grounds that the claimant had failed to provide "objective evidence" of a disabling condition.  The Companies' policy forms do not require the claimant to provide such evidence.  Alternatively, the Companies in certain instances denied eligibility for benefits on the grounds that the claimant had failed to

BULL1355

RACKEMANN, SAWYER & BREWSTER
November 18, 2004
Page 9

submit particular medical test results which were deemed by the Companies to be critical
to an evaluation of the claim.   In such instances, the Companies could have obtained
such test results by ordering an IME and requesting that such tests be performed by the
IME provider.  In general, the examination team found evidence of the Companies' effort
to "shift" the burden of responsibility to the claimant to provide medical or other records
in support of the claim, rather than obtain such records through the use of authorizations
executed by the claimant.  These practices are particularly of concern for claimants
whose medical conditions may be interfering with their ability to interact with the
Companies' staff in the handling of their claims.

Following completion of the Initial Review, representatives of the Lead States and
the examination team met with representatives of the Companies in February 2004 to
review the foregoing areas of concern as they related to specific claims which had been
identified for discussion.   After additional explanation was provided by the Companies,
the examiners and the Lead States concluded that the level of claim handling errors
identified was sufficient to merit further review and regulatory action.

Following that meeting, the Lead States concluded that the examination team
should perform the Follow-up Review.  The objective of the Follow-up Review was to
assess the impact of claim administration changes reportedly implemented by the
Companies during 2003, specifically with respect to the areas of concern.  For that
reason, 75 claim files were randomly selected from the population of claims for which a
first appeal of an adverse claim determination had been filed during the three month
period from December 1, 2003 – February 29, 2004. Following completion of the

RACKEMANN, SAWYER & BREWSTER
November 18, 2004
Page 10

Follow-up Review, representatives of the Lead States and the examination team again met with representatives of the Companies to review areas of concern as they related to specific claims which had been identified for discussion. After additional explanation was provided by the Companies, the examiners and the Lead States concluded that the level of claim handling errors identified was sufficient to merit further regulatory action.

After consultation with the Companies' senior management and the Board of Directors of the Parent Company, agreement in principle was reached between the Lead States and the Companies on the Plan of Corrective Action described below. This agreement obviated the need for additional investigation, review of a larger claim sample, specific claim findings or reaching a formal conclusion concerning the examination objective, thereby assuring, for the benefit of the Companies' policyholders, prompt implementation of a reassessment plan, changes in corporate governance and changes in claim handling procedures. All of these steps are described in greater detail in the attached Regulatory Settlement Agreement and implementing Consent Orders.

**Plan of Corrective Action**

The Lead States have designed a Plan of Corrective Action ("the Plan") with the Companies and their New York affiliate, to address the concerns raised by the examination. The Plan will be implemented through a regulatory settlement agreement or consent orders (collectively, "Agreement") entered into by each of the Companies with its Lead State regulator and subscribed to by at least two-thirds of the Participating States, unless a lesser number is agreed to by the Companies, and the United States Department of Labor. (Once the Agreement becomes effective, the Lead States are thereafter referred to as Lead

RACKEMANN, SAWYER & BREWSTER
November 18, 2004
Page 11

Regulators and the subscribing Participating States as Participating Regulators.) In addition, the Companies' New York affiliate, First Unum Life Insurance Company, will enter into a similar agreement with the New York Superintendent of Insurance. This Agreement is supported by the Office of the Attorney General of the State of New York. The Agreement is included herewith as Exhibits "D", "E" and "F". The Agreement provides for a penalty of $15,000,000, will provide for the assessment of substantial additional fines or other significant regulatory action should the Companies fail to comply with their terms, including the accomplishment of specified improvements in claim administration established in such Agreement. The Lead Regulators will monitor the Companies' (including their New York affiliate) compliance with the terms of the Agreement at the Companies' cost through an established framework of quarterly reports and meetings as well as periodic examination of the reassessment process or general claim handling, and will conduct a full re-examination of the issues addressed by this examination within twenty-four months of the Implementation Date of the Agreement.

The most significant provisions of the Agreement are the following:

A.    Claim Reassessment Process: The Companies will form a new Claim Reassessment Unit located primarily in their Worcester, Massachusetts and Portland, Maine offices (IDI and LTD claims, respectively), for the purpose of providing a "de novo" review of claims previously denied or terminated pursuant to a review procedure approved by the Lead Regulators. Written notice of this reassessment process will be provided to eligible claimants (as outlined in the Agreement), representing approximately 215,000 claims, whose IDI or LTD insurance claims were denied or whose benefits were

RACKEMANN, SAWYER & BREWSTER
November 18, 2004
Page 12

terminated on or after January 1, 2000 and prior to the Implementation Date (as defined in the Agreement). The reassessment process will be open to eligible claimants who elect to participate, as well as any other claimants who indicate an interest in participation provided that the claim denial or termination of benefits took place no earlier than January 1, 1997. The Companies' performance will be subject to regulatory scrutiny and monitoring, and the claim reassessment process will be subjected to further independent review by agents of the Lead Regulators.

B.    <u>Changes in Claim Organization and Procedures</u>: The Companies will implement changes to its claim organization and claim procedures with the following objectives:

- The engagement of experienced claim personnel at the earliest possible stage of claim reviews

- Increased emphasis upon claim staff accountability for compliance with the terms of insurance policies and applicable law

- Increased involvement of higher levels of claim management staff in each claim denial or claim termination decision

- Creation of a separate compliance/accountability function at the claim denial and claim termination level

- Assurance that co-morbid conditions are properly evaluated at every level of claim review

- Increased utilization of IME's

- Additional compliance training for all claim staff, with emphasis upon the results of the multistate examination, the Plan, and the NAIC Unfair Claim Settlement Practices Act; and

BULL1359

RACKEMANN, SAWYER & BREWSTER
November 18, 2004
Page 13

- Additional training for group policyholder human resources personnel so as to better facilitate the process for LTD claims

C.    Changes in corporate governance:    The Companies will address regulatory concerns regarding corporate control issues by implementation of the following changes:

- The Board of Directors of the Parent Company will be expanded by three members, each of which will have significant insurance industry or insurance regulatory experience (two will have regulatory experience); each candidate will be approved by the Lead States

- The Audit Committee of the Board of Directors will be expanded by one member; at least one of the new members of the Board of Directors will be appointed to the Audit Committee

- The Board of Directors will establish a new Regulatory Compliance Committee, comprised of two of the new members of the Board, and three existing independent directors; the Regulatory Compliance Committee will have responsibility for monitoring compliance with the Plan and other compliance-related oversight functions; and

- The Companies will create a Regulatory Compliance Unit, which will report directly to the Regulatory Compliance Committee; the Regulatory Compliance Unit will monitor compliance with the Plan (including the functions of the Claim Reassessment Unit) through the performance of periodic audits, provide assistance to claimants to ease and facilitate the claim submission process, and gather data for the Lead States' ongoing monitoring of compliance with the Plan

D.    Quarterly Meetings between the Lead Regulators and the Companies: The Lead Regulators and the DOL will meet separately with the Regulatory Compliance Committee of the Parent Company and with senior management of the Companies on a quarterly basis, to evaluate compliance with the Plan.  Participating States will be updated quarterly by the Lead Regulators, through the NAIC.

BULL1360

RACKEMANN, SAWYER & BREWSTER
November 18, 2004
Page 14

### Report Submission

The report of examination is herewith respectfully submitted.

Sincerely,

J. David Leslie
Rackemann, Sawyer & Brewster, P.C.

Examiners:

*Rackemann, Sawyer & Brewster, P.C.*
Ronald S. Duby, Esq.
Margaret L. Hayes, Esq.
Fannie I. Minot, Esq.

*Monarch Life Insurance Company*
Kevin J. McAdoo, Special Deputy Receiver
John S. Coulton, Esq.
Claudia J. Reed, Esq.
Daniel T. Wright, Esq.

### Acknowledgement

The assistance of Richard Kelly, an examiner appointed by the State of Nevada, in reviewing certain claim files during the Initial Review, is hereby acknowledged with appreciation.

Exhibit A

## UNUMPROVIDENT CLAIM SUMMARY BY COMPANY

### UNUM LIFE INSURANCE COMPANY OF AMERICA
#### Initial Review

| Line of Business | Category | Claims for Period | Reviewed |
|---|---|---|---|
| Group LTD | Litigated | 693 | 19 |
| | Pending | 70,319 | 19 |
| | Closed | 65,200 | 20 |
| | Appeals | 9,502 | 19 |
| | Sub-total | 145,714 | 77 |
| Individual DI | Litigated | 258 | 6 |
| | Pending | 6,087 | 6 |
| | Closed | 2,232 | 5 |
| | Appeals | 217 | 6 |
| | Sub-total | 8,794 | 23 |
| TOTALS | | 154,508 | 100 |

### UNUM LIFE INSURANCE COMPANY OF AMERICA
#### Follow-up Review

| Line of Business | Category | Claims for Period | Reviewed |
|---|---|---|---|
| Group LTD | Litigated | | |
| | Pending | | |
| | Closed | | |
| | Appeals | 1,292 | 19 |
| | Sub-total | 1,292 | 19 |
| Individual DI | Litigated | | |
| | Pending | | |
| | Closed | | |
| | Appeals | 20 | 6 |
| | Sub-total | 20 | 6 |
| TOTALS | | 1,312 | 25 |

### Provident Life and Accident Insurance Company
#### Initial Review

| Line of Business | Category | Claims for Period | Reviewed |
|---|---|---|---|
| Group LTD | Litigated | 186 | 5* |
| | Pending | 9,049 | 5 |
| | Closed | 4,872 | 5 |
| | Appeals | 1,406 | 5 |
| | Sub-total | 15,513 | 20 |
| Individual DI | Litigated | 369 | 20* |
| | Pending | 10,445 | 20 |
| | Closed | 7,549 | 20 |
| | Appeals | 364 | 20 |
| | Sub-total | 18,727 | 80 |
| TOTALS | | 34,240 | 100 |

### Provident Life and Accident Insurance Company
#### Follow-up Review

| Line of Business | Category | Claims for Period | Reviewed |
|---|---|---|---|
| Group LTD | Litigated | | |
| | Pending | | |
| | Closed | | |
| | Appeals | 118 | 5 |
| | Sub-total | 118 | 5 |
| Individual DI | Litigated | | |
| | Pending | | |
| | Closed | | |
| | Appeals | 52 | 20 |
| | Sub-total | 52 | 20 |
| TOTALS | | 170 | 25 |

* 25 Litigated files taken from 50 files provided in the 2002 Tennessee financial and market conduct exam

**Paul Revere Life Insurance Company**

Initial Review

| Line of Business | Category | Claims for Period | Reviewed |
|---|---|---|---|
| Group LTD | Litigated | | |
| | Pending (Open) | | |
| | Closed | | |
| | Appeals | | |
| | Sub-total | 0 | 0 |
| Individual DI | Litigated | 284 | 25 |
| | Pending (Open) | 7,750 | 25 |
| | Closed | 3,859 | 25 |
| | Appeals | 200 | 25 |
| | Sub-total | 12,093 | 100 |
| TOTALS | | 12,093 | 100 |

**Paul Revere Life Insurance Company**

Follow-up Review

| Line of business | Category | Claims for Period | Reviewed |
|---|---|---|---|
| Group LTD | Litigated Closed | | |
| | Pending (Open) | | |
| | Closed | | |
| | Appeals | 58 | |
| | Sub-total | 58 | 0 |
| Individual DI | Litigated Closed | | |
| | Pending (Open) | | |
| | Closed | | |
| | Appeals | 34 | 25 |
| | Sub-total | 34 | 25 |
| TOTALS | | 92 | 25 |

BULL1363

Exhibit B

## Distribution of UnumProvident Claim Selections by State (Initial Claim Review)

| State | Code | Revere - Individual | Unum - Individual | Unum - Group | Provident - Individual | Provident - Group | Provident - Litigation | Total |
|---|---|---|---|---|---|---|---|---|
| ALABAMA | AL | 0 | | 1 | 2 | | | 4 |
| ALASKA | AK | 0 | | | | | 1 | 0 |
| ARIZONA | AZ | 1 | | | | | | 0 |
| ARKANSAS | AR | 0 | | 1 | 2 | | | 4 |
| CALIFORNIA | CA | 9 | 1 | 9 | 4 | 1 | 5 | 0 |
| COLORADO | CO | 3 | | | | | | 29 |
| CONNECTICUT | CT | 1 | | 1 | 1 | | | 5 |
| DELAWARE | DE | 3 | | 1 | 1 | | | 3 |
| DISTRICT OF COL | DC | 1 | | | | | | 3 |
| FLORIDA | FL | 8 | 4 | 1 | 5 | 7 | 5 | 2 |
| GEORGIA | GA | 3 | | 5 | 7 | 1 | | 30 |
| HAWAII | HI | 1 | | 4 | 4 | 1 | | 12 |
| IDAHO | ID | 0 | | | | | | 1 |
| ILLINOIS | IL | 5 | | | | | 1 | 0 |
| INDIANA | IN | 0 | | 2 | | | | 8 |
| IOWA | IA | 2 | | 3 | | | | 3 |
| KANSAS | KS | 1 | | | | | | 2 |
| KENTUCKY | KY | 2 | | 1 | | | | 2 |
| LOUISIANA | LA | 2 | 1 | 2 | 1 | 1 | 1 | 7 |
| MAINE | ME | 0 | | 1 | 2 | | 1 | 6 |
| MARYLAND | MD | 1 | | 7 | | | | 0 |
| MASSACHUSETTS | MA | 4 | | 1 | 1 | 1 | | 5 |
| MICHIGAN | MI | 0 | 1 | 2 | 2 | 1 | 1 | 9 |
| MINNESOTA | MN | 0 | 1 | 2 | 6 | 1 | 1 | 11 |
| MISSISSIPPI | MS | 1 | | | | | | 1 |
| MISSOURI | MO | 1 | | 1 | 1 | | 1 | 3 |
| MONTANA | MT | 0 | | 1 | | | | 2 |
| NEBRASKA | NE | 0 | | 2 | | | | 0 |
| NEVADA | NV | 1 | | 1 | | | | 2 |
| NEW HAMPSHIRE | NH | 1 | | 2 | | | | 2 |
| NEW JERSEY | NJ | 10 | 4 | 1 | 3 | | | 2 |
| NEW MEXICO | NM | 1 | | | | | | 18 |
| NEW YORK | NY | 11 | | | | | | 1 |
| NORTH CAROLINA | NC | 4 | | 2 | | 2 | | 15 |
| NORTH DAKOTA | ND | 0 | | 2 | 1 | 2 | 1 | 10 |
| OHIO | OH | 3 | | 4 | 1 | | | 0 |
| OKLAHOMA | OK | | | | 2 | | | 8 |
| OREGON | OR | 1 | 2 | | | | | 3 |
| PENNSYLVANIA | PA | 3 | 4 | 4 | 2 | | 1 | 3 |
| RHODE ISLAND | RI | 2 | 1 | | 1 | | | 15 |
| SOUTH CAROLINA | SC | 1 | | 4 | 1 | | | 4 |
| SOUTH DAKOTA | SD | 0 | | | | | | 7 |
| TENNESSEE | TN | 5 | 1 | 2 | 5 | 1 | 3 | 0 |
| TEXAS | TX | 0 | 1 | 6 | 6 | | | 17 |
| UTAH | UT | 0 | | | | | | 13 |
| VERMONT | VT | 0 | 1 | | 1 | | 1 | 1 |
| VIRGINIA | VA | 2 | | | 1 | | | 2 |
| WASHINGTON | WA | 2 | 1 | 1 | 1 | | 1 | 4 |
| WEST VIRGINIA | WV | 2 | | | | | 1 | 6 |
| WISCONSIN | WI | 2 | | 2 | 1 | | | 2 |
| WYOMING | WY | 0 | | | | | | 5 |
| | | | | | | | | 0 |
| Total | | 100 | 23 | 77 | 60 | 15 | 25 | 300 |

BULL1364

Exhibit C

*Distribution of UnumProvident Claim Selections by State (Follow-Up Claim Review)*

| State | Code | Revere - Individual | Unum - Individual | Unum - Group | Provident - Individual | Provident - Group | Total |
|---|---|---|---|---|---|---|---|
| ALABAMA | AL | | | | 1 | | 1 |
| ALASKA | AK | | | | | | 0 |
| ARIZONA | AZ | | | | | | 0 |
| ARKANSAS | AR | | | | | | 0 |
| CALIFORNIA | CA | 3 | 1 | 2 | 2 | | 8 |
| COLORADO | CO | | | | | | 0 |
| CONNECTICUT | CT | 1 | | | | | 1 |
| DELAWARE | DE | | | 1 | | | 1 |
| DISTRICT OF COL | DC | | | 1 | | | 1 |
| FLORIDA | FL | 3 | | 1 | | | 4 |
| GEORGIA | GA | | | 1 | 1 | 1 | 3 |
| HAWAII | HI | | | | | | 0 |
| IDAHO | ID | | | | | | 0 |
| ILLINOIS | IL | 3 | 1 | | | | 4 |
| INDIANA | IN | | | | 1 | | 1 |
| IOWA | IA | | | 1 | | | 1 |
| KANSAS | KS | | | 1 | | | 1 |
| KENTUCKY | KY | 1 | | | 2 | | 3 |
| LOUISIANA | LA | | | 1 | | | 1 |
| MAINE | ME | 1 | | | | | 1 |
| MARYLAND | MD | | | 2 | 1 | | 3 |
| MASSACHUSETTS | MA | 1 | | | | | 1 |
| MICHIGAN | MI | 1 | | | 1 | | 2 |
| MINNESOTA | MN | | | 1 | 2 | 1 | 4 |
| MISSISSIPPI | MS | | | 1 | | | 1 |
| MISSOURI | MO | | | | | | 0 |
| MONTANA | MT | | | | | | 0 |
| NEBRASKA | NE | | | | | | 0 |
| NEVADA | NV | | | | | | 0 |
| NEW HAMPSHIRE | NH | | | | | | 0 |
| NEW JERSEY | NJ | 1 | | | | | 1 |
| NEW MEXICO | NM | | | 1 | 1 | | 2 |
| NEW YORK | NY | 2 | 2 | | | | 4 |
| NORTH CAROLINA | NC | 1 | | 1 | 2 | | 4 |
| NORTH DAKOTA | ND | | | | 1 | | 1 |
| OHIO | OH | 1 | 2 | | | | 3 |
| OKLAHOMA | OK | | | | 1 | | 1 |
| OREGON | OR | | | | | | 0 |
| PENNSYLVANIA | PA | 3 | | 1 | | | 4 |
| RHODE ISLAND | RI | | | | | | 0 |
| SOUTH CAROLINA | SC | | | 1 | | | 1 |
| SOUTH DAKOTA | SD | | | | | 1 | 1 |
| TENNESSEE | TN | 1 | | 1 | | | 2 |
| TEXAS | TX | 1 | | 1 | 1 | | 3 |
| UTAH | UT | | | | | | 0 |
| VERMONT | VT | | | | | | 0 |
| VIRGINIA | VA | | | | | | 0 |
| WASHINGTON | WA | 1 | | | | 1 | 2 |
| WEST VIRGINIA | WV | | | | 3 | 1 | 4 |
| WISCONSIN | WI | | | | | | 0 |
| WYOMING | WY | | | | | | 0 |
| **Total** | | 25 | 6 | 19 | 20 | 5 | 75 |

BULL1365

# ATTACHMENT

# "D"

ATTACHMENT "D"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| ROBERT J. LAMARCA | ) | Case No. 1:04-cv-163 |
| | ) | |
| v. | ) | COLLIER/CARTER |
| | ) | |
| UNUMPROVIDENT CORP., | ) | |
| FIRST UNUM LIFE INSURANCE CO., | ) | |
| JP MORGAN CHASE BANK EMPLOYEE | ) | |
| WELFARE BENEFIT PLAN, JP MORGAN | ) | |
| CHASE BANK, and GENEX SERVICES, INC. | ) | |

<u>ORDER</u>

The plaintiff, Robert J. Lamarca, has moved to compel production of certain discovery
(Court File No. 25) from defendants UnumProvident Corporation and First Unum Life Insurance
Company (collectively "Unum defendants"). This is an action brought pursuant to the Employee
Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1), seeking review of the denial
of long term disability benefits under a policy issued and funded by Unum Life Insurance Co.
and administered by Unum Life Insurance Co.'s parent company, UnumProvident Corporation.
At a hearing before the undersigned Magistrate Judge, the Unum defendants asserted the plaintiff
is not entitled to any discovery as this Court's review is limited to the administrative record
below. For the reasons stated below, the undersigned will grant plaintiff's motion to compel.

The plaintiff's motion to compel raises the same issues which the undersigned Magistrate
Judge addressed at length in *Bennett v. Unum Life Ins. Co. of America*, 321 F.Supp.2d 925 (E.D.
Tenn. 2004). As did the plaintiff in *Bennett*, the plaintiff in this case alleges that at the time the
Unum defendants reviewed and denied his claim, the Unum defendants' decisions to deny or
grant benefit claims were influenced on a corporate-wide basis by specific policies and
procedures designed to protect  profits. According to the plaintiff, the Unum defendants

1

regularly informed its claims personnel of stated monetary goals and employed several methods to achieve these goals at the expense of the claimants. The plaintiff specifically identifies one of these methods as a bonus system in which claims personnel could receive compensation bonuses which were based in part on the Unum defendants' profitability and in part on the employee's achievement of certain performance goals – goals designed to help the Unum defendants meet their monetary goals. In support of these allegations about specific forms of bias and conflict of interest in the claims evaluation process, the plaintiff has offered evidence – the same evidence offered by the plaintiff in *Bennett* and which the undersigned found sufficient to allow the plaintiff to conduct limited discovery.[1]   The discovery plaintiff seeks in this case is strictly circumscribed to obtain information about the bonus compensation plan and how it applied or did not apply to the individuals who reviewed his claim.

For the reasons stated in *Bennett v. Unum Life Ins. Co. of America*, 321 F.Supp.2d 925 (E.D. Tenn. 2004), the plaintiff's motion to compel is GRANTED in the following manner:

> As to each employee or consultant of the Unum defendants who participated in the evaluation of Mr. LaMarca's claim, state whether that individual was eligible for any type of compensatory bonus during the time Mr. LaMarca's evaluation was conducted.  State the nature of the bonus, the criteria for the bonus, whether the individual received the bonus, and why or why not the individual received the bonus.  As to each of these individuals, provide all documents which evince the criteria established to obtain the bonus (assuming the individual was eligible for one) and any documents evaluating the individual's performance and having bearing on the individual obtaining or not obtaining the bonus.

SO ORDERED.

ENTER:

s/William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

---

[1]For a discussion of this evidence, *see Bennett*, 321 F.Supp.2d at 933-936.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

DENNIS C. WILLIAMSON,          )
                               )
                Plaintiff,     )
                               )          No. 1:04-CV-162
        v.                     )
                               )          Judge Curtis L. Collier
UNUMPROVIDENT CORP.;           )
UNUM LIFE INSURANCE COMPANY;   )
HOUSEHOLD INTERNATIONAL, INC.  )
EMPLOYEE WELFARE BENEFIT PLAN; )
HOUSEHOLD INTERNATIONAL, INC.; )
GENEX SERVICES, INC.,          )
                               )
                               )
                Defendants.    )
--------------------------------
ROBERT J. LAMARCA,             )
                               )
                Plaintiff,     )
                               )          No. 1:04-CV-163
        v.                     )
                               )          Judge Curtis L. Collier
UNUMPROVIDENT CORP.;           )
FIRST UNUM LIFE INSURANCE CO.; )
JP MORGAN BANK EMPLOYEE        )
WELFARE BENEFIT PLAN;          )
JP MORGAN CHASE BANK;          )
GENEX SERVICES, INC.,          )
                               )
                Defendants.    )

## M E M O R A N D U M

Before the Court now is an issue arising with increasing frequency in this Court, that is, to

what extent may plaintiffs seeking to recover benefits allegedly due them under employee benefit

plans issued under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461

("ERISA") obtain discovery outside of the administrate record. The issue is presented to this Court

on objection from the ruling of a magistrate judge allowing such discovery in these two cases. Because United States Magistrate Judge William B. Mitchell Carter's well-reasoned opinion correctly decided the issue, the Court will not disturb his ruling. Accordingly, the Court will **DENY** Unum Defendants' Appeal From and Objection to the Magistrate's Order Granting Plaintiff's Motion to Compel.

Plaintiff Dennis C. Williamson ("Plaintiff") brings this action pursuant to ERISA, 29 U.C.S. § 1132(a)(1), seeking review of the denial of benefits through an Employee Welfare Benefit plan, under the terms of which Plaintiff is a defined beneficiary or, in the alternative, 29 U.S.C. § 1132(a)(3), to seek relief for the breaches of fiduciary duties owed to Plaintiff. Plaintiff sought limited discovery of certain information pertaining to UnumProvident Corporation's and Unum Life Insurance Company's (collectively "Unum Defendants") conflict of interest and bias in the administration of Plaintiff's claims for benefits.

The Court notes that the discovery issues raised in this case are identical to those raised by *Robert J. LaMarca v. UnumProvident Corp. et.al*, No. 1:04-CV-163. LaMarca brings his action pursuant to ERISA, 29 U.C.S. § 1132(a)(1), seeking review of the denial of long term disability benefits under a policy issued and funded by Unum Life Insurance Co. and administered by Unum Life Insurance Co.'s parent company, UnumProvident Corporation. LaMarca sought limited discovery of certain information pertaining to Unum Defendants' conflict of interest and bias in the administration of his claims for benefits.

To receive more complete responses from Unum Defendants, plaintiffs Williamson and LaMarca each filed a Motion to Compel. Following the submission of numerous documents with the court and a hearing regarding the motion, Magistrate Judge Carter entered a narrowly tailored

2

order requiring Unum Defendants to respond to the Plaintiff's discovery request (Court File No. 37).[1] In both cases, Unum Defendants now ask this Court to review Judge Carter's decision in filing their Appeal From and Objection to the Magistrate's Order Granting Plaintiff's Motion to Compel.

Although these cases have slightly different facts, the Court chose to consolidate the cases because they present the same issue of law: whether or not this Court should allow discovery outside the administrative record. As stated above, Magistrate Judge Carter's decision was well written and thorough. The Court detects no error in the recitation of the facts nor any error in application of the law.

## I.    RELEVANT FACTS

Pursuant to 29 U.S.C. § 1132(a)(1), Plaintiff seeks review of the denial of benefits through an Employee Welfare Benefit Plan, under the terms of which the plaintiff is a defined beneficiary. In the alternative, pursuant to 29 U.S.C. § 1132(a)(3), Plaintiff seeks relief for breaches of fiduciary duties owed to Plaintiff. Unum Defendants assert they did not improperly deny his claim.

During prehearing proceedings, Plaintiff submitted interrogatories for Defendants to answer and requests for production of documents. Plaintiff then filed the motion to compel against Unum Defendants.[2] After a hearing and additional briefing, Magistrate Judge Carter issued an Order

---

[1] In the LaMarca case, Judge Carter's order is located in Court File No. 34.

[2] Plaintiff filed the motion to compel Unum Defendants to respond fully and without boilerplate objections to Interrogatory 4 (to UnumProvident Corporation) and Interrogatory 6 (to Unum Life Insurance Company of America), and Requests For Production 8, 9,10, and 12 (to UnumProvident Corporation) seeking information relating to the individual employees rate of pay and bonus criteria as to each employee who participated in the adjudication and/or administration

granting Plaintiff's motion in the following manner:

> As to each employee or consultant of the Unum Defendants who participated in the evaluation of Mr. Williamson's claim, state whether that individual was eligible for any type of compensatory bonus during the time Mr. Williamson's evaluation was conducted. State the nature of the bonus, the criteria for the bonus, whether the individual received the bonus, and why the individual received or did not receive the bonus. As to each of these individuals, provide all documents which evince the criteria established to obtain the bonus (assuming the individual was eligible for one) and any documents evaluating the individual's performance and having a bearing on the individual obtaining or not obtaining the bonus.

(Court File No. 37).  Unum Defendants contend Judge Carter erred in granting the Plaintiff's motion and request the Court reverse the Order.


II.     **STANDARD OF REVIEW**

A district court may refer a nondispositive motion to a magistrate judge for disposition.  Fed. R. Civ. P. 72(a).  A party dissatisfied with the magistrate judge's ruling may object to it within ten days of being served with a copy of the order.  *Id.*  "The district court judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law."  *Id. Thomas v. Arn*, 474 U.S. 140, 149, 106 S. Ct. 466 (1985)(holding that Congress provided for a "clearly erroneous or contrary to law" standard of review of a magistrate's disposition of certain pretrial matters).


III.    **DISCUSSION**

After considering Unum Defendants' objections, the relevant law, and the Order issued by

---

of the Plaintiff's claims. The plaintiff was unsatisfied with the Defendants' response because it did not include a full response providing the individual performance criteria for each employee.

4

Judge Carter, the Court will not modify or set aside any portion of the Order, which granted Plaintiff's motion, because Judge Carter's decision is neither clearly erroneous nor contrary to law. To the contrary, it correctly applies the law.

Plaintiff's motion to compel raised the same issues which Magistrate Judge Carter addressed at length in *Bennett v. Unum Life Ins. Co. of America*, 321 F.Supp.2d 925 (E.D. Tenn 2004). As did the plaintiff in *Bennett*, the plaintiff in this case alleges at the time Unum Defendants reviewed and denied his claim, Unum Defendants' decisions to deny or grant benefit claims were influenced on a corporate-wide basis by specific policies and procedures designed to protect profits. To support his motion, Plaintiff submitted evidence - the same evidence offered by the plaintiff in *Bennett* and which Judge Carter found sufficient to allow the plaintiff to conduct limited discovery. As such, Judge Carter properly granted Plaintiff's motion.

**A.      Discovery in ERISA Cases to Recover Benefits Under 29 U.S.C. § 1132(a)(1)**

Although Fed. R. Civ. P. 26(b)(1) allows "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party," this rule is not particularly useful for determining whether a plaintiff who asserts a claim to recover ERISA benefits under 29 U.S.C. § 1132(a)(1) may conduct discovery outside the administrative record. This stems from the "proper judicial role in ERISA cases and precedent"(*Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir. 1990) (discussing nature of *de novo* review for claims to recover benefits under 29 U.S.C. § 1132(a)(1)(B))) : when a claimant asks a district court to review an ERISA benefit plan administrator's decision to deny benefits, the court is generally limited to considering the administrative record on which the denial of benefits was based. *See also Killian v. Healthsource Provident Administrators, Inc.*, 152 F.3d 514, 522 (6th Cir. 1998) ("There can be no dispute that in

5

this circuit, in an ERISA claim contesting a denial of benefits, the district court is strictly limited to a consideration of the information actually considered by the administrator.") (citing *Perry*); *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998). Generally, no discovery is necessary when a plaintiff seeks to recover ERISA benefits because the relevant facts for the administrator's decision are contained in the particular administrative record.

Where a plaintiff alleges a procedural challenge to the administrator's decision, however, a district court is permitted to consider evidence which was not originally presented to the administrator. *See, e.g., Vanderklok v. Provident Life & Accident Ins. Co.*, 956 F.2d 610, 617 (6th Cir. 1992) (remanding to district court to consider new evidence and review denial of benefits where administrator failed to comply with ERISA procedural requirement in 29 U.S.C. § 1133). In this context, the term "procedural challenge" has been used to refer to an alleged lack of due process afforded by, or an alleged bias on the part of, an ERISA plan administrator. *Wilkins*, 150 F.3d at 618, 619. In suggested guidelines for adjudicating ERISA actions like this one, the United States Court of Appeals for the Sixth Circuit stated, "[t]he district court may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision . . . . [A]ny prehearing discovery at the district court level should be limited to such procedural challenges." *Id.* at 619.

Where the administrator or fiduciary is given discretionary authority to determine eligibility for benefits, the administrator's or fiduciary's decision to deny benefits is reviewed by the court under an arbitrary and capricious standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *University Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 845 (6th Cir. 2000); *Peruzzi v. Summa Medical Plan*, 137 F.3d 431, 433 (6th Cir.

1998). Bias, conflicts of interest, and denial of due process on the part of the plan administrator are

relevant factors for the court to consider in deciding whether the decision to deny plaintiff benefits

was arbitrary and capricious. *See Bruch,* 489 U.S. at 115, 109 S.Ct. 948; *Peruzzi,* 137 F.3d at 433;

*Killian.,* 152 F.3d at 521-2.

Where a plaintiff merely alleges a conflict of interest in cases where the insurance company

both funds and administers the plan, often termed as an apparent structural conflict of interest,

discovery may not be necessary because the courts already take notice of such a conflict of interest

and give it due consideration when reviewing the denial or termination of ERISA benefits. *Killian,*

152 F.3d at 521-2 (holding a district court must weigh as a factor the actual conflict of interest which

exists when administrator doubles as payor of disputed benefits). In contrast to a situation where

there exists only a structural bias, *Bennett* describes the general circumstances in which

consideration of such evidence would be appropriate:

> Where, however, an ERISA plaintiff comes forward with a reasonable basis to
> believe that this conflict of interest has solidified into conscious, concrete policies,
> procedures, and practices to promote the company's financial welfare at the expense
> of a full and fair evaluation of the plaintiff's claim for benefits, then the plaintiff
> should be allowed to conduct limited discovery to determine whether such policies,
> procedures, and practices do actually exist and, if so, to what extent they interfered
> with the fair review of the plaintiff's claim for benefits. This information would
> certainly be relevant to the Court when conducting its review of the decision to deny
> benefits.

*Bennett,* 321 F.Supp.2d at 932-3. In *Bennett,* the court selects a "middle of the road" approach,

neither prohibiting nor permitting discovery in ERISA cases simply because the fiduciary holds

dual, conflicting roles. *Id.* at 933. Good cause exists to permit the plaintiff to conduct appropriate

discovery "where a claimant 1) identifies specific procedural challenges concerning a fiduciary's

decision to deny or terminate ERISA benefits, and 2) makes an initial showing to the court that he

1998). Bias, conflicts of interest, and denial of due process on the part of the plan administrator are relevant factors for the court to consider in deciding whether the decision to deny plaintiff benefits was arbitrary and capricious. *See Bruch,* 489 U.S. at 115, 109 S.Ct. 948; *Peruzzi,* 137 F.3d at 433; *Killian.,* 152 F.3d at 521-2.

Where a plaintiff merely alleges a conflict of interest in cases where the insurance company both funds and administers the plan, often termed as an apparent structural conflict of interest, discovery may not be necessary because the courts already take notice of such a conflict of interest and give it due consideration when reviewing the denial or termination of ERISA benefits. *Killian,* 152 F.3d at 521-2 (holding a district court must weigh as a factor the actual conflict of interest which exists when administrator doubles as payor of disputed benefits). In contrast to a situation where there exists only a structural bias, *Bennett* describes the general circumstances in which consideration of such evidence would be appropriate:

> Where, however, an ERISA plaintiff comes forward with a reasonable basis to believe that this conflict of interest has solidified into conscious, concrete policies, procedures, and practices to promote the company's financial welfare at the expense of a full and fair evaluation of the plaintiff's claim for benefits, then the plaintiff should be allowed to conduct limited discovery to determine whether such policies, procedures, and practices do actually exist and, if so, to what extent they interfered with the fair review of the plaintiff's claim for benefits. This information would certainly be relevant to the Court when conducting its review of the decision to deny benefits.

*Bennett,* 321 F.Supp.2d at 932-3. In *Bennett,* the court selects a "middle of the road" approach, neither prohibiting nor permitting discovery in ERISA cases simply because the fiduciary holds dual, conflicting roles. *Id.* at 933. Good cause exists to permit the plaintiff to conduct appropriate discovery "where a claimant 1) identifies specific procedural challenges concerning a fiduciary's decision to deny or terminate ERISA benefits, and 2) makes an initial showing to the court that he

7

has a reasonable basis to make such procedural challenges." *Id.* According to *Bennett*, discovery is appropriate "that is strictly circumscribed to obtain potential evidence concerning the identified procedural challenges." *Id.*

After *Bennett*, two cases from the United States Court of Appeals for the Sixth Circuit acknowledged the exception allowing discovery in cases involving procedural challenges and recognized the importance of allowing discovery to enable the court to determine how much weight to accord a conflict of interest. *Calvert v. Firstar Finance Inc.*, 409 F.3d 286 (6th Cir. 2005); *Kalish v. Liberty Mutual*, 419 F.3d 501 (6th Cir. 2005). In *Calvert*, the Sixth Circuit held courts should take into account conflicts of interest when applying the arbitrary and capricious standard of review:

> The 'possible conflict of interest' inherent in this situation 'should be taken into account as a factor in determining whether [Liberty's] decision was arbitrary and capricious.' " *Id.* (quoting *Davis v. Kentucky Finance Cos. Retirement Plan,* 887 F.2d 689, 694 (6th Cir.1989), *cert. denied,* 495 U.S. 905, 110 S.Ct. 1924, 109 L.Ed.2d 288 (1990)); *see also Firestone Tire and Rubber Co.,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Darland,* 317 F.3d at 527-528; *Whitaker v. Hartford Life and Accident Insurance Co.,* 121 Fed. Appx. 86, 87 (6th Cir.2005) [FN1] (holding that a court is to factor an insurer's dual role into its review under the arbitrary and capricious standard, though the standard remains arbitrary and capricious). While several courts have altered the standard of review to something less deferential than the arbitrary and capricious standard where a benefits administrator is operating under a conflict of interest (*see e.g., Adams v. Thiokol Corp.,* 231 F.3d 837, 842 (11th Cir.2000)), this Court has not taken that approach. Instead, as noted, the standard remains unchanged and the conflict of interest is to be considered in *applying* that standard.

*Calvert,* 409 F.3d at 292-3. Further, the Sixth Circuit stated the court's analysis of the bias or conflict of interest which existed during the administration of the plaintiff's claim was hampered by plaintiff counsel's failure to seek recovery regarding the insurer's bias or conflict of interest:

> The Court would have a better feel for the weight to accord this conflict of interest if Calvert had explored the issue through discovery. While Calvert's counsel asserted that it was his understanding that discovery is never permissible in an ERISA action

> premised on a review of the administrative record, an exception to that rule exists
> where a plaintiff seeks to pursue a decision-maker's bias. *See e.g., Wilkins v. Baptist
> Healthcare Sys., Inc.,* 150 F.3d 609, 618 (6th Cir. 1998).

*Id.* at 293, n.2. Finally, in *Kalish*, in the absence of evidence which could have been gathered through discovery and referencing the above-quoted footnote in the *Calvert* decision, the Sixth Circuit was unable to conclude the defendant acted arbitrarily and capriciously in deciding to credit a consultant doctor's opinion over that of the plaintiff's treating physician. *Kalish,* 419 F.3d at 508.

**B.      Review of the Magistrate Judge's Decision**

In his Order, Judge Carter referenced his opinion in *Bennett,* which conducted a thorough review of the law in this Circuit regarding discovery in an ERISA case where a plaintiff seeks to recover benefits under 29 U.S.C. § 1132(a)(1). He concluded Plaintiff did identify a specific procedural challenge to Unum Defendants' administration of his claim and Plaintiff's interrogatories were targeted to obtain discovery about a particular procedural deficiency. Under Sixth Circuit ERISA precedent, Judge Carter correctly held Plaintiff's requested discovery was appropriate and should be permitted in the narrowly-tailored form set forth in his Order.

To the extent Plaintiff seeks evidence of a structural conflict of interest on the part of Unum Defendants, the administrative record itself discloses a conflict of interest: Unum Defendants both fund and administer the benefit plan at issue. Under *Killian,* Unum Defendants' dual role creates an actual conflict of interest because Unum Defendants benefit financially when it denies a claim for benefits. *Killian,* 152 F.3d at 521. Where an ERISA plan administrator operates under a conflict of interest and has discretion under the benefit plan to determine claims for benefits, the administrator's conflict of interest must be weighed as a factor in determining whether the administrator abused its discretion. *Bruch,* 489 U.S. at 115.

While discovery of evidence beyond the administrative record in this case may be unnecessary to establish Unum Defendants operated under a structural conflict of interest or for the Court to consider Unum Defendants' conflict of interest as a factor when reviewing the decision to deny Plaintiff's benefits, a second level of individual employee bias may exist to support Judge Carter's decision to allow further discovery. Especially in light of *Calvert* and *Kalish*, the Court finds Judge Carter properly recognized the need for complete discovery as specified in his Order. Plaintiff has identified a specific procedural challenge to Unum Defendants' decision to deny ERISA benefits, namely the existence of institutionalized policies and procedures in place, under which Unum Defendants act on the conflict of interest creating individual bias in the administration of claims: UnumProvident employees participate in UnumProvident Corporation's management incentive compensation program and in UnumProvident Corporation's performance recognition plan which are designed to protect profits. Further, Plaintiff made an initial showing of his reasonable basis to make this challenge by establishing some of the UnumProvident employees who participated in the administration of Plaintiff's claim participated in one or both of these employee incentive pay programs. Under current case law and Sixth Circuit precedent, Judge Carter properly found good cause to permit Plaintiff to conduct appropriate narrowly tailored discovery. Plaintiff's discovery requests, as approved by Judge Carter, are narrowly focused to achieve the goal of assisting this Court in "getting a better feel for the weight to afford the conflict of interest." *Calvert*, 409 F.3d at 293, n.2; *Kalish*, 419 F.3d at 508. Therefore, this Court does not find Judge Carter's decision contrary to controlling law.

Unum Defendants further claim Judge Carter's decision is clearly erroneous because it orders Unum Defendants to produce documents and information beyond Plaintiff's discovery requests.

10

However, the record reflects the discovery request permitted by Judge Carter is consistent with the discovery previously sought by Plaintiff. The plain language of the interrogatory and requests to produce seeks the individual performance criteria under which bonuses were paid and all documents reflecting or relating to awards, bonuses and incentives for any UnumProvident employee who handled or supervised the handling of Plaintiff's claim. Unum Defendants' concern that allowing such discovery is an invasion of the employees' privacy interests is without merit because the protective order issued in the case would cover such sensitive information.

In sum, Unum Defendants have failed to show Judge Carter's Order was clearly erroneous or contrary to law. The Court will neither modify nor set aside the decision.

## VI.    <u>CONCLUSION</u>

For the reasons stated above, the Court will **DENY** Unum Defendants' Appeal From and Objection to the Magistrate's Order Granting Plaintiff's Motion to Compel (Williamson Court File No. 38)(LaMarca Court File No.35).

An Order shall enter.

/s/_____
**CURTIS L. COLLIER, CHIEF**
**UNITED STATES DISTRICT JUDGE**