IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BETTY BULLARD, | § | |
| Plaintiff, | § | |
| | § | CASE NO. |
| vs. | § | |
| | | CV-2:05-cv-1217-MEF |
| UNUMPROVIDENT CORPORATION; | § | |
| UNUM LIFE INSURANCE COMPANY | | |
| OF AMERICA, et al., | § | |
| Defendants. | § | |
| | § | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S FIRST MOTION TO COMPEL

Plaintiff has filed a motion to compel seeking an order requiring defendants to produce a deponent on certain areas of testimony pursuant to a 30(b)(6) notice. The following is defendants' response to plaintiff's motion.

    **A.**    **Plaintiff's Motion to Compel Should be Denied as to Topic No. 8.**

Topic No. 8 seeks to obtain testimony on:

> Defendants' policies and procedures with regard
> to payment of bonuses, awards, or other indices of
> recognition of job performance, and if any individual
> involved in the determination of the administration
> of the Plaintiff's claim(s) was eligible for said bonuses,
> awards or other indices of recognition, then the criteria
> under which said bonuses, awards or other indices
> of recognition were paid. This area of testimony is
> to include the policies and procedures in place
> with regard to the management incentive compensation
> program (MICP), the performance recognition program
> (PRP), and any other bonus system or incentive
> system in which the Defendants' employees involved

1

> in the determination or the administration of the
> Plaintiff's claim(s) were entitled to participate.

In addition to defendants' response relating to this topic that is quoted in plaintiff's motion, defendants communicated the following to plaintiff regarding this topic:

> As to Topic No. 8, we have produced documents that
> would describe the procedures referenced in Topic No. 8.
> See Bates Stamp Nos. UNUM00185-00292, subject to
> our objections. We also indicated that you can ask the
> individual witnesses the extent to which they are eligible
> for incentive compensation or bonuses and the
> criteria for those awards. I do want to clarify that
> I do not intend to indicate by referencing compensation
> in my October 30, 2006 letter that we would permit
> you to ask the witnesses the amount of their compensation
> in general, as this question is completely irrelevant in the
> present case, and it also raises privacy concerns.

November 16, 2006 letter, attached hereto as Exhibit A[1].

Plaintiff asserts that these documents will lead to evidence that employees were incentivized to deny claims and that, because they received compensation based in part on company profitability, they would be biased. In an effort to compromise on the request for production, defendants produced the following documents:

- 2004 Management Incentive Compensation Plan and Performance Management Plan, Summary Explanation for Participants;

- Performance Recognition Program documents;

- Broad Based Stock Plan;

- Employee Stock Option Plan;

- Employee Stock Purchase Plan; and

---

[1] Plaintiff's motion to compel does not attach the additional correspondence concerning the topics between the parties, including a February 24, 2006 and a November 16, 2006 letter. Copies of those letters are attached hereto as Exhibit A.

- Summary Brochure of the Benefits Center Recognition Programs.

These documents make it clear that there is no incentive compensation that is based on whether a claim is determined to be payable or is determined not to be payable under an insurance policy. Furthermore, plaintiff's argument that the information requested is reasonably calculated to lead to the discovery of admissible evidence concerning the bias of Unum Life officers and medical personnel because part of their incentive compensation was based on overall company profitability is not valid. This is particularly true of plaintiff's attempt to obtain information concerning the actual payment of compensation and bonuses to UnumProvident employees, and such a request should also be denied because of privacy implications. *Haynes v. Shoney's*, 1991 WL 354933 (N.D. Fla. 1991) (denying plaintiff's request for information relating to "salaries, stock options, special "ownership opportunities," and bonuses for defendant's employees on the basis that these records would be insufficient to demonstrate bias and that defendants are entitled to privacy concerning this compensation information).

At the very least, before defendants are burdened with having to produce someone to testify concerning the above requested information, plaintiff should first have to take the less invasive and burdensome step of asking the witnesses who worked on plaintiff's claim whether any part of their compensation or any bonus or other awards are based on the outcome of claims decisions or file reviews in which they participate.

It is further submitted that the decisions from the United States District Court for the Eastern District of Tennessee referenced by plaintiff are not applicable. While defendants contend that those decisions were incorrectly decided, those decisions involved discovery as to whether an ERISA claims fiduciary was operating under a conflict of interest. The court held

that certain discovery was admissible on the issue of whether the claims handlers in those cases were operating under a "conflict of interest" as defined under ERISA. The ERISA "conflict of interest" issue is not present in this case.

### B.    Plaintiff's Motion to Compel Should be Denied as to Topic No. 10.

Topic No. 10 seeks testimony as to:

> any regulatory actions regarding Defendant's
> claim handling practices.

In addition to defendants' response to relating to this topic that is quoted in plaintiff's motion, defendants communicated the following to plaintiff regarding this topic:

> With regard to Topic No. 10, your topic is overly
> broad and vague and ambiguous as to exactly
> which regulatory actions you are referencing. It
> is also not limited as to time or in any other manner.
> To the extent that you are referencing the documents
> that you filed with your opposition to summary
> judgment, those documents are not relevant to
> your client's claim. Furthermore, while it is true
> that your client was offered reassessment, she rejected
> that opportunity; therefore, any reassessment proceedings
> are completely irrelevant to her case. You are certainly
> free to file a motion to compel on this issue; although,
> I must caution you that the statements that you make
> concerning the regulatory settlement agreement are
> false and are not supported by the documents.

Exhibit A.

As an initial matter, Rule 30(b)(6) requires that the party seeking the deposition "describe with **reasonable particularity** the matter on which the examination is requested." Fed. R. Civ. P. 30(b)(6) (emphasis added). The Topic No. 10, seeking testimony on "any regulatory actions" is not reasonably limited as to time and scope or in any other way so as to satisfy this requirement. Plaintiff also does not even attempt to limit this topic in any way to matters at issue in this case. For that reason alone, this Court should deny plaintiff's motion on this topic.

4

In an attempt to justify this topic, plaintiff refers to Exhibit C, the report of the Targeted Multistate Market Conduct Exam, which plaintiff previously attached as Exhibit 16 to plaintiff's opposition to summary judgment. As previously discussed in defendants' summary judgment briefing and in defendants' motion to strike and defendants' reply to plaintiff's opposition to motion to strike, plaintiff mischaracterizes the Multistate Market Conduct Exam.

First, in the motion to compel, plaintiff erroneously states that "defendants sent this plaintiff notice that her claim had been one of those claims, which were mismanaged." (Motion to Compel, p. 2). In reality, plaintiff was offered an opportunity to seek reassessment of her claim in an April 22, 2005 letter as part of a multistate settlement with insurance regulators and the United States Department of Labor. The letter is Exhibit 10 to plaintiff's opposition to summary judgment, and a copy is attached hereto as Exhibit B. A brief review of Exhibit B demonstrates that plaintiff's representation that defendants sent notice to plaintiff that her claim had been mismanaged is a completely false statement. Contrary to plaintiff's representation, that document contains no such statement. Instead, the letter simply informs plaintiff that she can choose to participate in the claim reassessment process set up as part of the Multistate Settlement Agreement. Critically, plaintiff declined the opportunity to participate in that reassessment program. Plaintiff argues that "asking questions of corporate representatives…will reveal why it is that plaintiff had a right to have her claim reassessed." The letter to plaintiff establishes exactly why Unum Life and other certain UnumProvident subsidiaries agreed to implement a claim reassessment process, indicating that this agreement was part of a multistate settlement with insurance regulators and the Department of Labor. There is absolutely no basis for plaintiff's insinuation that there was a finding of any deficiency specific to plaintiff's claim. Plaintiff has asserted no basis for this insinuation and this argument in no way justifies her

request for discovery on this topic. In fact, plaintiff's Exhibit C recognizes on its face that the claim files that were reviewed by the outside examiners were all claims pre-dating plaintiff's claim in this case. (Multistate Exam Report, p. 5).

The Multistate Exam Report was not generated by defendants. Instead, it was prepared by outside examiners who initially reviewed 299 randomly selected claim files from three subsidiary insurance companies of UnumProvident Corporation. (Multistate Exam Report, p. 5). The examiners then reviewed an additional 75 randomly selected claim files. (*Id.*) Contrary to plaintiff's assertion, the Multistate Report does not make specific findings of fact or reach a formal conclusion concerning the files examined. In fact, the report reflects on its face that it is tentative or interim and subject to additional investigation or review, stating "this agreement obviated the need for additional investigation, review of a larger claim sample, specific claim findings, or reaching a formal conclusion concerning the examination objective." (Multistate Exam Report, p. 10).

As explained in defendants' motion to strike and reply to plaintiff's opposition to motion to strike, the Multistate Exam Report is inadmissible hearsay not subject to any exception. Plaintiff has argued that the Multistate Exam Report is admissible pursuant to Federal Rule of Evidence 803(8)(C), for factual findings of government agencies. The Report is, as noted above, clear on its face that it is a tentative or interim report, subject to additional investigation or review, which was obviated by the settlement agreement with UnumProvident and its relevant subsidiaries. Controlling Eleventh Circuit authority provides that Rule 803(8) does not provide an exception to the hearsay exclusion for tentative or interim reports subject to revision and review. *Toole v. McClintock*, 999 F. 2d 1430, 1434-1435 (11th Cir. 1993).

Furthermore, as demonstrated above, the Multistate Exam Report expressly states that it does not make "findings of fact." Federal Rule of Evidence 803(8)(C) only applies to "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate a lack of trustworthiness." Thus, since the Report makes no conclusions or "factual findings," it does not fall within the hearsay exception advanced by plaintiff. Finally, the Report is in essence a settlement agreement, which lacks the requisite trustworthiness for admission under 803(8)(C). *See Ralston v. Suiza Dairy Group, L.P.*, 2006 WL 2917343 *10, fn. 6 (N.D. Ind. October 10, 2006) (explaining that the Report is in essence a settlement agreement).

Moreover, the Report is not admissible because it is not relevant under Federal Rules of Evidence 401, 402, and 403. The Multistate Report identifies preliminary general areas of concern noted by the examiners from a review of 299 randomly selected claim files out of tens of thousands of claims handled on Unum Life, Provident Life, and Paul Revere policies during the relevant time period.[2] The Multistate Report expressly does not make specific findings of fact or reach a formal conclusion concerning the examination objective. (Mulitstate Exam Report, p. 10). There has been no showing that the specific claim files that caused the examiners to express preliminary areas of concern were substantially similar to the claim in the present case. Given the above, and the preliminary nature of the Report, the Report is not relevant to show "bad faith" or a pattern of practice for fraudulent conduct. In fact, the Report does not identify any "fraudulent conduct." Moreover, the specific claims reviewed by the examiners and the facts of the particular claims that lead them to identify preliminary general areas of concern are not

---

[2] The examiners reviewed an additional 75 claim files after identifying the preliminary areas of concern.

7

identified in the Report. There is, therefore, no way for defendants to rebut or otherwise test the credibility and trustworthiness of the Report through cross-examination.

Because this document is inadmissible and the Multistate Exam is not relevant to this case, plaintiff's motion to compel should be denied even if plaintiff's topic is restricted to the Multistate Exam. Plaintiff has failed to demonstrate how the Multistate Exam, which was never completed because of a settlement agreement between the parties, is reasonably calculated to lead to the discovery of admissible evidence in this case.[3]

### C.    Plaintiff's Motion to Compel Should be Denied as to Topic No. 12.

Plaintiff's request for a 30(b)(6) witness on the "criteria by which Defendant's employees' job performance is assessed" is certainly not pertinent to any issue in this case. In addition to the topic being overly broad and not reasonably limited with respect to the facts of this case, plaintiff has provided no basis for concluding that this information is reasonably calculated to lead to discoverable information in this case. The elements of a breach of contract claim and a bad faith claim under Alabama law are clear and well defined. Defendants' internal human resources policies are not in any way relevant to those elements. At the very least, plaintiff should be required to first take the less burdensome step of questioning the employee witnesses who worked on plaintiff's claim as to whether they are even aware of any job performance criteria that "negatively impacts claims handling." Plaintiff has failed to establish that this topic is reasonably calculated to lead to the discovery of admissible evidence.

### D.    Plaintiff's Motion to Compel Regarding the Sale of Group Policies, Topic No. 17, Should be Denied.

The final topic of plaintiff's motion to compel seeks to have testimony on

---

[3] Inquiry into certain information concerning regulatory investigations, including the Multistate Market Conduct Exam, would be protected by confidentiality provisions protecting information gathered or produced in the course of a regulatory examination. *See e.g.* Me. Rev. Stat. Ann. Tit. 24-A § 225(3).

> the defendants' policies and procedures regarding
> the sale of "group" policies; the administration
> of "list billing accounts;" and the company's
> instructions on how to establish "group" policies.

In addition to defendants' response relating to this topic that is quoted in plaintiff's motion, defendants communicated the following to plaintiff regarding this topic:

> As to Topic No. 17, as extensively discussed in
> our summary judgment materials, your client
> could not identify any statement made to her by
> my client or made to her employer by defendants
> concerning her coverage during the sales process.
> Based on your client's own deposition testimony,
> there has certainly been no explanation as to why
> you would be entitled to testimony concerning the
> policies and procedures relating to the sale of group
> policies. If you have any further explanation regarding
> this request, I will be glad to consider it with my client.

Exhibit A.

Plaintiff's justification for seeking this discovery is a vague statement that this testimony is "an absolutely necessary topic for a corporate representative to show that defendants have engaged in practices which lead to fraudulent misrepresentations being made in the sale of this policy." (Motion to Compel, p. 7).

Given the allegations in the complaint and plaintiff's own deposition testimony, in which she could not identify any alleged misrepresentations made to her by any of defendants' personnel, plaintiff's request for this discovery should be denied. Because Federal Rule of Civil Procedure 9(b) requires that fraud claims be stated in the complaint with particularity; it is first instructive to review the fraud allegations in plaintiff's complaint. In Count Three of plaintiff's complaint, plaintiff alleges as follows:

> 59. At all times relevant hereto, defendants continuously
> represented to the plaintiff that defendants had provided
> plaintiff with a disability policy that would pay monthly

>    disability benefits in the event the plaintiff were to become
>    disabled and was unable to perform the duties of her occupation
>    while said policy in force.
>
> 60. At all times relevant hereto, defendants continuously represented
>    to the plaintiff that the defendants have provided the plaintiff with
>    a life insurance policy that would remain in effect by operation
>    of a life premium waiver in the event the plaintiff would become
>    disabled and would be unable to perform the duties of her
>    occupation while said policy in force.

Those allegations are the only remotely specific allegations in the complaint that a misrepresentation was made in this case. It is obvious from reading the complaint that those allegations essentially assert that defendants misrepresented to plaintiff that she would be covered if she qualified for benefits under the Policies. In other words, there is no allegation of any misrepresentation outside the language of the Unum Life Policies themselves.

Unum Life and UnumProvident have moved for summary judgment on plaintiff's fraud claims based on the fact that plaintiff's own testimony establishes that no misrepresentations were made to her by defendants. This same testimony from plaintiff supports the denial of plaintiff's motion to compel on this topic. In her deposition, Ms. Bullard candidly admitted that she has never heard any representations about either of her two policies from any employee or representative of Unum Life or UnumProvident. (Bullard Depo at 319, Excerpts of Bullard's Deposition are attached hereto as Exhibit C). When asked to identify documents which she contends contained representations regarding her policy, Ms. Bullard testified that she received a three page handout regarding her coverage from Ginny Hancock, who worked for plaintiff's own employer – **not Unum Life or UnumProvident**. (Bullard Depo at 59-61). Ms Bullard provided a copy of this handout during her deposition. Ms. Bullard also testified that she received an employee manual from her employer that she believes contained a description of her insurance coverage. (Bullard Depo at 312-313). There is absolutely no evidence that Unum Life or

UnumProvident furnished Ms. Bullard with an employee manual. (*Id.* at 327-331). While Ms. Bullard agreed to furnish a copy of the employee manual to her attorney if she was able to locate the manual, no such manual has been produced. (*Id.* at 313). Ms. Bullard testified that the employee manual and the handout from Ginny Hancock, who worked for plaintiff's employer, are the only documents on which she bases her claim that defendants' promised to pay her disability benefits. (*Id.* at 316-317).

Accordingly, plaintiff has testified in her own deposition that she had never heard any representations about either of her two policies from any employee or representative of Unum Life or UnumProvident. Moreover, the only fraudulent representations alleged in plaintiff's complaint essentially amount to claims that UnumProvident and Unum Life misrepresented that they would perform in accordance with the language of the contract and failed to do so.

Given the allegations in the complaint and plaintiff's own testimony that she received no representations from defendants, there is no basis for plaintiff to obtain testimony concerning the manner in which group policies are sold or established. Indeed, there is no basis to obtain testimony "to show that defendants have engaged in practice which lead to the fraudulent misrepresentations being made in the sale of this policy" because plaintiff's own testimony establishes that she received no such fraudulent representations from defendants.

This topic is not reasonably calculated to lead to the discovery of admissible evidence in this case, and, furthermore, the topic is clearly overly broad in that it is not limited as to time or in any other manner relating to the facts of this case. For the above reasons, plaintiff's motion to compel as to Topic No. 17 should be denied.

Respectfully submitted,

*s/Henry T. Morrissette*
HENRY T. MORRISSETTE (MORRH7622)
DOUGLAS W. FINK        (FINKD3798)
Attorneys for Defendant
UnumProvident Corporation

OF COUNSEL:

HAND ARENDALL, L.L.C.
Post Office Box 123
Mobile, Alabama 36601
Phone: (251) 432-5511
Fax:   (251) 694-6375

## CERTIFICATE OF SERVICE

I hereby certify that on this day, December 8, 2006, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which will send notifications of such filing to the following:

tsinclair@cwl-law.com

*s/Henry T. Morrissette*