LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION

CASE NUMBER:   2:05-CV-1217-MEF

Betty Bullard,

    Plaintiff,

vs.

UnumProvident Corporation, et al.,

    Defendants.

S T I P U L A T I O N

IT IS STIPULATED AND AGREED by and between the parties through their respective counsel, that the deposition of Betty Bullard may be taken before Sara Mahler, CSR, at the offices of Beasley, Allen, Crow, Methvin, Portis & Miles, at 272 Commerce Street, Montgomery, Alabama 36103, on the 8th day of March, 2006.

DEPOSITION OF BETTY BULLARD

46798



LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 59

1  given to you without your having to request
2  it?
3       A.    I requested it.
4       Q.    Okay. Did you have questions
5  about your coverage?
6       A.    I wanted to be sure I
7  understood what I thought I understood.
8       Q.    Did you request copies of the
9  actual policies?
10      A.    I did.
11      Q.    From whom did you request
12 those?
13      A.    Ginny Hancock, the insurance
14 person. I'm not sure of her title.
15      Q.    The insurance person at the
16 Annuity Board?
17      A.    No, at the Convention, the
18 State Convention.
19      Q.    You requested copies of the
20 actual policies?
21      A.    Yes.
22      Q.    Was that at or about the time
23 that you were given this handout?

Page 60

1  A. Yes.
2  Q. Okay. And what was Ginny
3  Hancock's response?
4  A. She did not have that to
5  provide to me, or she wasn't supposed to. I
6  don't recall how it was worded, but she
7  could not get it for me.
8  Q. Did you make any further
9  inquiry?
10  A. No.
11  Q. You never called Unum Life and
12  said: Hey, I'd like a copy of this policy?
13  A. No.
14  Q. I noted that there are
15  actually two copies, I think they're the
16  same thing, but two copies of this
17  documentation that starts at BULL 1084,
18  another copy of BULL 0898, through 900.
19          Do those look to you to be the
20  same document? They've got the same print
21  date off the Internet on the bottom. 05/08
22  of 2002. Do you think that's about the time
23  you would have received this documentation?

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 61

1   A.   I'm not sure.
2   Q.   Okay. Was it Ginny Hancock
3   that provided you this three-page handout?
4   A.   Yes.
5   Q.   What did she -- What, if
6   anything, did she tell you about the
7   coverage when she gave you this?
8   A.   She kind of went over the same
9   things that I later read.
10  Q.   From the handout?
11  A.   Yes.
12  Q.   All right. In paragraph
13  twenty-two of your complaint, you've still
14  got that. Paragraph twenty-two of the
15  complaint, you state that: On September 1,
16  2004, defendants notified plaintiff by
17  letter of their denial of her claim for
18  disability benefits and subsequently
19  notified her on September 9 that she was
20  denied a waiver of premium.
21                  (Defendant's Exhibits 4.1
22                  and 4.2 were marked for
23                  identification purposes.)

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 312

1  Ms. Bullard, you testified that you had
2  discussions with Ginny Hancock, and
3  indicated that you were surprised that you
4  had not been examined further by a
5  physician.
6              And I asked you whether you
7  had any basis in the contract for any
8  contention, similar to those in paragraph
9  thirty of your complaint, that you should
10 have been examined by an independent medical
11 examiner?
12         A.    It came from me, just what I
13 gathered from the description that I had
14 read.  And there is -- I don't think I said
15 earlier either that there is a description
16 of the insurance in our employees manual,
17 too.
18         Q.    Okay.
19         A.    Besides what we have.  And
20 just what I had gathered and then, I guess,
21 from Ginny verbally -- which she had -- you
22 know, she had known -- has read the
23 contract.  I had not.  But between what I

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 313

1  had read, the description, and what she had
2  told me, I had gathered that they should or
3  would probably.
4      Q.    And you think that was in your
5  Employee Manual?
6      A.    I'm not sure if it was in that
7  description.  I know there is a description.
8  And I'm not saying -- I'm not sure if it
9  came from Ginny -- just Ginny or if it was
10 actually stated in the description, but for
11 some reason, I was under the impression.
12     Q.    Do you have a copy of that
13 Employee Manual?
14     A.    I'm not sure.
15     Q.    Okay.  If you have it, will
16 you furnish it to your attorney?
17     A.    Yes.
18     Q.    When you claimed that the
19 defendant's breached the contract, are you
20 saying that they simply failed to pay
21 benefits under the policy?
22          MR. SINCLAIR:  I'm going to
23 insert a running objection to the extent

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 316

1  you mean within the terms of the contracts?
2  And we'll get to your fraud claim in just a
3  minute, but you just said that they promised
4  they would pay you.
5          MR. SINCLAIR:  Same objection.
6      Q.  What do you mean when you say
7  they promised they would pay you?  You mean
8  their obligations under the written
9  contract?
10     A.  That -- Again, it was that if
11 I was determined disabled -- I mean, if my
12 doctor said I was disabled, that I would
13 have -- If I was having health problems and
14 I was disabled, that they would pay the
15 disability.  That's what I had been paying
16 the premium for.
17     Q.  Who told you that?
18     A.  That's my interpretation of
19 what I had read and heard.
20     Q.  Okay.  Read where?
21     A.  In the descriptions that I
22 talked about.
23     Q.  Those being the Employee

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 317

1  Manual?
2       A.   And what was given to me.
3       Q.   The documents that we
4  discussed earlier, the one that Ginny
5  Hancock gave you; correct?
6       A.   Yes.
7       Q.   Anything else in writing that
8  you base that statement on?
9       A.   No.  Because I have not had
10 access to the actual --
11      Q.   Policies?
12      A.   -- policies.
13      Q.   You said, based on what you
14 read and what you heard from Ginny?
15      A.   Ginny.  The executive
16 director.
17      Q.   Who is that?
18      A.   Bobby DuBois.
19      Q.   I'm sorry?
20      A.   Bobby DuBois.
21      Q.   Bobby DuBois.  Okay.  That's a
22 man; right?
23      A.   Yes.

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 319

1   A.   Yes.

2   Q.   And that was -- That person who came and talked to you was an employee of the Annuity Board; correct?

    MR. SINCLAIR:  Objection to the form.

7   A.   That's what I remember, yes. He was one of them.

9   Q.   You've never heard any representations about either of these two policies from any employee or representative of Unum Life or UnumProvident have you?

    MR. SINCLAIR:  Objection to the form.  To the extent you understand those terms, please respond to the gentleman's question.

17  A.   Not to my knowledge, no.

18  Q.   Instead, you've heard, based on what you've told me, representations from folks at the State Convention or the Annuity Board; right?

    MR. SINCLAIR:  Same instructions.  Same objection.  Respond to

1  disability policy was in force.  Did I read
2  fifty-nine correctly?
3        A.      You read that correctly.  And
4  what, in my opinion, this refers to the
5  reason they're saying the defendant is
6  because it's the policy, and what the policy
7  stated.  And that the fact that I was paying
8  the premium, it was, you know, to me, that
9  was good faith that they would do whatever
10 they said they were going to do for me.  I
11 was paying my premium.
12       Q.      But to the extent that anyone
13 actually said these things to you orally,
14 that would have been either Ginny Hancock,
15 Bobby DuBois or someone from the Annuity
16 Board who came and spoke to y'all when you
17 got your last new manual?
18       A.      Those people have said --
19       Q.      Have those people said those
20 things there in fifty-nine, sixty and
21 sixty-one?
22       A.      Not exactly like it is there.
23       Q.      Okay.  Well, what all has

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 328

1   Ginny Hancock said to you about your
2   coverage under these two policies?
3           A.      That I paid my premiums, you
4   know, that it could cover what I've
5   interpreted from what she gave me, the
6   handout that she gave.  And, you know, the
7   doctors said that they say -- My doctors
8   said that I'm disabled, that y'all would pay
9   the benefits because I have been paying my
10  premium.  We had done this in good faith.
11          Q.      Do you recall anything else
12  that Ginny Hancock has said to you about the
13  policies?
14          A.      I don't recall everything
15  that's been said.
16          Q.      Okay.  Other than what you
17  just told me, do you presently recall
18  anything specific that she told you?
19          A.      Not specific.
20          Q.      Do you recall anything
21  specific that Bobby DuBois told you about
22  your coverage under either of the policies?
23          A.      Again, just what I've been

1  saying.
2      Q.   You don't recall anything
3  specific that Bobby DuBois told you?
4      A.   That what the policy -- How it
5  gave the description of the policy and what
6  I could -- you know, what they thought I
7  could expect when I filed a claim, from what
8  they had -- the information they had.  They
9  were basing it on what they had.
10     Q.   Okay.  What did he tell you
11 you could expect?
12     A.   Again, what I've been saying
13 the whole time, that, you know, if my doctor
14 said I was disabled, that they would pay the
15 benefits.
16     Q.   So, you contend both Ginny and
17 Bobby said that?
18     A.   Yes.
19     Q.   Do you contend that that
20 person from the Annuity Board who came and
21 spoke to y'all when you got your last new
22 manual said something like that, too?
23     A.   That's what I remember, yes.

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 330

1  Q.  Anything more specific than
2  that?
3  A.  I don't remember.
4  Q.  When did Ginny Hancock make
5  these representations to you?
6  A.  When I started talking to her
7  about filing for disability.  And then in
8  the meetings we had with the -- Well,
9  actually, I don't guess Ginny was the one
10 that -- it was Bobby that talked in the
11 meeting.
12 Q.  Which meeting?
13 A.  About the manual.
14 Q.  Bobby DuBois is the Annuity
15 Board person who came and spoke to y'all?
16 A.  No.  He is the assistant
17 executive director at the Convention.  But
18 he and Ginny, together, work on the
19 insurance, among other things.
20 Q.  Is it your testimony that
21 Ginny Hancock never made these
22 representations to you until you were ready
23 to file a claim?

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 331

1        MR. SINCLAIR: Objection to
2  the form.  Go ahead.
3        A.    No, not actually.  When we --
4  When I signed my beneficiary forms, when I
5  signed that I had got my manual, we
6  discussed it at those times.  We had
7  discussed it prior to that.
8        Q.    What I would like to know is
9  when you first recall Ginny Hancock making
10 these representations to you?
11       A.    Again, like I said, when I
12 signed, she's the one that has the paperwork
13 when we had to sign for our -- who our
14 beneficiary would be.  And then when we
15 signed for the manuals, she was the one that
16 had the forms that we signed for that.
17       Q.    And she made those
18 representations at the time you signed for
19 your manuals and assigned your
20 beneficiaries?
21       A.    I remember us talking about
22 what we could expect out of these policies.
23       Q.    You can't tell me what year or