IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BETTY BULLARD ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | CASE NO. |
| UNUMPROVIDENT CORPORATION; ) | |
| UNUM LIFE INSURANCE COMPANY ) | 2:05-cv-1217-MEF |
| OF AMERICA, et al., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S THIRD MOTION TO COMPEL**

COMES NOW Plaintiff Betty Bullard and respectfully requests this Court order the Defendant UnumProvident Corporation to provide full and complete responses to the plaintiff's discovery requests and set for hearing the pending Motions to Compel so the parties and the Court can resolve these issues in one setting. For ease of reference the plaintiff will set out: (1) the relief requested in this motion; (2) the procedural posture of those discovery requests that are the subject of this motion; (3) the specific discovery requests along with defendant's responses; and (4) the plaintiff's basis for contending those discovery responses are deficient.

I.   **REQUESTED RELIEF**

   1.   An order directing UnumProvident to provide all information available on the bonuses paid to the employees who performed services on the plaintiff's claim, provide all information related to any awards given to these employees, and provide all information detailing the objective and subjective indices of recognition for job performance with regard to those individual employees who performed services on the plaintiff's claim. That the defendant be ordered to produce all documents reflecting financial bonuses, incentives, stock options, awards or any other

1

      compensation or type of compensatory program available to the company personnel who were working on or supervising the plaintiff's claim. See Attachment "E" (Interrogatory 4, RFP 62, 63 and 64) containing the specific discovery requests, defendant's responses and reasons Plaintiff contends the responses are deficient. This information is identical to the information previously ordered to be produced by the United States District Court for the Eastern District of Tennessee, Chattanooga Division in the matter entitled *Robert J. Lamarca v. UnumProvident Corp. et. al.*, Case No. 1:04-cv-163[1] . See Attachment "B".

2. An order directing defendant UnumProvident to identify those consultants and/or firms with whom the defendant consulted in order to establish the defendant's claim handling practices. See Attachment "E" (Interrogatory 6).

3. That the defendant UnumProvident be required to produce a privilege log for all those documents that have been redacted or withheld from production. See Attachment "E" (Interrogatory 19 and RFP 79).

4. That defendant UnumProvident be ordered to produce all the directives, bulletins and other materials that instruct or are offered as guidance to claim handlers on how to administer a claim. See Attachment "E" (RFP 21).

5. That defendant UnumProvident be ordered to produce all internal guidelines detailing how the defendant administers claims for claimants who have conditions such as those suffered by the plaintiff in this case. For example, the defendant's Fibromyalgia memo is very instructive and it details how the defendant sets out to assess a claimant's claim of disability when the claimant has fibromyalgia. See Attachment "E" (RFP 23).

6. That defendant UnumProvident be required to produce closure reports for the time period beginning the date the Plaintiff's claim was filed to present. These reports will provide evidence to rebut UnumProvident's

---

[1] In filing the motion to compel in *Lamarca* that resulted in the attached Orders the Plaintiff Mr. Lamarca submitted a package of information detailing the incentives given to UnumProvident employees. That same evidentiary submission is being provided to this Court in support of this Motion. *See* Attachment "A".

        claim that they pay 90 some odd percent or a "vast majority" of claims submitted. In the alternative, the defendant should be precluded from providing testimony to the jury regarding the number of claims the defendants pay. See Attachment "E" (RFP 26).

7. That the defendant be required to produce its return to work reports and weekly return to work reports generated by the claim handlers who work on the plaintiff's claim during the time period which the plaintiff's claim was pending with the defendants. See Attachment "E" (RFP 31).

8. That the defendant be ordered to produce the deposition of Ralph Mohney taken on January 28, 2002 and March 27, 2003. See Attachment "E" (RFP 34).

9. That the defendant be ordered to produce the depositions of Ms. Susan Roth, UnumProvident's in-house counsel, who submitted the affidavit in this case. See Attachment "E" (RFP 35).

10. That the defendant be ordered to produce all documents detailing the implementation of the LeBouef Report recommendations. See Attachment "E" (RFP 36).

11. That defendant UnumProvident be ordered to produce all files regarding the policies at issue in this case. See Attachment "E" (RFP 39).

12. That defendant UnumProvident be ordered to produce each and every medical report in its possession related to the plaintiff, or generic medical reports generated by the defendant in order to assess certain medical conditions for those specific medical conditions suffered by the plaintiff. See Attachment "E" (RFP 40).

13. That the defendant be ordered to produce each and every policy ever purchased (including any group policies under which Plaintiff was an insured or beneficiary) by plaintiff from the defendant UnumProvident or any of its subsidiaries or predecessors corporations to include any and all changes made to those policies over the course of the years. See Attachment "E" (RFP 47).

14. That the defendant produce all "Magic database" documents pertaining to the policies at issue. See Attachment "E" (RFP 49).

15. That defendant UnumProvident be ordered to produce any tapes or recordings, including surveillance tapes, of the plaintiff. See Attachment "E" (RFP 68).

16. That the defendant be ordered to produce all documents pertaining to the plaintiff's claim, policy and group policy or in the alternative state that they have produced all of the documents pertaining to plaintiff's claim. See Attachment "E" (RFP 70 and 75).

## II. PROCEDURAL POSTURE

On November 23, 2005 Plaintiff served her discovery requests on UnumProvident.

On March 13, 2006, April 7, 2006, April 18, 2006, April 20, 2006 and finally on November 28, 2006 the Defendant continued their "rolling production", each time on the heels of Plaintiff's threat to file a Motion to Compel.

The Plaintiff provided Defendant several opportunities to correct their deficient responses, even going so far as to send Defendant a rough draft of this Motion and give them several weeks to reconsider. Unfortunately the issues outlined supra have not been resolved and Plaintiff must now turn to the Court for a solution.

## III. UNWINDING UNUMPROVIDENT'S DISCOVERY RESPONSES

Understanding the answer to a discovery request should be a simple matter. In this case UnumProvident's use of multiple cross-references makes the task almost impossible. In an effort to assist the Court in deciphering UnumProvident's cryptic responses, the undersigned has incorporated into each discovery request that is the subject of this motion: (1) UnumProvident's "General Objections" (which UnumProvident specifically incorporated by reference into each and every response); (2) UnumProvident's initial response; and (3) UnumProvident's supplemental response.

Unfortunately the analysis doesn't stop there because UnumProvident then inexplicably[2] adopted Unum Life's answers to several discovery requests that, of course, came with their own "General Objections".

In an effort to assist the Court, Attachment "E" contains the interrogatories, requests for production and UnumProvident's responses that are the foundation for Plaintiff's requested relief as well as the reasons UnumProvident's responses are deficient.

### IV. UNUMPROVIDENT SHOULD PRODUCE THE DOCUMENTS AND OTHER EVIDENCE THAT SHOWS HOW IT MEASURES EMPLOYEE PERFORMANCE

Plaintiff's discovery requests sought information and documents that detail the objective and subjective performance criteria showing how the Defendant's employee performance is measured and how employee performance is tied to compensation as well as whether the Defendant's employees were entitled to bonuses, and information on how the bonuses were calculated.

The defendant failed to provide any documentation on the objective and subjective performance criteria and only produced limited information on the bonus systems at UnumProvident. The defendant's responses indicate that certain employees were eligible for bonuses through a program called the "Management Incentive Compensation Program" (MICP) and that during the relevant time period, the defendant's employees were eligible to receive, or did receive bonuses under that program.

---

[2] The 30(b)(6) deponent for the Defendants stated she was aware that all persons working on this claim file were UnumProvident employees, and that she had not, in the seven-year period since Unum Life merged with UnumProvident, met anyone who claimed to be a Unum Life employee. Attachment "C", 30(b)(6) Deposition of T. Ward taken November 30, 2006; *See also* "Attachment "D" General Services Agreement between UnumProvident and Unum Life. Since all claims records are maintained by UnumProvident and all the claims personnel are UnumProvident employees (*See* Attachments "C" and "D"), UnumProvident adopting Unum Life answers to these requests can only be explained as another attempt by UnumProvident to claim no involvement in this matter. *See* Doc. No. 19, Motion for Summary Judgment by UnumProvident.

5

**1.     The MICP Program**

The MICP documents show that certain management employees, including the in-house physicians on whom UnumProvident relied to provide an opinion used to deny the Plaintiff's claim, are paid bonuses under the MICP program. MICP bonuses are paid based on a combination of company profitability and individual performance. Each individual employee's MICP bonus is based, in part, on goals that were established on an individual basis, and on individual performance evaluations. The documents produced set out how the MICP program works, but no documents were produced that show what the individual goals were for the employees, nor whether the goals were met.

The Plan states the individual component is based:

> upon an assessment of your MICP goals, overall performance for the year and your 360 assessment with MICP goals having the greatest impact. These goals (MICP and key performance goal) are agreed to by the participant and the manager as being appropriate for measuring the individual's contribution, total assessment of the individual performance for the year.[sic]

MICP Plan for 2002, p. 3, (Attachment "A" at bates no. 228).

Thus, based on the Plan, each individual was to have set goals with a manager, and the employee's bonus is based, in part, on whether the employee met those goals. These goals are to be based on an individualized plan for each employee. For example, the Plan further states,

> MICP goals, which will be part of your overall performance plan, need to be completed and approved by your manager. It is important the goals be set through a participatory process between you and your manager so that they will reflect a focus on the way in which your efforts can support the Company's business goals and strategy. . .*Goals should be measurable in qualitative or quantitative terms to the extent possible*.

MICP Plan for 2002, p. 9, (Attachment "A" at bates no. 234) (emphasis added).

6

In addition to the individual goals set between an employee and his or her supervisor, the employees are also evaluated by their peers, through a program call the 360 Degree Feedback Program, under which "MICP participants will be evaluated on leadership competencies and behaviors by managers, peers, direct reports and key business partners." MICP Plan for 2002, p. 8, (Attachment "A" at bates no. 233). Under the 360 Degree Feedback Program, employees eligible for MICP bonuses are evaluated by their "peers," which is not limited to just other medical personnel, but also includes claims-handler and other managers. If the claims handlers have any motivation to see a claim handled a certain way, and the claims handlers are allowed input on the performance evaluation of a physician who works on the same claims, that is certainly information that could lead to potentially admissible evidence regarding the lack of objectivity of that employee, or the bias that infects UnumProvident's claims handling procedures, and should be available to the Court and to the Parties.

In response to the Plaintiff's discovery requests, Defendant provided to Plaintiff's counsel generic copies of the UnumProvident Corporation Management Incentive Compensation Plan. The Defendant did not provide the individualized criteria used to determine the amount of the bonus. Nor did they produce the objective performance criteria for each employee.

While the documents show bonuses may have been paid, the Defendant did not produce any documents that show *"the criteria under which such bonuses were paid"* or *any documents that " describe under what conditions such individual would be eligible for a bonus*." Additionally, the Defendant failed to produce any information regarding the individualized objective performance criteria for each employee. Not only did the Defendant attempt to limit their production to "bonus information," the Defendant went a

step further and attempted to limit the discussion to only those employees that receive bonuses. Clearly, the receipt of bonus information would be only a portion of the production responsive to the discovery requests. The bonus information should be produced with regard to each employee who participated. The fact that the employee failed to receive a "payoff" at the end of the year does not remove the potential bias and additional conflict of interest that is caused by the individualized objective performance criteria.

Specifically, for employees eligible for a bonus under the MICP for 2002, the employee should have met with her manager "early in the year" to "agree to the[] goals" used to establish her individualized performance plan. MICP p. 3. (Attachment "A" at bates no. 228). The MICP plan later states that, "the participant and manager should have established MICP, other performance, and developmental goals to be achieved during 2002." MICP p. 9. (Attachment "A" at bates no. 234). The document explains, "the MICP goals (typically 3) should go beyond the normal day-to-day activities, and should contain some stretch performance."[3] And later, the document explains that MICP goals should be set "so that they will focus on how your efforts can support the Company's business goals and strategy. . . Goals should be measurable in qualitative and quantitative terms to the extent possible." Id.

The Plaintiff submits that the documents that show specifically how Defendant's employees' bonuses were calculated, including any individualized objective or subjective goals, and any documents showing whether or not such goals were met should have been produced. Also included in the employee's evaluation is the ratings under the 360 Degree

---

[3] In addition to documents showing the specific performance measures for each employee, and documents showing how these goals were or were not met, nothing in the documents explain some of the terms, such as "stretch" in performance, or how that is measured.

8

Feedback Program, which also make up the overall performance evaluation, on which the MICP bonus is based. That individualized ratings assessment information was not produced.

**2. The Performance Recognition Plan**

Additionally, the some of the Defendant's employees are eligible for bonuses under the Performance Recognition Program (PRP). Eligible employees received bonuses between $300 and $500, and could receive more than one reward annually. (Attachment "A" at bates no. 240 to 242).

In order to receive an award under the PRP, an employee's supervisor or manager completes a PRP form. Id. The Defendant's discovery responses should include both the forms showing the criteria under which an award was recommended, and any documentation that shows why an award was or was not approved.

As the summary of the attached evidence shows, there is evidence that would show that UnumProvident's in-house medical consultants and certain claims personnel are incentivised to insure company profitability in that they are full-time employees of UnumProvident who are paid bonuses based on company profitability. (Attachment "A" Summary p. 1, exhibits bates pgs 1-2, 22-24, see also the MICP plan at bates 226-237). The information also shows that the in-house medical employees receive performance evaluations based, in part, on how well their decisions can be used to support the claims department's desire to save money (Attachment "A" Summary p. 1-2, exhibits bates pgs 3-10 and 25; and summary 14-15, exhibits bates pages 49-51, 58-61, 149, MICP plan at bates 226-237), and that the medical experts and claims handlers are encouraged to "sign off" on recommendations to deny benefits. (Attachment "L" Summary p. 3, exhibits bates pgs 11-12). This is relevant to the instant case, because the Defendant's employees's

decision to deny benefits relied on the opinions of its own medical advisors and claims handlers who, the Plaintiff submits, incentivised to operate in a manner inconsistent with their duty to their insured.

Other information submitted with this motion shows that UnumProvident has adopted internal procedures that are put in place to help deny claims (roundtables are one such example, see Attachment "A" Summary p. 9-12, exhibit bates pg 32-34, 36-40, 52-56, 62-65, 76-81).

Plaintiff's counsel acknowledges that the documents submitted with this motion are lengthy; however, these extensive documents are presented, not as evidence that UnumProvident has engaged in improper procedures, but in order to show the Court that the Plaintiff has a reasonable basis to be able to seek this discovery and is not on a "fishing expedition."

## V.     CONCLUSION

Plaintiff respectfully requests the Court set this motion and the pending motions for hearing. Having the parties present before the Court may assist the Court in resolving the pending Motions to Compel in a single setting.

　　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　 /s/ Thomas O. Sinclair____
　　　　　　　　　　　　　　　　　　　Thomas O. Sinclair
　　　　　　　　　　　　　　　　　　　One of the Attorneys for Plaintiff

OF COUNSEL:
Thomas O. Sinclair (SIN018)
Jenifer Champ Wallis (WAL191)
Campbell, Waller & Poer, L.L.C.
2100-A SouthBridge Parkway, Suite 450
Birmingham, AL 35209
(205).803-0051
Fax:  (205).803-0053

CERTIFICATE OF SERVICE

      I hereby certify that on December 13, 2006, I electronically filed the foregoing pleading with the Clerk of the court using the CM/ECF system which will send notifications of such filing to the following:

dfink@handarendall.com
hmorrissette@handarendall.com
jjohnson@handarendall.com

    /s/Thomas O. Sinclair
    Thomas O. Sinclair (SIN018)