# ATTACHMENT "A"

ATTACHMENT "A"

UnumProvident Claim Reassessment Unit
PO Box 9728
Portland, ME 04104-5028

BETTY W BULLARD
4001 TIFFANY DRIVE
MONTGOMERY, AL 36110-3003



April 22, 2005

BETTY W BULLARD
4001 TIFFANY DRIVE
MONTGOMERY, AL 36110-3003

Re: Claim No. 0100067587

Dear Betty W Bullard:

As part of a multistate settlement with insurance regulators and the United States Department of Labor (the "DOL"), The Paul Revere Life Insurance Company, Provident Life and Accident Insurance Company, Provident Life and Casualty Insurance Company, First Unum Life Insurance Company and Unum Life Insurance Company of America ("the Companies") have agreed to implement a Claim Reassessment Process, under which your long term disability claim as captioned above has been determined to be eligible.

For that reason, if you believe that you may be eligible for benefits for which you have not been paid, you are entitled to request that the Companies review their previous decision to deny your disability income claim or terminate benefits being paid on such claim. The settlement with insurance regulators and the DOL sets forth the procedures under which the Companies will conduct the Claim Reassessment Process. This Process will be monitored by the insurance regulators and, as to claimants who are or were covered under an employee benefit plan, by the DOL. A copy of the Regulatory Settlement Agreement is available on the website of UnumProvident Corporation.

If you wish to elect to participate in the Claim Reassessment Process, you must do one of the following within 60 days of the date of this letter:

- Fill out and return the enclosed sheet in the envelope provided; OR

- Visit www.unumprovident.com/elect with your claim number ready (provided at the top of this page); OR

- Place a toll-free call to 1-877-477-0964 and provide your name, current address and claim number. This phone number is provided for your convenience in making your election to participate, but no other information is available currently through this special temporary line.

PO Box 9728
Portland, ME 04104-5028
Phone: 1-877-477-0964

Your decision to participate in the Claim Reassessment Process will be acknowledged by the Companies.

The Companies will review claims of those electing to participate based on the original dates of when the claim was denied or closed with the oldest closure dates being reviewed first. The Companies will send you a second notice at a time that is closer to the period when your claim will be reviewed indicating the approximate time period of that review and requesting that you complete and return a Reassessment Information Form to provide information needed for the review of your claim.

Once you have completed and returned your Reassessment Information Form, the Companies will acknowledge its receipt and indicate any specific information that is still needed in order for the Companies to reassess your claim. Once our prior claim decision has been reassessed and any additional investigation is completed, the Companies will advise you in writing whether your claim will be re-opened and further benefits paid.

You are under no obligation to participate in the Claim Reassessment Process. Should you decide not to participate you will not lose any rights that you otherwise have. However, should you choose to participate, you will need to agree that if (and only if) the reassessment results in a reversal or other change in our prior decision denying or terminating benefits, you will not pursue legal action against the Companies to the extent (and only to the extent) such action would be based on any aspect of the prior denial or termination that is reversed or changed.

If you have already commenced legal action relating to your prior claim(s) decision, please provide a copy of this letter to your attorney as soon as possible so that he or she might advise you concerning the alternatives. If, after consulting with your attorney, you decide to participate in the reassessment, you will need to agree to take such action as is necessary to seek to stay such litigation pending the outcome of the reassessment process. If the court does not agree to a stay and a final verdict or judgement is entered prior to completion of the reassessment, the Company will have no further obligation to reassess your claim. If the court stays the litigation relating to your claim, you will need to agree that if (and only if) the reassessment results in a reversal or other change in the prior decision denying or terminating benefits, you will withdraw and dismiss with prejudice your litigated claims, including extracontractual claims, to the extent (and only to the extent) such claims are based on any aspect of the prior denial or termination that is reversed or changed. In other words, to the extent that following the reassessment there remains a complete or partial denial of benefits, a claimant's right to initiate or continue litigation regarding that portion of the prior denial that has not been reversed or changed shall not be waived. As to any portion of a prior denial that is reversed or changed and you have agreed to withdraw the action as described above, the Company will attempt

to reach agreement with you regarding the payment of any reasonable attorney's fee to which you may be entitled under law, and if we are unable to reach such an agreement, you will not be prejudiced from pursuing such fees in a court of law. After you have discussed this with your attorney, we encourage your attorney to contact the attorney representing the Company to discuss these matters so that you might make an informed decision regarding participation in the reassessment process and your other alternatives.

These agreements relating to commencing legal action and any pending litigation, which will be included with the Reassessment Information Form for you to sign, will not apply to the extent that our prior decision denying or terminating benefits is not reversed as a result of the Claim Reassessment Process and any applicable statute of limitations will be tolled during the pendency of the reassessment process.

Sincerely,

UnumProvident Claim Reassessment Unit
Unum Life Insurance Company of America

PO Box 9728
Portland, ME 04104-5028
Phone: 1-877-477-0964



## Request to Participate Form

Name: Betty W Bullard

Claim Number: 0100067587

Insuring Company: Unum Life Insurance Company of America

**By returning this letter, I am requesting to participate in the Claim Reassessment Process.**

Signature: _____

Last four (4) digits of Social Security: _____

Date: _____

In order to have your claim included in this reassessment, this form must be mailed to the address provided by June 21, 2005.

PO Box 9728
Portland, ME 04104-5028
Phone: 1-877-477-0964

# ATTACHMENT "B"

ATTACHMENT "B"

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 317

1  Manual?
2      A.    And what was given to me.
3      Q.    The documents that we
4  discussed earlier, the one that Ginny
5  Hancock gave you; correct?
6      A.    Yes.
7      Q.    Anything else in writing that
8  you base that statement on?
9      A.    No. Because I have not had
10 access to the actual --
11     Q.    Policies?
12     A.    -- policies.
13     Q.    You said, based on what you
14 read and what you heard from Ginny?
15     A.    Ginny. The executive
16 director.
17     Q.    Who is that?
18     A.    Bobby DuBois.
19     Q.    I'm sorry?
20     A.    Bobby DuBois.
21     Q.    Bobby DuBois. Okay. That's a
22 man; right?
23     A.    Yes.

Page 318

1      Q.    Did anyone else, aside from
2  Ginny Hancock and Bobby DuBois, tell you
3  anything about the coverage under either of
4  these policies?
5      A.    Yes. I believe there was
6  someone, I don't remember the name, but
7  there was someone -- We got the last new
8  manual -- Employee's Manual. They had
9  someone from the Annuity Board there that
10 spoke and went over some of the stuff.
11          We had to -- Everyone met, and
12 they, between Bobby DuBois and some other
13 people, they went over everything in the
14 manual with us at the time and we had to
15 sign a form stating that we had been over
16 this.
17     Q.    Everything in what manual?
18     A.    The Employee's Manual.
19     Q.    The Employee Manual?
20     A.    Uh-huh.
21     Q.    Which included some
22 information about the disability and life
23 policies?

Page 319

1      A.    Yes.
2      Q.    And that was -- That person
3  who came and talked to you was an employee
4  of the Annuity Board; correct?
5          MR. SINCLAIR: Objection to
6  the form.
7      A.    That's what I remember, yes.
8  He was one of them.
9      Q.    You've never heard any
10 representations about either of these two
11 policies from any employee or representative
12 of Unum Life or UnumProvident have you?
13         MR. SINCLAIR: Objection to
14 the form. To the extent you understand
15 those terms, please respond to the
16 gentleman's question.
17     A.    Not to my knowledge, no.
18     Q.    Instead, you've heard, based
19 on what you've told me, representations from
20 folks at the State Convention or the Annuity
21 Board; right?
22         MR. SINCLAIR: Same
23 instructions. Same objection. Respond to

Page 320

1  the gentleman's questions to the best you
2  can understand those terms.
3      A.    Because it's the Annuity Board
4  that is the one that communicated with the
5  Unum. Not us personally. They did it for
6  us on our behalf.
7      Q.    Okay. You don't deny, do you,
8  Ms. Bullard, that Unum Life requested your
9  medical records from your doctors and had
10 them reviewed by medical doctors and other
11 medical professionals, do you?
12         MR. SINCLAIR: Objection to
13 the form. Please respond to the gentleman's
14 question.
15     A.    Well, the first -- When I
16 first filed, several of the doctors told
17 me -- two or three of the doctors said they
18 had not received anything, other than the
19 forms that I had given them from Unum.
20         And as far as requesting
21 records, I had questioned the case worker I
22 had at the time, and asked if I needed to
23 get the records together and send it to him,

80 (Pages 317 to 320)

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 325

1  as the last.
2     A.   I spoke with him on the phone.
3     Q.   After you filed your claim?
4     A.   Yes.
5     Q.   But before you filed your
6  claim, you never spoke with a Unum Life or
7  UnumProvident employee about your coverage
8  under either the disability or life
9  policies, did you?
10         MR. SINCLAIR:  Same objection.
11    A.   Again, not directly because
12 that was not the way that it was set up.
13 The Annuity Board did that for me.
14    Q.   In paragraph sixty of your
15 complaint it says -- And I realize you
16 didn't draft this complaint. It says:  The
17 defendants continuously represented to the
18 plaintiff that the defendants have provided
19 the plaintiff with a life insurance policy
20 that would remain in effect by operation of
21 a life premium waiver in the event the
22 plaintiff would become disabled and would be
23 unable to perform the duties of her

Page 326

1  occupation while said policy was in force.
2  Did I read that correctly?
3         MR. SINCLAIR:  Yes.
4     A.   Yes.
5     Q.   In paragraph sixty-one, you
6  say:  Plaintiff reasonably relied upon
7  defendant's representations regarding their
8  commitment to honor the terms of the
9  policies, to adjust the terms in good
10 faith -- or adjust claims in good faith, and
11 to pay any benefit that might come to be due
12 to the plaintiff.  Did I read that
13 correctly?
14    A.   Yes.
15    Q.   And going up even further.  In
16 paragraph fifty-nine you say:  At all times
17 relevant hereto, defendants continuously
18 represented to the plaintiff that defendants
19 had provided plaintiff with a disability
20 policy that would pay monthly disability
21 benefits in the event the plaintiff were to
22 become disabled and was unable to perform
23 the duties of her occupation while said

Page 327

1  disability policy was in force.  Did I read
2  fifty-nine correctly?
3     A.   You read that correctly.  And
4  what, in my opinion, this refers to the
5  reason they're saying the defendant is
6  because it's the policy, and what the policy
7  stated.  And that the fact that I was paying
8  the premium, it was, you know, to me, that
9  was good faith that they would do whatever
10 they said they were going to do for me.  I
11 was paying my premium.
12    Q.   But to the extent that anyone
13 actually said these things to you orally,
14 that would have been either Ginny Hancock,
15 Bobby DuBois or someone from the Annuity
16 Board who came and spoke to y'all when you
17 got your last new manual?
18    A.   Those people have said --
19    Q.   Have those people said those
20 things there in fifty-nine, sixty and
21 sixty-one?
22    A.   Not exactly like it is there.
23    Q.   Okay.  Well, what all has

Page 328

1  Ginny Hancock said to you about your
2  coverage under these two policies?
3     A.   That I paid my premiums, you
4  know, that it could cover what I've
5  interpreted from what she gave me, the
6  handout that she gave.  And, you know, the
7  doctors said that they say -- My doctors
8  said that I'm disabled, that y'all would pay
9  the benefits because I have been paying my
10 premium.  We had done this in good faith.
11    Q.   Do you recall anything else
12 that Ginny Hancock has said to you about the
13 policies?
14    A.   I don't recall everything
15 that's been said.
16    Q.   Okay.  Other than what you
17 just told me, do you presently recall
18 anything specific that she told you?
19    A.   Not specific.
20    Q.   Do you recall anything
21 specific that Bobby DuBois told you about
22 your coverage under either of the policies?
23    A.   Again, just what I've been

82 (Pages 325 to 328)

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 329

1 saying.
2   Q. You don't recall anything
3 specific that Bobby DuBois told you?
4   A. That what the policy -- How it
5 gave the description of the policy and what
6 I could -- you know, what they thought I
7 could expect when I filed a claim, from what
8 they had -- the information they had. They
9 were basing it on what they had.
10   Q. Okay. What did he tell you
11 you could expect?
12   A. Again, what I've been saying
13 the whole time, that, you know, if my doctor
14 said I was disabled, that they would pay the
15 benefits.
16   Q. So, you contend both Ginny and
17 Bobby said that?
18   A. Yes.
19   Q. Do you contend that that
20 person from the Annuity Board who came and
21 spoke to y'all when you got your last new
22 manual said something like that, too?
23   A. That's what I remember, yes.

Page 330

1   Q. Anything more specific than
2 that?
3   A. I don't remember.
4   Q. When did Ginny Hancock make
5 these representations to you?
6   A. When I started talking to her
7 about filing for disability. And then in
8 the meetings we had with the -- Well,
9 actually, I don't guess Ginny was the one
10 that -- it was Bobby that talked in the
11 meeting.
12   Q. Which meeting?
13   A. About the manual.
14   Q. Bobby DuBois is the Annuity
15 Board person who came and spoke to y'all?
16   A. No. He is the assistant
17 executive director at the Convention. But
18 he and Ginny, together, work on the
19 insurance, among other things.
20   Q. Is it your testimony that
21 Ginny Hancock never made these
22 representations to you until you were ready
23 to file a claim?

Page 331

1   MR. SINCLAIR: Objection to
2 the form. Go ahead.
3   A. No, not actually. When we --
4 When I signed my beneficiary forms, when I
5 signed that I had got my manual, we
6 discussed it at those times. We had
7 discussed it prior to that.
8   Q. What I would like to know is
9 when you first recall Ginny Hancock making
10 these representations to you?
11   A. Again, like I said, when I
12 signed, she's the one that has the paperwork
13 when we had to sign for our -- who our
14 beneficiary would be. And then when we
15 signed for the manuals, she was the one that
16 had the forms that we signed for that.
17   Q. And she made those
18 representations at the time you signed for
19 your manuals and assigned your
20 beneficiaries?
21   A. I remember us talking about
22 what we could expect out of these policies.
23   Q. You can't tell me what year or

Page 332

1 years that would have been?
2   A. No.
3   Q. Was it back in -- Was it more
4 than five years ago when she first told you
5 these things?
6   A. It wasn't that long. But I
7 really -- I don't know the exact time.
8   Q. Was it back at the time that
9 you first had coverage under either of these
10 policies, or was it after that?
11   A. Well, I believe when I signed
12 the papers about the beneficiaries, it would
13 have been, you know --
14   Q. At that time?
15   A. That was one of the times,
16 yes.
17   Q. Okay. What about Bobby
18 DuBois? When did he tell you anything about
19 these policies?
20   A. Again, in the meeting about
21 the manuals. When they went through
22 everything that was in the manual.
23   Q. When was that meeting?

83 (Pages 329 to 332)

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 333

1    A.    I don't know for sure. I
2 can't remember the year or the date exactly.
3    Q.    Would it have been five years
4 ago?
5    A.    I don't think it's been that
6 long. I don't know exactly.
7    Q.    Do you have any better idea of
8 how long ago it was?
9    A.    I really don't know exactly.
10    Q.    It would have been about the
11 time, though, that you signed for a manual?
12         MR. SINCLAIR: Objection to
13 the form. I don't think that's what she
14 said.
15    Q.    Well, and I'm trying to
16 understand. You said with regard to Ginny
17 Hancock, you think she first made the
18 representation about the time you signed for
19 a manual and assigned beneficiaries under
20 the life policy.
21         And I was thinking I could
22 probably figure out when that was through
23 documentation. In other words, I could

Page 334

1 figure out when you signed for a manual or
2 when you assigned your beneficiaries.
3         But with regard to Bobby
4 DuBois, did he make the representations at
5 or about the same time that Ginny Hancock
6 made them?
7    A.    Well, he would have been the
8 one that went over the manual with us.
9 Ginny is the one that gave us the form to
10 sign.
11    Q.    So, I could tell -- He went
12 over the manual with you and then you signed
13 for a form -- you signed for it via a form
14 that Ginny gave you. So, he would have made
15 the representations at or about the same
16 time Ginny Hancock made them; right?
17    A.    Probably.
18    Q.    Okay. How about -- How about
19 this individual from the Annuity Board who
20 spoke to you when you got the last new
21 manual? When did you get the last new
22 manual?
23    A.    That's what I'm saying, I

Page 335

1 don't remember the date on that. I really
2 don't know.
3    Q.    Is that the same manual that
4 you're talking about with regard to Ginny
5 Hancock and Bobby DuBois?
6    A.    Yes.
7    Q.    So, it was all -- These
8 representations were all made at or about
9 the same time?
10    A.    The first -- I mean -- When I
11 first started working there I also had -- it
12 wouldn't have been Ginny at the time. I
13 think the lady has retired. The director
14 that was there has retired, also. But, you
15 know, they went over and had a different
16 manual at that time.
17    Q.    You don't remember whether it
18 was even Unum Life then?
19    A.    Correct.
20    Q.    You don't remember --
21    A.    But then -- I'm sorry.
22    Q.    You don't remember any
23 specific representations that were made to

Page 336

1 you back then in '93; right?
2    A.    It was basically the same
3 description. I was told kind of the same
4 things.
5    Q.    But you don't contend that
6 these representations that you've just told
7 me about, and these ones referenced in
8 fifty-nine, sixty, and sixty-one, were made
9 back in '93; right? You contend that those
10 have been made more recently; correct?
11         MR. SINCLAIR: Stop. Same
12 objection. Interpreting my work product.
13 To the extent you know what I was talking
14 about in there, you feel free to answer.
15    A.    Again, that was probably
16 another company, but it was the same
17 overview as what I got for this company
18 because it was the same type thing.
19    Q.    But with respect to the
20 overview that you remember getting for this
21 company, this company being Unum Life, and
22 specifically the representations that you've
23 told me about by Ginny Hancock, Bobby DuBois

84 (Pages 333 to 336)