# HAND ARENDALL   L.L.C.  •  LAWYERS

Henry T. Morrissette
Direct Dial (251) 694-6364
Direct Fax (251) 544-1625
hmorrissette@handarendall.com

3000 AMSOUTH BANK BUILDING  •  107 SAINT FRANCIS STREET  •  MOBILE, ALABAMA 36602  •  (251) 432-5511
Post Office Box 123  •  Mobile, Alabama 36601  •  Facsimile: (251) 694-6375



DEFENDANT'S EXHIBIT A

December 7, 2006

**VIA FACSIMILE & U.S. MAIL**
Thomas O. Sinclair, Esquire
Campbell, Waller & Poer, LLC
2100-A SouthBridge Parkway, Suite 450
Birmingham, Alabama 35209

    Re:    Case No. : 2005-1217 (U.S. District Court, Middle District of AL, Northern Div)
              *Betty Bullard v. UnumProvident Corporation, et al.,*

Dear Tom:

I want to provide you with the following response concerning your request that we consider your draft second motion to compel to see if we can resolve any of our disputes. I will respond to the specific requests referenced in your motion, as I think that will be the most clear.

    1.    **Interrogatories.**

As to Interrogatory No. 4, we maintain our objections to providing additional information requested in that Interrogatory. The rate of pay of these individuals as well as the bonuses, awards, or other job performance for recognition related to these employees is completely irrelevant to your client's claim. In an effort to address this request without troubling the court, we previously provided you with a description of the various awards and incentive programs available to employees along with the job descriptions for each of the employees involved in your client's claim. You have made no showing that the above additional information is relevant in this case or that it is reasonably calculated to lead to the discovery of admissible evidence. Certainly, the privacy concerns of the individual company employees outweigh any potential relevance.

With regard to Interrogatory No. 6, the identity of any consultant or firm that may have consulted with UnumProvident concerning its claims management practices is overly broad and not reasonably limited in any way. Even limiting the request to consultants utilized with regard to practices in effect at the time of plaintiff's claim, it is not reasonably calculated to lead to the discovery of admissible evidence. The attached Exhibit B is apparently a report from 1994 prepared by an outside law firm relating to Provident Life & Accident's individual disability line of business. Given that the report was prepared more than ten years prior to the submission of the group disability claim in this case and that it related to another line of business, it certainly does not indicate that the identity of any individuals or entities that consulted with UnumProvident concerning UnumProvident's claims handling practices at the time of plaintiff's claim is

December 7, 2006
Page 2

reasonably calculated to lead to the discovery of admissible evidence in this case. Plaintiff has failed to make a showing to the contrary. We have produced the Benefit Center Claims Manual and the alterations in that manual that would have been in effect during the time of the handling of plaintiff's claim. Plaintiff has certainly made an insufficient showing that the requested information concerning consultants is discoverable in this case.

With regard to Interrogatory No. 19, defendants have not withheld additional documents on the basis of privilege, other than those separately identified in its discovery responses and those documents created in the defense of plaintiff's lawsuit after the filing of the suit. To the extent that any additional such documents are identified in the future, defendants will supplement with a privilege log.

2.   **Requests for Production.**

With regard to Request No. 21, defendants have produced the Benefit Center Claims Manual for the time period during which plaintiff's claim was being addressed, together with documentation concerning changes to that manual occurring during that time period. The request is overly broad in that it basically seeks every document generated by the claims department and that it seeks all documents "that refer or relate in any way to defendants' practices or policies regarding handling, processing, and investigating claims for disability benefits." Moreover, it is not reasonably limited to the facts relevant to this case or to the time period involved in this case. In an effort to resolve this matter without troubling the court, defendants will agree to produce training materials that were utilized with regard to group long term disability claims during the time period of plaintiff's claim, although these documents do not necessarily represent defendants' practices or policies regarding the handling, processing, and investigating claims for disability benefits. Also, the employees who actually worked on plaintiff's claim may not necessarily have received these materials.

With regard to Request No. 22, while defendants stand by its objection to Request No. 22, in an effort to resolve this issue without troubling the court, defendants will agree to produce training materials that were utilized with regard to group long term disability claims during the time period of plaintiff's claim. These materials were not necessarily received by the employees who worked on plaintiff's claim.

With regard to Request No. 23, see the above discussion relating to Request No. 21. In addition, the document that you reference relating to fibromyalgia was never adopted or implemented as a UnumProvident guideline for claims and medical personnel on how to assess claims for disability based upon a diagnosis of fibromyalgia. Defendants have not adopted or implemented "internal guidelines" on how to administer certain types of disability claims based on a specific medical condition involved, other than any such guidelines that may be contained in the Benefit Center Claims Manual. Accordingly, with regard to plaintiff's medical conditions, there are no additional documents that would meet the description in plaintiff's motion. Out of an abundance of caution, defendants will produce a Powerpoint presentation concerning fibromyalgia, although there is no indication that this presentation was reviewed or referenced in

December 7, 2006
Page 3

the handling of plaintiff's claim, and this presentation does not constitute an internal guideline utilized by defendants in the handling of claims.

With regard to Request No. 24, the LeBoeuf Report is too remote in time and has absolutely no connection to this case, particularly since it purports to address Provident Life & Accident Company's individual disability line of business, and this case relates to Unum Life's group disability business. Moreover, this report is not discoverable for the reasons set forth in defendants' motion to strike and reply to plaintiff's opposition to the motion to strike.

Regarding Request No. 25, the Perot Systems report is not discoverable in this case for the same reasons set forth above relating to the LeBoeuf Report, except for the fact that it is not an attorney-client privileged communication. Plaintiff has provided no basis that a 1994 report relating to Provident Life & Accident's individual disability business would be in any way relevant to plaintiff's 2004 Unum Life group disability claim.

With regard to Request No. 26, we are not familiar with the document that you are describing as "closure reports" in your request. If you will provide us with some additional information on the item that you are seeking, we will consider a further response.

With regard to Request No. 31, defendants stand by their responses and objections to Request No. 31.

Request No. 34 seeks the deposition testimony of Ralph Mahoney taken in a January 28, 2002 case in California and another deposition taken in a March 27, 2003 case in Arizona. Both of these cases were individual disability cases that involved claims occurring before plaintiff's claim was submitted in this case, and would have no bearing on the handling of plaintiff's claim. Plaintiff has established no basis for a contrary finding.

With regard to Request No. 35, we stand by our objections as to Request No. 35. I am not aware of any instance where Ms. Roth has provided affidavits making representations contrary to the representations set out in depositions. If you contend that is the case, please provide us with citations to the information to which you are referring.

Request No. 36 again seeks documentation regarding the LeBoeuf Report, which was prepared by an outside firm in 1994 relating to Provident's individual disability business. Plaintiff has provided no evidentiary link between the LeBoeuf Report and this case or the claims handling in this case. For the above reasons, the LeBoeuf Report and the documents requested in this request relating to that report are completely irrelevant to plaintiff's claim and are not reasonably calculated to lead to the discovery of admissible evidence. We will not be providing a further response on this request.

With regard to Request No. 39, defendants are not aware of any additional documents that pertain to the handling of plaintiff's claim for benefits that have not been produced. We object to the extent that it seeks files "pertaining to any other policies purchased by the plaintiff"

December 7, 2006
Page 4

on the basis that this is a group policy, and defendants are not aware of any policies purchased by plaintiff. Reserving that objection, defendants will produce any previous policies provided coverage to plaintiff that can be located.

Request No. 40 seeks any additional medical reports pertaining to plaintiff or used in referencing the restrictions and limitations pertaining to plaintiff's disability that was considered in evaluating plaintiff's application for benefits. UnumProvident is not aware of any additional documents that are responsive to this request. There is no basis in the "reasons for deficiency" for concluding that there were any such reports considered in the process of evaluating plaintiff's claim for benefits. There will be no further production on this point.

With regard to Request No. 47, the only policy relevant to plaintiff's claim is the policy that was in effect for plaintiff's employer, which provided the disability coverage at issue to plaintiff. In light of the fraud claims alleged in the complaint and plaintiff's deposition testimony in this case, we cannot see how prior policies referenced in Request No. 47 would be relevant to any of plaintiff's claims in this case. If you can provide further clarifications as to how these documents would be reasonably calculated to lead to the discovery of admissible evidence on the fraud claims alleged in the complaint, we will be glad to address that information with our client. Plaintiff's fraud claims in the complaint do not address any fraud claims relating to a difference between the policies that may have covered plaintiff previously and the policy that covered plaintiff at the time of her claim. This is particularly true in light of the fact that plaintiff has not purchased any policies from defendants, rather she was covered under group disability policies selected and obtained by her employer. Not withstanding the above, we will, in an effort to avoid troubling the court with this issue, provide copies of any previous group disability policies or life insurance policies covering plaintiff that we can locate.

With regard to Request No. 49, defendants have produced all documents from the "Magic" database pertaining to the policies that are the subject of plaintiff's claim. The only additional documents that appear on "Magic" relating to those policies concern group premium rate information, which has not been produced and is not relevant to this case. There is also information concerning policies under which your client was not covered. With regard to your contention that "Magic" provides "common everyday terms to interpret policy language" outside of the language of the policies themselves, we are not aware of any such information. If you can provide us with more specific information for your belief that such information exists, we will be glad to consider such information.

With regard to Request Nos. 62, 63, and 64, defendants stand on their responses and objections for the reasons set forth in those responses and objections, and for those reasons set forth with regard to Interrogatory No. 4 above.

With regard to Request No. 68, defendants are not aware of any additional documents that would be responsive to Request No. 68.

December 7, 2006
Page 5

With regard to Request No. 70, defendants are not aware of any additional responsive documents that have not been produced.

With regard to Request No. 75, defendants are still reviewing this request and may make further response pending additional inquiry.

With regard to Request No. 79, defendants are not aware of any additional documents that would be responsive to Request No. 79 that have not been previously identified, other than those documents generated after the filing of this lawsuit.

I will be happy to discuss with you any aspect of the above. Obviously, we would like to avoid unnecessarily troubling the court with any discovery dispute.

Very truly yours,

Henry T. Morrissette
For the Firm

HTM/joc