# ATTACHMENT

## "Q"

ATTACHMENT "Q"

**ANNUITY BOARD OF THE SOUTHERN BAPTIST CONVENTION AND UNUM LIFE INSURANCE COMPANY OF AMERICA DISABILITY PROGRAMS SIDE AGREEMENT**

THIS AGREEMENT is entered into by and between UNUM Life Insurance Company of America ("UNUM") and Annuity Board of the Southern Baptist Convention (the "Annuity Board") effective on the date this Agreement becomes executed by both parties concerning disability insurance to be effective as of January 1, 2002. In consideration of the mutual promises contained herein and other good consideration, the parties agree as follows:

1.      Affected Contracts and Policies

This Agreement supplements and, to the extent inconsistent therewith, supercedes the provisions of any group insurance agreement, application, coverage certificate, enrollment form, premium stabilization reserve agreement or other similar documents reflecting the agreement of the parties with regard to insurance coverage provided by UNUM relating to disability insurance plans sponsored by the Annuity Board (hereinafter collectively referred to as the "Insurance Contracts"), notwithstanding any integration clause or similar provision contained therein, including without limitation the following Insurance Contracts:

a.   Group Insurance Policy No. 111604, for the Annuity Board of the Southern Baptist Convention Economy Disability Programs;

b.   Group Insurance Policy No. 111605, for the Annuity Board of the Southern Baptist Convention Standard Disability Programs; and

c.   Supplemental Income Protection Plan and Offer Request dated September 26, 2001 ("Supplemental Plan Agreement").

Items 2, 3, 5, 6, 7 and 9 of this Agreement shall not apply to the Supplemental Plan Agreement nor to any individual contract issued in connection therewith.

2.      Value-Added Services

The services described in Attachment A will be provided to individuals insured under the Insurance Contracts issued to the Annuity Board through UNUM's arrangements with third-parties. Only those individuals insured under a Insurance Contract are eligible for such services while the Insurance Contract under which they are insured is in effect.

In the event that the relationship between UNUM and the third-party providers of any of such services terminates while the Insurance Contracts are in effect, UNUM will reduce the premium

3rws07!.DOC

1

CONFIDENTIAL
ULCDI - 0001

rates charged for the coverage provided under the Insurance Contracts by the amount UNUM includes in such rates for the services.

3.     Management Reports

UNUM shall provide the reports listed in Attachment B (with samples attached thereto) as and when described in Attachment B in a format, electronic or otherwise, mutually agreed upon by the Annuity Board and UNUM.

4.     Covered Individuals Who Reside Outside of United States of America

UNUM agrees to provide coverage and pay benefits (as described in the Foreign National letter dated August 30, 2001 provided to the Annuity Board) with respect to individuals who become disabled while residing outside of the United States of America, and who would be covered under an Insurance Contract except for the location of their residence.

5.     Prior Plan Enrollments

UNUM agrees to accept as valid the completed enrollment forms of insured individuals which were completed with respect to coverage or participation under a long term disability program sponsored by the Annuity Board prior to January 1, 2002. No other application or enrollment form shall be required by UNUM from such persons, except to the extent required under the terms and conditions of the applicable Insurance Contracts for changes in coverage effective on or after January 1, 2002.

6.     No Loss / No Gain

Insured individuals who are covered under a long term disability program sponsored by the Annuity Board on December 31, 2001, and who become covered under an Insurance Contract effective on January 1, 2002, shall have no gain or loss in long term disability benefits solely on account of the change to UNUM for provision of such long term disability coverage.

7.     Performance Standards

In connection with the Insurance Contracts issued to the Annuity Board, UNUM shall be subject to the Performance Standards set forth in Attachment C. Certain penalties for failure of UNUM to meet the Performance Standards may be payable to the Annuity Board pursuant to Attachment C.

8.     Supplemental Plan

The Supplemental Plan Agreement shall be modified as follows:

2

3rws07!.DOC

CONFIDENTIAL
ULCDI - 0002

a.  Eligible individuals are those who work full-time, who earn $100,000 or more, and who participate in the standard LTD plan of the Annuity Board;

b.  The Supplemental Income Protection Plan may be employer-paid, employee-paid, or a combination of both;

c.  The 100% participation requirement shall be satisfied by having all eligible participants (defined above) participate in the Supplemental Income Protection Plan, excluding (i) those who are offered participation and elect not to receive the coverage by completing a benefit waiver form approved by UNUM, and (ii) those who do not satisfy the health, financial or other conditions imposed by the Supplemental Plan Agreement.

9.    Audits

Each party to this Agreement shall maintain adequate documents, books, and records pertaining to the Insurance Contracts and this Agreement. Each party (or that party's representative) shall have the right to inspect or audit such documents, books, and records of the other party at the principal place of business of the other party, during normal business hours and upon prior reasonable written notice, for the purpose of verifying performance hereunder and/or the accuracy of determinations, accountings, and representations made relative to the Insurance Contracts and/or this Agreement. The cost of any such audit shall be borne by the party requesting and conducting the audit, and such party shall reimburse the other for its reasonable out-of-pocket expenses incurred in connection with complying with the audit request. Prior to any audit, the parties agree to execute, and to cause any of its representatives to execute an agreement to protect the confidentiality of any books or records to be audited.

10.    Long Term Disability Premium and Premium Stabilization Reserve Agreement

The parties have agreed to establish a premium stabilization reserve pursuant to a premium stabilization reserve agreement to hold premiums paid by Annuity Board in excess of the amount due under the Insurance Contracts. Annuity Board shall each month remit premium based on the rates set forth in Attachment D. From that premium, UNUM will first pay the premium due for the individual contracts established under the Supplemental Plan Agreement, and then pay the remaining amount (not to exceed the STD coverage premiums plus 92% of the LTD coverage premium paid pursuant to Attachment D) for the premium due under the Insurance Contracts identified in items a. and b. of Paragraph 1 (the "Group Insurance Contracts"). If such premiums exceed the amount due, then the excess shall be placed in the premium stabilization reserve. UNUM shall provide quarterly reports to Annuity Board concerning the contributions, disbursements and earnings of the premium stabilization reserve. The total premium due for long term disability coverage provided under the Insurance Contracts shall not exceed the premium as calculated under the rates listed in Attachment D for the period of the rate guarantee

3rws07!.DOC

CONFIDENTIAL
ULCDI - 0003

stated in the Group Insurance Contracts. However, UNUM may change such rates under the terms and conditions of the Group Insurance Contracts applicable to the rate guarantee period. In addition, Annuity Board shall be deemed to have contributed an amount equal to the STD coverage premium plus 92 % of the LTD coverage premium with respect to the Group Insurance Contracts in connection with the determination of any rate adjustment allowed under such contracts, even if such amount has not been allocated by UNUM to such contracts due to allocation of such premium to individual contracts established under the Supplemental Plan Agreement.

11.    Benefit Waivers

It is the intention of the parties that the restrictions on coverage that apply in addition to any pre-existing condition exclusion for certain individuals covered for long term disability under the Annuity Board's Personal Security Program shall continue to apply under the Group Insurance Contracts until December 31, 2002, at which time all such restrictions of coverage shall be removed. Any such provision in the Group Insurance Contracts, however, is subject to filing and approval of the Texas Department of Insurance prior to inclusion in or administration of such provision in any Group Insurance Contract.

12.    Employment Tax Withholding and Payment Obligations

UNUM shall have the responsibilities of the "employer" for federal FICA tax withholding, payment, and reporting with respect to any benefit payment under any of the Insurance Contracts for which FICA taxes must be withheld, paid and/or reported. Such withholding and reporting shall be performed by UNUM in accordance with federal law, and the payer or "employer" identification number used for such purposes shall be that of UNUM or an affiliate of UNUM, as appropriate under the circumstances.

UNUM will provide FUTA/SUTA reports quarterly to participating employers of the Annuity Board who have potential FUTA/SUTA obligations, provided that the Annuity Board transmits electronically to UNUM employer information necessary to complete such reports.

13.    Assignment

Neither any Insurance Contract nor this Agreement may be assigned by either party without the other party's prior written consent.

14.    Solicitation

UNUM agrees not to solicit (or enable or assist any other entity to solicit) any individuals who become covered in any plan sponsored by the Annuity Board for any product or service where such solicitation arises directly from the fact that the individuals are covered under an Insurance

4

3rws07!.DOC

CONFIDENTIAL
ULCDI - 0004

Contract issued to the Annuity Board. Nothing shall prevent UNUM from marketing or soliciting to the general public or another entity or organization of which an individual covered under an Insurance Contract is an employee or member.

15. Amendment and Termination

This Agreement may be terminated by mutual agreement of the parties while any Insurance Contract remains in effect. Any amendment of this Agreement shall only be effective to the extent reflected in a document signed by an officer of each party.

16. Use of Annuity Board Name

Prior to publication or use in any promotional material, advertisement, circular or any other written material intended for promotional use or publication by UNUM of the Annuity Board name or that of its plans or services or of any description of the Annuity Board or its plans or services, UNUM shall obtain written permission from an officer of the Annuity Board.

17. Successors

This Agreement and the rights and obligations of the parties hereto shall inure to the benefit of and be binding upon the parties hereto and their respective administrators, representatives, successors and assigns.

18. Governing Law

The construction and interpretation of this Agreement shall be governed by and construed in accordance with the laws of the State of Texas under which the Insurance Contracts are governed.

19. Attachments

The Attachments referenced in this Agreement are fully incorporated into and made a part of this Agreement.

[Remainder Intentionally Left Blank]

CONFIDENTIAL
ULCDI - 0005

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized officers on the dates indicated below to be effective as set forth above.

UNUM LIFE INSURANCE COMPANY OF AMERICA

Signed: _____

Name: _Thomas R. Watjen_

Title: _Executive Vice President_
    (Must be authorized **OFFICER**)
Date:_____11/10/20_____

ANNUITY BOARD OF THE SOUTHERN BAPTIST CONVENTION

Signed: _____

Name: John R. Jones

Title: Executive Vice President and Chief Operating Officer

Date: _November 12, 2001_

3rws07!.DOC

6

CONFIDENTIAL
ULCDI - 0006

## ATTACHMENT A

## OTHER SERVICES: LIFEPHASES PROGRAM

1. **Survivor Support for Disabled Individuals.** A detailed description of the Survivor Support® services provided by The Ayco Company, L.P., is set forth in the attached brochure labeled Attachment A-1 and entitled "WE UNDERSTAND WHAT YOU'RE UP AGAINST."

2. **Assist America.** A detailed description of the emergency travel services provided by Assist America, Inc. is set forth in Attachment A-2.

3. **Universal Access Card.** A single, streamlined source of information about support services available to insureds. This card includes toll free numbers for LifeBalance (English, Spanish and TTY/TTD), Transition Insurance Options and Assist America.

4. **LifeBalance Program.** A detailed description of the LifeBalance program services provided by Ceridian Performance Partners is set forth in Attachment A-3. The availability of services may vary by location. Upon Annuity Board's request, UNUM will advise Annuity Board of any locations in which a significant portion of the services are not available.

CONFIDENTIAL
ULCDI - 0007

**ATTACHMENT A-2**

**EMERGENCY TRAVEL SERVICES**

As of January 1, 2002, Assist America, Inc.'s ("AAI") InsurAssist program provides services to individuals insured under the Insurance Contracts as follows:

1. AA   I provides InsurAssist services to insured individuals is traveling one hundred (100) or more miles from his/her legal residence, or traveling in a country other than the insured individual's country of residence.

2. I  nsurAssist services consist of the following services provided in the following manner:

   a. 24 hour multilingual service via Assist America Alarm Center
   b. International Access to U.S. Style medicine Medical Consultation and evaluation
   c. Hospital admission guarantee
   d. Validation of participant's medical insurance, as applicable, or advance funds to a medical facility, to facilitate participant's admittance to a foreign medical facility as necessary
   e. Any emergency hospital admittance deposit must be repaid to Assist America by the insured individual within 45 days (without interest)
   f. Emergency medical evacuation (under medical supervision) by whatever means necessary to the nearest facility capable of providing required care
   g. Critical care monitoring
   h. Dispatch of prescription medicine not available locally to the insured individual upon authorization of the participant's then attending physician
   i. Receiving and transmitting emergency messages to and from home of the insured individual
   j. Assistance in obtaining legal clearances for the return of mortal remains
   k. Economy round trip common carrier transportation for friend or relative when the insured individual is traveling alone and is expected to be hospitalized for more than 7 days
   l. If minor children are left unattended as the result of a participant's accident or illness AAI will transport them to a person designated by the insured individual
   m. Attendants will be provided if required
   n. Lost luggage assistance
   o. Return of vehicle service
   p. Legal and interpreter referrals
   q. Repatriation to the insured individual's place of residence when medically authorized

3. Repa   triation is not available without medical authorizations, for mild lesions, sprains, simple fractures, or mild sickness that can be treated by local doctors and do not prevent the insured

8

CONFIDENTIAL
ULCDI - 0008

individual from continuing his trip or returning home, infections under treatment and not healed, or advanced pregnancies of over 6 months.

4. UNUM   will provide service cards with telephone numbers necessary to access AAI Alarm Centers.

5. AAI will exclude these services for trips taken specifically for the purpose of securing medical treatment, participation in acts of war or insurrection, commission of unlawful acts, suicide or attempted suicide, incidents involving the use of drugs unless prescribed by a physician, mental or nervous disorders unless hospitalized, or transfer of patient from one hospital to another of similar capabilities providing a similar level of care.

6. AAI will not be held liable for delays due to strikes, conditions beyond its control, rendering of service where prohibited by law, or malpractice performed by a local physician or attorney who is not an AAI employee.

7. Charges for these services are included in premiums paid under the Insurance Contracts by the Annuity Board to UNUM.  However, insured individuals are responsible to reimburse AAI for any services rendered by AAI, but not covered as part of InsurAssist.

8. The above services that comprise InsurAssist as of January 1, 2002 may be changed or modified by UNUM.  UNUM will notify the Annuity Board in writing prior to any such change or modification.

3rws07!.DOC

CONFIDENTIAL
ULCDI - 0009

## ATTACHMENT A-3

### LIFEBALANCE PROGRAM

As of January 1, 2002, Ceridian's LifeBalance program provides services to individuals insured under the Insurance Contracts as follows:

1.Standard   Components

Ceridian Performance Partners will provide services to all individuals insured under the Insurance Contracts accessed via a toll-free telephone number. Ceridian Performance Partners will respond to requests for assistance within time frames appropriate for the specific request. Services include:

- Immediate access to master's level consultants for information, assessment, action planning, crisis intervention assistance, and referrals, 24-hours a day, 365 days a year.

  - Access to qualified consultants who have received advanced training and specialize in a wide variety of issues (including adoption, financial planning and tax, legal, work, addictions, education and schooling, nanny, disability).

  - Access to Hispanic Service Center

  - Unlimited confirmed, matched referrals for any life needs, ranging from day care centers, schools, senior centers, therapists, health clubs, pet sitters, wedding planners to mortgage companies.

  - Up to three (3) face to face sessions with a Ceridian Performance Partners' network affiliate provider for assessment and/or short-term problem resolution per problem/issue as appropriate to their individual needs.

- Financial Consultation – Telephonic access to Ceridian's staff financial consultants to receive assistance in credit management, budget analysis and assistance regarding options for resolution of financial difficulties.  Clients have access to telephone consultation with Ceridian's affiliate financial planners. Ceridian does not provide investment advice or loan funds.

- Legal Consultation – Telephonic access to Ceridian's staff attorneys and legal consultants for assistance with personal legal concerns. Referral to local attorneys for a face-to-face discussion is also available (caller is responsible for local attorney's fees and costs). Ceridian

10

3rws07!.DOC

CONFIDENTIAL
ULCDI - 0010

does not provide legal advice or representation. This service will not be available to individuals outside the United States.

- Will Services – Telephonic consultation with attorney in caller's state of residence regarding wills and simple testamentary trusts. Drafting a simple will, including simple testamentary trust, is available. This service will not be available for individuals outside the United States.

- Power of Attorney Services - Telephonic consultation with attorney in caller's state of residence regarding powers of attorney. Drafting of simple power of attorney (for non-healthcare issues) is available. This service will not be available for individuals outside the United States.

- Ceridian consultants can transfer employees directly to registered nurses for general health information and for appropriate medical care assessments/referrals.

  - Value adds that support Ceridian's consultation services: users have access to In-Home Safety Checks, Custom Public School Reports, Custom Private School Reports, Custom College Reports, Petersen's College Quest CD-ROM, Mortgage Reports, and Completed Financial Management Personalized Plan.

  - Tips on Tape: Users have access to over 500 work-life and health topics.

  - Tip Sheets: Users have access to over 500 information sheets on a variety of topics.

- On-Line (Internet) Services: Users have immediate access to a wide variety of information and resources organized by topic. Resources include:

  - child care and elder care locators with mapping

  - over 2,000 pages on online content

  - interactive tools

  - access to consultants by e-mail and the ability to electronically schedule a telephone consultation

  - hot links to Web sites with related information

  - the ability to register for e-mail newsletters on a range of specific life, work and health issues (such as parenting young children, caring for an older adult or personal finance)

  - audio tips online

11

3rws07!.DOC

CONFIDENTIAL
ULCDI - 0011

- feedback/survey to monitor experience

- access to Web master by e-mail

- Publications: to support consultations, users have access to a wide range of publications. Publications available through LifeWorks OneSource include:

  - over 500 articles and sheets – more than 2,000 pages of information

  - audiotapes

  - books and booklets

  - CD-ROMs

  - educational kits (which include additional audiotapes, videotapes, guidebooks and interactive learning tools)

  - more than 100 reading and resource lists: annotated lists of selected books, web sites, national organizations available in print and on-line.

- LifeBalance services cover a wide variety of issues:

  a) *Emotional Well-Being* (including relationship issues, stress, change, grief and loss, family and marital issues, adjustment disorder, depression, anxiety, domestic violence).

  b) *Addiction & Recovery* (including drug and alcohol abuse, company mandated referrals, drug-free workplace issues, eating disorders, gambling addiction).

  c) *Work* (including co-worker relationships, discrimination and harassment, burnout, job search skills, job insecurity).

  d) *Management/Employee Relations* (including employee relations, interpersonal conflicts, performance problems, sexual harassment, discrimination, workplace change).

  e) *Financial* (including credit management, budget analysis, home buying, mortgage/refinancing evaluation, investing, retirement planning, 401(k) plan questions, insurance (life/disability/long-term care), basic estate planning and questions about tax planning and preparation.)

12

3rws07!.DOC

CONFIDENTIAL
ULCDI - 0012

f) *Legal* (including divorce, family matters, landlord/tenant and real estate, consumer credit concerns, criminal matters, debtor/creditor).

g) *Parenting and Child Care* (including parenting skills, positive discipline, child development, safety, talking with your teenager, help in finding child care including referrals to programs with confirmed openings and in-home care, and coaching through the process of adoption).

h) *Education* (including working with teachers, school problems/study habits, coaching through the college selection and application process, help in understanding college funding options, as well as referrals to public and private schools, college/vocational schools, special needs programs).

i) *Resources for Older Adults* (including but not limited to caring for elders, referrals to in-home services such as home delivered meals, chore and hospice services, options for living arrangements such as nursing homes, assisted living, shared housing, as well as transition to retirement, the aging process, caregiver support, federally funded programs such as Medicare, Medicaid).

j) *Everyday Issues* (including home and car buying, transportation services, pet care resources, home maintenance and repair, house/apartment sitting resources, business travel, volunteer opportunities, consumer information).

2. The a bove services that comprise the LifeBalance program as of January 1, 2002 may be changed or modified by UNUM. UNUM will notify the Annuity Board in writing prior to any such change or modification.

3rws07!.DOC

13

CONFIDENTIAL
ULCDI - 0013

## ATTACHMENT B

### REPORTS PROVIDED BY UNUM

The following reports in substantially the same form as the sample reports attached hereto, or reports with comparable information, will be provided by UNUM or one of its affiliates for periods indicated below within 30 days of the close of the applicable period:

**Monthly Reports:**

- Integrated Claim Status Report – All Disability Claims
- STD Claim Report
- LTD Claim Report

**Quarterly Reports**

- Premium Stabilization Reserve Account

**Annual Reports:**

- Closed LTD Average Months Duration by Diagnostic Category
- Closed LTD Average Months Duration by Gender
- Closed LTD Average Months Duration by Tenure
- Closed LTD Average Months Duration by Age
- Closed STD Average Days Duration by Gender
- Closed STD Average Days Duration by Tenure
- Closed STD Average Days Duration by Age
- STD Incidence: Actual vs. Expected Total Claims
- STD Incidence: Actual vs. Expected Total Claims – Annualized
- STD Repeater Report
- Top Ranking STD Diagnoses by Incidence and Cost
- LTD Claim Submission Lag Report by Division
- STD Cost Deviation Report

**Per Claim [Annually]:**

- LTD Payment Information
- Integrated Claim Information
- LTD Claim Information

14

3rws07!.DOC

CONFIDENTIAL
ULCDI - 0014

ATTACHMENT C

PERFORMANCE STANDARDS

1.  **Claims Processing – Short-term Disability.** UNUM shall administer short-term disability claims for benefits under the Insurance Contracts pursuant to the following:

    a.  <u>Performance Standard</u>: At least ninety-five percent (95%) of all short-term disability claims for benefits made pursuant to an Insurance Contract will be processed for payment, denial or request for additional information, and checks for payment or other appropriate communication mailed by first class mail within five (5) calendar days of the date the complete claim (or the last item to complete the initial claim) is delivered by the U.S. Postal Service (or by any other means, electronic or otherwise) to UNUM's Chattanooga Customer Care Center.

    b.  <u>Measurement</u>: Performance shall be measured annually from UNUM's short-term disability claims turnaround reports, to be provided by UNUM to the Annuity Board within forty-five (45) calendar days from the end of each calendar quarter. Performance shall be measured by dividing the number of complete short-term disability claims for benefits made pursuant to the Insurance Contracts processed within five (5) calendar days of receipt by the total number of complete claims received.

    c.  <u>Penalty</u>: Any penalty shall be reviewed and assessed annually at the end of an Audit Period (as defined below). Failure to meet this Performance Standard shall result in a penalty equal to $500 multiplied by the number of short-term disability claims that would bring UNUM up to the 95% Performance Standard.

2.  **Claims Processing – Long-term Disability.** UNUM shall administer long-term disability claims for benefits under the Insurance Contracts pursuant to the following:

    a.  <u>Performance Standard</u>: At least ninety-five percent (95%) of all long-term disability claims for benefits made pursuant to an Insurance Contract will be processed for payment, denial or request for additional information, and checks for payment or other appropriate communication mailed by first class mail within forty (40) calendar days of the date the complete claim (or the last item to complete the initial claim) is delivered by the U.S. Postal Service (or by any other means, electronic or otherwise) to UNUM's Chattanooga Customer Care Center.

    b.  <u>Measurement</u>: Performance shall be measured annually from UNUM's claims turnaround reports, to be provided by UNUM to the Annuity Board within forty-five (45) calendar days from the end of each calendar quarter. Performance shall be measured by dividing the number of complete long-term disability claims for benefits made pursuant to the Insurance Contracts processed within forty (40) calendar days of receipt by the total number of complete long-term disability claims received.

CONFIDENTIAL
ULCDI - 0015

c.  Penalty: Any penalty shall be reviewed and assessed annually at the end of an Audit Period (as defined below). Failure to meet this Performance Standard shall result in a penalty equal to $500 multiplied by the number of long-term disability claims that would bring UNUM up to the 95% Performance Standard.

3.  **Appeal of Denial Processing.**  UNUM shall administer appeals of denied claims for benefits under the Insurance Contracts in the manner generally required for processing appeals under the Employee Retirement Income Security Act, as amended, and regulations issued thereunder even though the Annuity Board is not subject to such regulation.  For this purpose, a "denied claim" includes any cessation or downward adjustment of disability benefit payments to an individual whose benefit payments had previously been approved or commenced.  Upon request by the Annuity Board, UNUM will provide sample claim denial letters it uses in connection with the Insurance Contracts for the Annuity Board's review and comment.

4.  **Reporting.**  UNUM shall provide the required reports in connection with the Insurance Contracts pursuant to the following:

    a.  Performance Standard: UNUM shall provide the Annuity Board the report(s) listed in Attachment C to the Side Agreement within the time period(s) stated therein.

    b.  Measurement and Penalty: Performance shall be measured annually and any penalty shall be reviewed and assessed annually at the end of an Audit Period.  Failure to meet this Performance Standard shall result in a penalty equal to $100 multiplied by the number of reports that were not provided by UNUM to the Annuity Board within the required time period.

5.  **Medical Underwriting.**  UNUM agrees to enter into an administration agreement with Seabury & Smith, Inc. to perform medical underwriting services in connection with the Insurance Contracts, which agreement shall contain medical underwriting performance standards and associated penalties acceptable to the Annuity Board.  UNUM further agrees that such performance standards and its obligation to enforce such performance standards are material obligations of UNUM.

    UNUM shall provide, or ensure that Seabury & Smith, Inc. provides, medical underwriting services in connection with the Insurance Contracts pursuant to the following:

    a.  Performance Standards:

        (1) *Initial Action.*  "Initial action" means that the evidence of insurability ("E of I") application will be entered into the underwriting system and any necessary further information will be requested.

CONFIDENTIAL
ULCDI - 0016

- At least 80% of all E of I applications will have initial action (as defined above) taken within three (3) business days from the date received in UNUM's underwriting office.
- All (100%) of E of I applications will have initial action taken within four (4) business days from the date received in UNUM's underwriting office.

(2) *Decision on E of I Application.* Once all required information is received, an underwriting decision to approve or decline coverage will be made on each E of I application. Rejection decisions shall be promptly communicated to the respective applicants and all decisions to the Annuity Board.
- At least 80% of underwriting decisions will be made within three (3) business days of receipt by UNUM of all required information.
- All (100%) of underwriting decisions will be made within four (4) business days of receipt by UNUM of all required information.

b. Measurement: Performance shall be measured quarterly from quarterly reports regarding turnaround time for initial action and underwriting decisions, to be provided by UNUM to the Annuity Board within forty-five (45) calendar days from the end of each calendar quarter. Performance shall be measured by dividing the number of E of I applications on which initial action or a decision is made (under the applicable Performance Standard) processed within the applicable Performance Standards by the total number of E of I applications received.

c. Penalty: Any penalty shall be reviewed and assessed annually at the end of an Audit Period. Subject to the agreement by UNUM's medical underwriting subcontractor with respect to the Performance Standards and the associated penalty, failure to meet any one of the above medical underwriting Performance Standards shall result in an annual penalty equal to $50,000.

d. UNUM shall close a medical underwriting file and treat the request for insurance coverage under the Insurance Contracts as denied if any additional requested information is not received by UNUM within forty-two (42) calendar days of UNUM's receipt of an E of I application; *provided, however,* that any such medical underwriting file must be reopened if the requested information is received within ninety (90) days of UNUM's receipt of the E of I application.

6. **Penalty for Failure to Perform.** In the event UNUM fails to meet the Performance Standards contained in Paragraphs 1, 2, 3 and 4 above, UNUM shall be subject to the financial penalties described therein, such penalties being the sole remedy available to the Annuity Board for any failure to meet the Performance Standards contained herein.

7. **Annual Performance Audit.** UNUM shall perform annual audits to determine whether the Performance Standards have been met during a particular policy year (hereinafter

CONFIDENTIAL
ULCDI - 0017

referred to as an "Audit Period"). A new Audit Period shall begin each January 1st, beginning January 1, 2002, and will end on the next December 31.

Each audit shall be completed by UNUM within sixty (60) days of the end of the Audit Period, and UNUM shall provide the Annuity Board with a written report (hereinafter referred to as the "Audit Report") of the audit and a determination of any penalties resulting from a failure to meet the Performance Standards set out in Paragraphs 1, 2, 3 and 4 above within thirty (30) days from the completion of the Audit Report.

8.  **Payment of Penalties.** Within thirty (30) days of providing the Annuity Board an Audit Report, if UNUM determines that a penalty is due the Annuity Board, subject to the Annuity Board's review, UNUM shall forward to the Annuity Board a check in the amount of the penalty due, if any. The Annuity Board shall not withhold premium or service fees that are due based on its knowledge, expectation, opinion, or belief that a penalty is payable pursuant to this Performance Agreement.

9.  **Force Majeure.** Neither party shall be liable to the other for any delay or inability to perform its obligations under this Performance Agreement or otherwise if such delay or inability arises from any act of God, fire, natural disaster, or act of government materially affecting the obligated party, its affiliates, agents, and subcontractors. In the event of such delay or inability to perform, the time for performance shall be extended for a period of time equal to the length of the delay or inability to perform.

CONFIDENTIAL
ULCDI - 0018

## ATTACHMENT D

### MONTHLY PREMIUM RATES

The following monthly premium rates shall be used by Annuity Board to calculate the monthly premiums for the Insurance Contracts unless and until such rates are modified in accordance with the terms of the Group Insurance Contracts:

| | ESP LTD<br>Monthly Rate Per $100 of Payroll | | | PSP LTD<br>Monthly Rate Per $100 of Payroll | |
|---|---|---|---|---|---|
| | Standard | Economy | | Standard | Economy |
| Age | | | Age | | |
| <30 | $0.0706 | $0.0441 | <30 | $0.4312 | $0.3528 |
| 30-34 | $0.1421 | $0.0980 | 30-34 | $0.4312 | $0.3528 |
| 35-39 | $0.1421 | $0.0980 | 35-39 | $0.5488 | $0.4410 |
| 40-44 | $0.2127 | $0.1421 | 40-44 | $0.7056 | $0.5684 |
| 45-49 | $0.3548 | $0.2303 | 45-49 | $0.9310 | $0.7448 |
| 50-54 | $0.5762 | $0.3910 | 50-55 | $1.1074 | $0.8820 |
| 55-59 | $0.8340 | $0.5321 | 55-59 | $1.2250 | $0.9800 |
| 60 + | $1.0030 | $0.6566 | 60 + | $0.8428 | $0.6762 |
| Composite | $0.5194 | $0.3724 | | | |

| ESP STD – Per EE per month | | PSP STD – Per EE per month | |
|---|---|---|---|
| Standard | Economy | Standard | Economy |
| $16.80 | $22.78 | $11.72 | $16.15 |

CONFIDENTIAL
ULCDI - 0019

## PREMIUM STABILIZATION RESERVE AGREEMENT

THIS AGREEMENT is between UNUM Life Insurance Company of America (singularly "Company") and Provident Life and Accident Insurance Company (singularly "Provident" but collectively both companies referred to as "Company") and Annuity Board of the Southern Baptist Convention ("Policyholder").

WHEREAS, UNUM has issued UNUM Group LTD Policy Nos. 111604 and 111605 (collectively the "Policies") providing Group Long Term Disability insurance for eligible individuals as defined in the Policies; and

WHEREAS, Provident has agreed to offer a Supplemental Income Protection Plan (the "Supplemental Plan") providing Individual Disability insurance coverage for eligible individuals as defined in the Supplemental Plan; and

WHEREAS, Policyholder wishes to establish a Premium Stabilization Reserve Account ("PSR Account") into which Company shall deposit any premium remitted by Policyholder in excess of the premium then due under the Policies or the Supplemental Plan.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the parties hereto agree as follows.

1.  In the event Policyholder has paid premium greater than the premium due Company, Company shall deposit such surplus in a PSR Account.

2.  Company will credit interest on any balance in Policyholder's PSR Account based on an annual interest rate applied to the outstanding balance in the PSR Account at the end of each month. The interest rate will be equal to the 180-day T-Bill rate as of the effective date of this agreement plus one percent (1%) compounded monthly. This rate shall be adjusted on the first day of each month, so that the new rate equals the average 180-day T-Bill rate from the prior month plus one percent (1%). Company shall provide Policyholder with a quarterly statement of the PSR Account.

3.  Policyholder may use any funds in the PSR Account, including accrued interest, to pay all or a portion of the premium due in subsequent periods. Company may also withdraw any funds in Policyholder's PSR Account to apply toward the premium due under the Policies or the Supplemental Plan.

4.  Except as provided in paragraph 3 above, Policyholder may withdraw any outstanding balance in the PSR Account (including any accrued interest) only upon the termination of this Agreement, or upon termination of both the Policies and the Supplemental Plan. Upon the termination of this Agreement or the Policies, Company shall apply or transfer any outstanding balance in the PSR Account (including any accrued interest) as directed to do so by Policyholder. Policyholder represents and warrants that it will not instruct Company to transfer PSR Account funds in a manner that is prohibited or counter to the fiduciary responsibility Policyholder may have in connection with such funds. Company shall not be liable for any consequences resulting from, arising out of or connected to Company's maintenance of the PSR Account or any application or transfer of PSR Account funds directed by Policyholder.

1

CONFIDENTIAL
ULCDI - 0020

5. Company shall have the right to modify the contract premium rate due under the Policies and/or the Supplemental Plan, without reference to this Agreement, in accordance with the terms of the Policies, the Supplemental Plan and any applicable rate guarantee.

6. This Agreement may only be modified in writing, by mutual consent of the parties hereto. The invalidity or unenforceability of any term or provision of this Agreement shall not affect the validity or enforceability of the remaining provisions. This Agreement will terminate the earlier of the date of termination of one of the Policies, the date of termination of the Supplemental Plan, or by mutual written agreement of the parties.

7. This Agreement shall be construed in accordance with and governed by the laws of the state of Texas.

IN WITNESS WHEREOF, the parties have entered into this Agreement effective January 1, 2002.

Annuity Board of the Southern
Baptist Convention

By: _____

Name: __John R. Jones__
        (Please Print)

Title: __Executive Vice President__
        __and Chief Operating Officer__
        (Please Print)

Date: __November 12, 2001__

UNUM Life Insurance Company
of America

By: _____

Name: __Thomas R. Watjen__
        (Please Print)

Title: __Executive Vice President__
        (Please Print)

Date: __11/20/01__

Provident Life and Accident
Insurance Company

By: _____

Name: __Thomas R. Watjen__
        (Please Print)

Title: __Executive Vice President__
        (Please Print)

Date: __11/20/01__

177372

2

CONFIDENTIAL
ULCDI - 0021