IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BETTY BULLARD, | § | |
| Plaintiff, | § | |
| | § | CASE NO. |
| vs. | § | |
| | | CV-2:05-cv-1217-MEF |
| UNUMPROVIDENT CORPORATION; | § | |
| UNUM LIFE INSURANCE COMPANY | | |
| OF AMERICA, et al., | § | |
| Defendants. | § | |
| | § | |

### DEFENDANTS' OPPOSITION TO PLAINTIFF'S
### MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff has filed a motion for partial summary judgment seeking summary judgment as a matter of law in plaintiff's favor on plaintiff's breach of contract claim and bad faith claims. This is a response in opposition to that motion.

**I.    INTRODUCTION.**

One of the principal flaws in plaintiff's motion for partial summary judgment is evident in plaintiff's placement of her argument that she is entitled to summary judgment on the bad faith claim before her argument on the contract claim. While, as noted below, plaintiff's argument that there is no genuine issue of material fact on the bad faith claim fails for a number of other reasons, it also fails because plaintiff is certainly not entitled to summary judgment on her breach of contract claim. Plaintiff's motion and arguments fail to recognize that obtaining summary judgment on the breach of contract claim is a prerequisite to obtaining summary judgment on the

bad faith claim. For this reason, and the reasons discussed more fully below, this Court should deny plaintiff's motion for partial summary judgment.

### II. Plaintiff's "Narrative Statement of Undisputed Material Facts" Fails to Support Plaintiff's Motion for Partial Summary Judgment.

Defendants' earlier memoranda in support of their own motions for summary judgment and their replies to plaintiff's briefs in opposition to their summary judgment motions set forth the undisputed material facts in this case and support defendants' motions for summary judgment on all of plaintiff's claims. Defendants adopt and incorporate those statements of undisputed material facts and the evidentiary submissions relating to those motions in opposition to plaintiff's motion for partial summary judgment.

Plaintiff's narrative statement of undisputed material facts contains a number of errors and unsupported assertions, beginning with the first sentence, which states that Betty Bullard purchased her long-term disability insurance policy through her employer, the Annuity Board of the Southern Baptist Convention ("Annuity Board"). Plaintiff did not purchase any long-term disability policy from Unum Life. Instead, this long-term disability coverage was part of a group long-term disability insurance plan with the Annuity Board of the Southern Baptist Convention through which plaintiff's employer provided her with long-term disability coverage as an employee benefit. (Personnel Manual at 8-9, attached as Exhibit 2 to Defendant's Evidentiary Submissions filed herewith).

Plaintiff also mischaracterizes the performance standards in the "Side Agreement" between Unum Life and the Annuity Board. While the "Side Agreement" does provide for time limitations on performing certain tasks relating to the handling of claims, those time standards are to some extent analogous to regulations under ERISA regarding the handling of claims. The performance standards do not absolutely require that the claim be decided within the initial time

2

limitations, but rather provide that "at least ninety-five percent of all long-term disability claims for benefits made pursuant to an Insurance Contract will be processed for payment, denial, <u>or request for additional information</u>, and checks for payment or other appropriate communication mailed by first-class mail within 40 calendar days of the date of the complete claim." (Disability Program Side Agreement, attached as Exhibit Q to Plaintiff's Evidentiary Submissions in Support of Her Motion for Partial Summary Judgment). Thus, time standards allow the option of requesting additional information as well as paying or denying claims within the time standards in the agreement. Moreover, the agreement requires ninety-five percent compliance, rather than one-hundred percent of all claims, providing the flexibility in individual cases to address a claim over a longer period of time.

Plaintiff's quotation of the definition of disability in the policy is incomplete. As previously indicated, under the policy, plaintiff has the burden of establishing that she meets the definition of disability in the policy, which provides that an insured is disabled "when Unum determines" that: "you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and - you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury." (Disability Policy (BULLLTDAP1-53), Exhibit C to Plaintiff's Evidentiary Submissions in Support of Her Motion for Partial Summary Judgment)[1]. The Disability Policy states that "[l]imited means what you cannot or are unable to do" and that "material and substantial duties" means duties that "are normally required for the performance of your regular occupation - and cannot be reasonably omitted or modified." (*Id.*).

---

[1] After thirty-six months of benefit payments, the definition changes to require plaintiff to show that plaintiff is unable to perform the duties of "any gainful occupation for which she is reasonably fitted by education, training, or experience." (Disability Policy (BULLLTDAP1-53), Exhibit C to Plaintiff's Evidentiary Submissions in Support of Her Motion for Partial Summary Judgment).

3

Plaintiff further cites the "Disability Plus Rider" in plaintiff's long-term disability policy, insinuating that this definition is somehow relevant to plaintiff's claim, but plaintiff provides absolutely no evidence or argument that plaintiff has lost the ability to safely and completely perform two activities of daily living as required under the policy for that benefit.

Plaintiff asserts that plaintiff's job duties included being required to lift heavy boxes and doing a lot of standing, in addition to the job description for her position furnished by the Annuity Board. However, plaintiff's brief fails to point out that these additional duties were described by plaintiff as specifically relating to outside conferences and that plaintiff acknowledges in her deposition that she did not attend outside conferences and perform those duties after 2002. (Bullard Depo. at 132-133).[2] Plaintiff also testified that the amount of typing that she had to do varied from time to time. (Bullard Depo. at 143-146). Plaintiff cites her complaint for the proposition that she was forced to stop working because of her debilitating illness in May 2004. Clearly, plaintiff's complaint is not evidence.

Furthermore, plaintiff's statement that she was unable to do her job is disputed, particularly given the restrictions and limitations from Dr. Vergot set forth in the claim file with which her treating physician, Dr. McKinney, agreed. (February 22, 2005 letter from Dr. McKinney (UACL00417), Exhibit 23 to Unum Life's Evidentiary Submissions in Support of Its Motion for Summary Judgment).

Plaintiff further exaggerates her condition in her statement of facts when she asserts that her illness has required her to endure "many surgical procedures, including discectomies, cervical fusions, and foot surgery." The evidence indicates that plaintiff's only disc surgery was performed well before she stopped working. Moreover, she does not maintain that her neck

---

[2] References to Betty Bullard's deposition are to the excerpts filed as Exhibit 1 to Unum Life's original evidentiary submissions in support of its motion for summary judgment or to the excerpts filed as Exhibit 1 to the evidentiary submissions filed herewith.

4

problems, which was the location of her disc surgery, standing alone, prevent her from performing her duties as a secretary. (Bullard Depo. at 210-211, 256). While plaintiff also had surgery on her foot, she similarly admits that her problems with her foot do not prevent her from performing her duties as a secretary. (*Id.* at 257). Moreover, Dr. Thornberry, who treated plaintiff for her foot condition, did not place any restrictions and limitations on plaintiff. (Bullard Depo. at 135; April 9, 2004 Statement of Dr. Thornbury (UACL00024), attached as part of Exhibit 8 to Unum Life's Evidentiary Submissions in Support of Its Motion for Summary Judgment).

Furthermore, plaintiff's reference to her needing additional surgery and not being able to afford it is a reference to plaintiff's suggestion that she would consider surgery for her TMJ condition, but insurance would not pay for it. (Bullard Depo. at 205, 259). There is no evidence that plaintiff's TMJ condition prevents her from working. (Bullard Depo. at 262).

Plaintiff's conclusory assertions concerning her symptoms and her ability to work are addressed extensively in Unum Life's original brief in support of its motion for summary judgment, specifically on pages 3 through 5 of the brief. Moreover, the Attending Physician's Statements submitted by plaintiff are also extensively addressed in that brief and in Unum Life's reply brief to Plaintiff's Opposition to Unum Life's Motion for Summary Judgment.

Plaintiff's argument concerning medical support for her claim appears to focus on Dr. Richardson's Attending Physician's Statement, Dr. McKinney's Attending Physician's Statement, and Dr. McKinney's October 25, 2004 letter to defendants concerning plaintiff's disability and stating that plaintiff is "permanently unable to perform [a] fulltime job of any kind, secondary to her multiple medical conditions." (Plaintiff's Motion at 7-8).

However, plaintiff's motion fails to address the fact that Dr. Richardson did not list any restrictions and limitations on his Attending Physician's Statement. (Attending Physician's Statement from Dr. Rueben C. Richardson (UACL00025), Exhibit 9 to Unum Life's Evidentiary Submissions in Support of Its Motion for Summary Judgment). While Dr. Richardson checked the box on the Attending Physician's Statement form that Bullard was not released to work, the form itself is dated April 5, 2004, and shows Richardson's last date of examination of plaintiff was January 12, 2004. However, it is undisputed that plaintiff was working full time in her secretarial position well beyond January 12, 2004. Dr. Richardson confirmed in his deposition that he did not list any restrictions and limitations for the plaintiff, and he indicated that he meant to point out on the form that he had not restricted plaintiff from working at the time he signed the Attending Physician's Statement. (Richardson Depo. at 54, except attached to Defendant's Evidentiary Submissions as Exhibit 3). Significantly, the Attending Physician's Statement and Dr. Richardson's testimony refute plaintiff's claim that Dr. Richardson's Attending Physician's Statement "indicates that, based on his diagnosis alone, plaintiff cannot be released to return to work in any occupation." (Plaintiff's Brief at 7).

With regard to Dr. Rachael McKinney's statements, Dr. Susy Vergot assigned restrictions and limitations resulting from plaintiff's medical conditions after reviewing plaintiff's medical records. (Declaration of Dr. Susy L.L. Vergot attached as Exhibit 5 to Defendants' Evidentiary Submissions; February 2, 2005 Review of Dr. Susy L.L. Vergot (UACL00319-320) attached as Exhibit B to that Declaration). Dr. Susy Vergot wrote Dr. McKinney seeking her opinion concerning those restrictions and limitations. (Vergot Declaration). Dr. McKinney responded to Dr. Vergot's letter inquiring as to her opinion of Dr. Vergot's restrictions and limitations, by stating that Dr. Vergot "adequately listed her limitations from her ulcerative colitis and

6

rheumatoid arthritis," but mentioned that plaintiff's reported fatigue from her fibromyalgia condition and narcolepsy were not Dr. McKinney's area of expertise. (February 22, 2005 letter from Dr. McKinney (UACL00417), Exhibit 23 to Unum Life's Evidentiary Submissions in Support of Its Motion for Summary Judgment).

Plaintiff has presented no evidence that there were any additional restrictions and limitations relating to plaintiff's fibromyalgia and narcolepsy condition. In fact, plaintiff herself acknowledged that her fibromyalgia condition does not, standing alone, keep her from performing the duties of a secretary. (Bullard Depo. at 263-274).

Furthermore, Dr. Vergot's subsequent report, attached as Exhibit C to her declaration, confirms that Dr. Vergot considered plaintiff's fatigue in developing restrictions and limitations. (Vergot Declaration). Plaintiff also testified that it was hard for her to say whether her narcolepsy prevented her from performing her duties as a secretary. (Bullard Depo. at 251-252). Dr. Vergot has now reviewed the additional medical records obtained from various physicians identified in discovery, and has opined, based on her review of those records, that plaintiff could continue to work within the restrictions and limitations set forth in her original report dated February 2, 2005. (Vergot Declaration at ¶¶ 8-9).

Furthermore, plaintiff's claim that fatigue prevents her from working as a secretary is contradicted by her ongoing work at the Sylvan Learning Center. (Bullard Depo. at 11-18 and 102). She testified that she started working at Sylvan as a testing proctor in 2002, that she continues to work eight to eight and one-half hours at a time on Saturdays for Sylvan in that capacity. (*Id.*). Plaintiff's duties include greeting examinees, checking identifications against the roster, showing them to the test area, and watching them via monitor when they take tests. (*Id.*)

7

Plaintiff's statement of facts references the fact that Unum Life notified plaintiff that it was offering her an opportunity to have her claim reassessed pursuant to the Multi-State Settlement Agreement executed by Unum Life. Plaintiff failed to take advantage of this offer. Despite the fact that plaintiff failed to take advantage of this offer, plaintiff seeks to use this reference to the Multi-State Settlement Agreement to argue for the admission of the Report of the Target Multi-State Market Conduct Exam. The Report is extensively addressed on page 13 of Unum Life's Reply to Plaintiff's Opposition to Unum Life's Motion for Summary Judgment (Document No. 30) and in Defendants' Motion to Strike and Memorandum of Law in Support Thereof (Document No. 33) and Defendants' Reply to Plaintiff's Opposition to Defendants' Motion to Strike (Document No. 51). For the reasons stated in those filings, the Targeted Multi-State Market Conduct Exam Report is not admissible, and should be stricken from the record. Plaintiff's reference to the reassessment offer does not provide any basis for the admission of the Report.

Plaintiff also cites a letter from the Alabama State Baptist Convention. It is critical to note that this letter was never submitted to defendants during the time period in which plaintiff's claim was pending. Instead, it is addressed to the Social Security Administration. Furthermore, it provides absolutely no basis for the conclusory assertions that plaintiff was physically unable to fulfill her job requirements and is actually no evidence at all as to whether plaintiff is entitled to benefits under the policy. This letter is also inaccurate in its assertion that the Alabama Baptist Convention had stopped paying plaintiff and providing medical benefits, since the Convention has apparently continued to pay plaintiff's medical benefits and to pay her at least some ongoing salary continuation. (Bullard Depo. at 82-84 and 87-91).

Plaintiff's reference to a letter from Don Stephens, who was apparently a counselor with the Alabama Department of Rehabilitation Services, Vocational Rehabilitation Service, also relies on inadmissible evidence. That document was also the subject of the defendants' motion to strike (Document No. 33) and is extensively discussed in that motion and in defendants' reply to plaintiff's response thereto (Document No. 51). Don Stephens was not disclosed as an expert in this case pursuant to the Court's Scheduling Order. The letter is plainly offered as expert opinion since it purports to give Stephens' opinion. For that reason alone, the Court should strike the document from the record. It appears that the document was submitted to the Social Security Administration in conjunction with plaintiff's Social Security claim[3]. Plaintiff stated in opposition to the motion to strike that the letter was not being offered for the truth of the matters asserted in the letter. Given the fact that the letter has twice been submitted on the issue of plaintiff's entitlement to benefits in this case, that assertion is simply not credible. The Court should, therefore, also reject the letter as inadmissible hearsay. In addition, the conclusions in the letter are contradicted by the fact that plaintiff has continued to work eight to eight and one-half hours every Saturday for the Sylvan Learning Center, earning approximately $5,615.00 in compensation in 2005. (W-2 Form, attached to Defendant's Evidentiary Submissions as Exhibit 4).

In sum, as indicated by the above and by defendants' statements of undisputed material facts in their original motions and replies, plaintiff's narrative statement of undisputed material facts fails to establish evidence that would entitle plaintiff to summary judgment on any of plaintiff's claims.

---

[3] Plaintiff's Social Security disability claim was denied and plaintiff has apparently not appealed that denial. (Plaintiff's Objection to Defendants' Third Request for Production of Documents to Plaintiff).

9

### III.  ARGUMENT.

#### A.  Plaintiff is Not Entitled to Summary Judgment on Her Contract Claim.

Despite the fact that plaintiff asserted that the alleged late production of information supported plaintiff's late filed motion for summary judgment on plaintiff's contract claim, plaintiff has submitted no information in support of her contract claim that did not exist and was not fully briefed with respect to Unum Life's timely filed motion for summary judgment. Those prior submissions demonstrate that defendants, rather than plaintiff, are entitled to summary judgment on plaintiff's contract claim.

Plaintiff seems to be of the impression that being diagnosed with a condition equals being disabled by that condition. The case law is clear that merely because the evidence supports a diagnosis, it does not establish that the condition is disabling. *See, e.g., Coker v. Metropolitan Life Insurance Co.*, 281 F.3d 793,799 (8th Cir. 2002) (although medical evidence supports the diagnosis of diabetes, there was no objective evidence that the condition is disabling). As indicated by the policy definition quoted above, plaintiff must show that she has a sickness or injury <u>and</u> that she is "limited from performing the material and substantial duties "of her regular occupation due to that sickness or injury." (Disability Policy (BULLLTDAP1-53), Exhibit C to Plaintiff's Evidentiary Submissions in Support of Her Motion for Partial Summary Judgment). "[L]imited means what you cannot or are unable to do" and that "material and substantial duties" means duties that "are normally required for the performance of your regular occupation - and cannot be reasonably omitted or modified." (*Id.*).

As established in Unum Life's reply brief on Unum Life's original motion for summary judgment, after reviewing all of plaintiff's medical records, Dr. Susy Vergot assigned restrictions

and limitations resulting from plaintiff's medical conditions. (Vergot Declaration; February 2, 2005 Review of Dr. Susy L.L. Vergot (UACL00319-320)).

Unum Life had the restrictions and limitations assigned by Dr. Vergot reviewed by Shannon O'Kelley, M.Ed., C.R.C., a Senior Vocational Rehabilitation Consultant. (Defendant's Exhibit 25 to Unum Life's Evidentiary Submissions in Support of its Motion for Summary Judgment, UACL00383-385). Shannon O'Kelley opined that Ms. Bullard's restrictions and limitations should not prevent her from performing her secretarial job. (*Id.*).

Plaintiff's own treating physician, Dr. McKinney, confirmed that Dr. Vergot "adequately listed her limitations from her ulcerative colitis and rheumatoid arthritis," but mentioned that fatigue from plaintiff's fibromyalgia and narcolepsy were not her area of expertise. (February 22, 2005 Letter from Dr. McKinney (UACL00417)). Plaintiff submitted no evidence of any additional restrictions and limitations imposed by any physician relating to her fibromyalgia and narcolepsy that would be relevant to plaintiff's ability to work as a secretary.

Moreover, the Attending Physician's Statement from Dr. Ruben Richardson, the only physician listed as treating her for her sleep disorders, did not list any restrictions or limitations on his Attending Physician's Statement. (Attending Physician's Statement from Dr. Rueben C. Richardson (UALCL00025), attached as Exhibit 9 to Unum Life's Evidentiary Submissions in Support of Its Motion for Summary Judgment). While Dr. Richardson indicated by checking the box on the Attending Physician's Statement form that Bullard was not released from work in any occupation, that form is dated April 5, 2004, and shows the last date of examination as January 12, 2004. It is undisputed that plaintiff was working full-time in her secretarial position well beyond January 12, 2004. Also, Dr. Richardson confirmed in his deposition that he did not list any restrictions and limitations for plaintiff on the Attending Physician's Statement, and that he

11

meant to point out on the form that he had not restricted plaintiff from working at that point. (Richardson Depo. at 54).

Plaintiff also testified that it was hard for her to say whether her narcolepsy prevented her from performing her duties as a secretary. (Bullard Depo. at 251-252). Furthermore, plaintiff's claim that her sleep disorder prevents her from working as a secretary is contradicted by her ongoing work at Sylvan Learning Center. (Bullard Depo. at 11-18 and 102). Indeed, she testified that she started working at Sylvan as a testing proctor in 2002, that she continues to work at least eight hours on Saturdays for Sylvan in that capacity, and that her duties include greeting examinees, checking their identification against a roster, showing them to the test area and watching them via monitor while they are taking tests. (*Id.*)

After her initial report, Dr Vergot reviewed additional medical records that were received, and she produced a subsequent report, which confirms the restrictions and limitations previously issued by Dr. Vergot. (Vergot Declaration, ¶ 6, Report attached as Exhibit C). Dr. Vergot's review of Dr. Richardson's records did not support additional restrictions and limitations from her sleep disorder. (*Id*; Defendant's Exhibit 21 to Unum Life's Evidentiary Submissions in Support of Its Motion for Summary Judgment at UACL00319-320).

Dr. Vergot has also reviewed additional medical records that were produced during discovery in this case, and has opined that based on that review, plaintiff could continue to function at work within the restrictions of the limitations set forth in the original report dated February 2, 2005. (Vergot Affidavit, ¶¶ 8-9).

Based on the above, Unum Life is entitled to summary judgment on plaintiff's contract claim because plaintiff's restrictions and limitations do not prevent her from performing the material and substantial duties of her occupation.

In sum, plaintiff has not submitted any new information or arguments on the contract claim with her motion for summary judgment. For the above reasons and the reasons set forth in Unum Life's earlier briefing on its own motion for summary judgment, plaintiff's motion for summary judgment as to plaintiff's contract claim should be denied.

### B.     Plaintiff is Not Entitled to Summary Judgment on Plaintiff's Bad Faith Claim.

While there are a number of reasons why plaintiff is not entitled to summary judgment on plaintiff's bad faith claim, a fundamental flaw in plaintiff's motion for summary judgment on the bad faith claim is that plaintiff cannot establish that plaintiff is entitled to summary judgment as a matter of law on plaintiff's contract claim. As confirmed by the Alabama Supreme Court's holding in *State Farm Fire and Casualty Co. v. Slade*, 747 So. 2d 293 (Ala. 1999), plaintiff must establish that the she is entitled to benefits under the policy as a prerequisite to bad faith liability. *Slade*, 747 So. 2d at 318. Since, as established above, plaintiff is not entitled to summary judgment on plaintiff's contract claim for benefits under the policy, plaintiff likewise cannot obtain summary judgment on plaintiff's bad faith claim.

Furthermore, even without the breach of contract issue preventing summary judgment for plaintiff on the bad faith claim, plaintiff's arguments as to the bad faith claim fail to establish that plaintiff is entitled to summary judgment on that claim, particularly given the requirements that a court ruling on a motion for summary judgment must take the evidence of the non-movant as true and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Perdue v. Pilgrim Pride*, 2006 WL 2355408 (M.D. Ala. Aug. 19, 2006).

Plaintiff asserts, based on the testimony of Bonita Connally, that defendants failed to properly investigate plaintiff's claim for benefits. As pointed out in Defendants' Reply to Plaintiff's Supplement to Plaintiff's Opposition to Defendants' Motion for Summary Judgment,

13

plaintiff's argument fails to even establish that there is an issue of fact as to defendants being entitled to summary judgment on plaintiff's bad faith claim, let alone that plaintiff would be entitled to summary judgment on that claim.

While plaintiff seeks to utilize the testimony of Bonita Connally to assert that defendants failed to properly investigate plaintiff's claim, plaintiff fails to provide any evidence as to any alleged additional investigation that would have revealed that the plaintiff's claim was covered under the terms of the policies. In S*tate Farm Fire & Casualty Co. v. Slade*, 747 So. 2d 293 (Ala. 1999), the Alabama Supreme Court held that "[u]nder the elements established in *Bowen*, supra, plaintiff has always had to prove that the insured breached the insurance contract. Practically, the effect is that, in order to prove a bad-faith-failure-to-investigate claim, the insured must prove that a proper investigation would have revealed that the insured's loss was covered under the terms of the contract." *Slade*, 747 So. 2d at 318. Under the above authority from *Slade*, it is not enough to assert that an insurance company failed to take some step to investigate the claim. Plaintiff must make an additional showing that, based on the undisputed material facts, the alleged omitted investigation would have established that her claim was payable as a matter of law.

The records from Dr. Paul are the only records specifically identified in Bonita Connally's testimony cited by plaintiff in support of plaintiff's argument that Unum Life failed to obtain records. While plaintiff asserts that, beyond the reference to Dr. Paul's records, defendants generally failed to investigate plaintiff's identified medical conditions, plaintiff fails to submit any information that was not gathered that would have supported plaintiff's disability claim. In fact, as noted above, plaintiff provided no additional support for plaintiff's disability claim in plaintiff's motion.

It is undisputed that plaintiff submitted records from Dr. Paul with a November 11, 2004 letter, in which Bullard stated "enclosed you will find records of the most recent test, diagnoses, and treatment plans from my doctors." (Ward Affidavit; November 11, 2004 letter from Ms. Bullard (UACL00301), attached as Exhibit 18 to Unum Life's Evidentiary Submissions in Support of Its Motion for Summary Judgment). Unum Life had these records reviewed by Dr. Susy Vergot. (February 2, 2005 review of Dr. Susy L.L.Vergot, (UACL00319)). Moreover, plaintiff later submitted an Attending Physician's Statement from Dr. Paul, and Unum Life obtained additional records from Dr. Paul after receiving that Attending Physician's Statement. Unum Life had those records reviewed by Dr. Vergot on March 29, 2005. (March 2005 Clinical Review (UACL00514-515), attached as Exhibit C to Vergot Declaration).

Plaintiff has failed to point to any evidence that would have been in the records of Dr. Paul at the time of the initial determination on plaintiff's claim that would support a finding of disability. Thus, plaintiff fails to offer any evidence to satisfy the required element that this information would have revealed that plaintiff satisfied the definition of disability under the policy at the time that she stopped working in May 2004. Given this failure to present that required evidence, plaintiff cannot establish that she is entitled to summary judgment.

In short, plaintiff cannot establish liability for bad faith based on a failure to investigate merely by going through the file and asserting that defendant failed to take certain actions in handling the plaintiff's claim. Plaintiff in this case has failed to take the additional required step of establishing that, had defendant taken some additional action, the investigation would have lead to a finding of liability on the contract claim as a matter of law.

As another example of plaintiff's failure in this regard, plaintiff asserts that defendants "never bothered to even look up the ICD-9 codes provided plaintiff's attending physicians to

15

identify her specific diagnoses." First, plaintiff makes this assertion based only on the testimony of Bonita Connally. There is no evidence that other employees of defendants did not look up these codes. More importantly, plaintiff does not provide any evidence that the codes reveal an impairing condition that was not evaluated by defendants.

Plaintiff also argues that the "true reason" for defendants' bad faith denial of the claims was the performance agreement between Unum Life and the Annuity Board. The agreement between Unum Life and the Annuity Board does contain certain performance standards. These performance standards are not specific to plaintiff's claim. Moreover, there is nothing in the performance standards that is in any way indicative of bad faith. The performance standards are not related to the merits of any determination. In other words, they do not mandate that a claim be denied. Instead, they relate to the timing of the performance of certain tasks relating to all long-term disability claims on the Annuity Board policies. The time standards were obviously intended to obtain prompt service for those individuals covered under the Annuity Board plan. In fact, they are somewhat analogous to provisions under the ERISA regulations for claims handling found at 29 C.F.R. § 2560.503-1, which provide in relevant part as follows:

> In the case of a claim for disability benefits, the plan administrator shall notify the claimant, in accordance with paragraph (g) of this section of the plan's adverse benefit determination within a reasonable period of time not later than forty-five days after receipt of the claim by the plan.

29 C.F.R. § 2560.503-1(f)(iii)(3).

Plaintiff's argument that these standards improperly motivated defendants to deny plaintiff's claim in bad faith is not supported by the evidence. In fact, the e-mail on which plaintiff primarily relies refers to activities relating to the requests for medical information from providers, and notes the forty-five day activity for initial liability **or a tolling letter** is past due.

16

In other words, the letter does not contain any communication that would indicate that the claim had to be denied or paid before a certain time. Instead, it primarily relates to obtaining medical documentation and highlights the option of sending a "tolling letter" to obtain more time under the performance agreement if needed.

In light of the above and the arguments and evidence set forth in defendants' previous briefing on defendants' motions for summary judgment, plaintiff has failed to establish that Unum Life is liable to plaintiff as a matter of law on the bad faith claim.

### C.  There is No Basis for Finding UnumProvident Corporation Liable for Breach of Contract or Bad Faith in this Case.

Plaintiff continues to assert that UnumProvident is liable for plaintiff's breach of contract and bad faith claim. This issue was thoroughly addressed in UnumProvident's original motion for summary judgment and its reply to plaintiff's opposition. Defendants adopt and incorporate that earlier brief (Document No. 20) and the reply herein (Document No. 31). Plaintiff's most recent submission on this issue presents nothing new. Plaintiff quotes a deposition from Susan Roth for the proposition that Unum Life has no employees, Unum Life has no employee policies or employee manuals, and that Unum Life and UnumProvident are parties to a General Services Agreement under which UnumProvident provides services on behalf of Unum Life. Plaintiff also points out that Unum Life is wholly owned by UnumProvident. None of this has ever been disputed, but more important for purposes of this motion, none of this provides a basis for finding contractual liability between UnumProvident and the plaintiff or for finding UnumProvident liable on an alter ego theory for claims against Unum Life.

Additionally, plaintiff's most recent filing contains a critical misstatement. Plaintiff asserts in her brief that "Roth further testified that, since the General Services Agreement was executed in 2000, merging UnumProvident and Unum Life, UnumProvident has provided

17

customer service for Unum Life." (Plaintiff's Brief at 17). Contrary to plaintiff's assertion, the deposition testimony does not make any statement that UnumProvident merged with Unum Life. Roth testified that Unum Corporation merged with and into Provident Companies, Inc. and Provident Companies, Inc. changed its name to UnumProvident Corporation. (Roth Deposition, at 45, attached as Exhibit R to Plaintiff's Evidentiary Submissions in Support of Her Motion for Partial Summary Judgment). Prior to the merger between Unum Corporation and UnumProvident Corporation, Unum Life Insurance Company of America was owned by Unum Holding Company, which was owned by Unum Corporation. (Roth Deposition at 55-56, attached as Exhibit R to Plaintiff's Evidentiary Submissions in Support of Her Motion for Partial Summary Judgment). Accordingly, there is no basis for plaintiff's statement that the General Services Agreement resulted in a merger between UnumProvident and Unum Life. UnumProvident and Unum Life continue to be separate corporations.

As thoroughly discussed in UnumProvident's earlier briefing, the deposition testimony cited by plaintiff does not establish a basis for finding that UnumProvident is liable as the "alter ego" of Unum Life. In making her argument for alter ego liability, plaintiff has cited no case law supporting her position. The testimony from Susan Roth's deposition cited by plaintiff does not establish alter ego liability. Furthermore, plaintiff has failed to provide any evidence of the required element that plaintiff show misuse and harm or loss resulting from the misuse. *In Re Birmingham Asbestos Litigation v. Armstrong World Industries, Inc.*, 997 F. 2d 827, 829-830 (11th Cir. 1993); *First Health, Inc. v. Blanton*, 585 So. 2d 1331 (Ala. 1991) (absent any showing that the parent corporation misused its control and that the harm at issue resulted from misuse of that control, the corporate entity would not be disregarded); *Gilbert v. James Russell Motors, Inc.*, 812 So. 2d 1269, 1274 (Ala. Civ. App. 2001).

Plaintiff argues extensively that Judge DeMent's opinion in *Anderson v. Unum Life Insurance Company of America*, 414 F. Supp. 2d 1079 (M.D. Ala. 2006), somehow provides that UnumProvident can be liable for breach of contract and bad faith on plaintiff's claim. As discussed in UnumProvident's earlier reply brief, *Anderson* does not provide any basis for finding that UnumProvident is liable under plaintiff's breach of contract and bad faith claims. In *Anderson*, an ERISA case, the court never held that UnumProvident was liable for a claim on a Unum Life policy. The court never addressed the "alter ego" argument that plaintiff attempts to make in this case. *Anderson* merely held that while Unum Life had expressly delegated the discretionary authority to decide plaintiff's claim under the policy at issue in that case, UnumProvident had not been delegated such discretionary authority. *Anderson*, 414 F. Supp. 2d at 1099, 1100. The *Anderson* court held that, for that reason, a *de novo* standard of review applied to the claim decision in that case. Despite that fact that UnumProvident earlier pointed out that *Anderson* does not apply to the present case, plaintiff makes absolutely no attempt to address those arguments or to explain how *Anderson* somehow establishes liability on the part of UnumProvident for the claim on the Unum Life contract.

It is also clear that UnumProvident cannot be liable to plaintiff for breach of contract or bad faith because it had no contractual relationship with plaintiff. *Ligon Furniture Company, Inc. v. O.M. Hughes Ins., Inc.*, 551 So. 2d 283, 285 (Ala. 1989) (there can be no liability for breach of contract or bad faith when the evidence shows that there is no insurance contract between the plaintiff and defendant). Plaintiff has completely failed to address the controlling authority in *Ligon Furniture* or provide any basis for a contrary finding.

In sum, UnumProvident is entitled to summary judgment on plaintiff's claims of breach of contract and bad faith on her Unum Life coverage. Plaintiff's motion for partial summary judgment against UnumProvident should be denied.

## IV. CONCLUSION.

For each of the above reasons, plaintiff's Motion for Partial Summary Judgment does not provide sufficient support for finding that plaintiff is entitled to summary judgment on her claims for breach of contract or bad faith. Accordingly, this Court should deny plaintiff's motion.

Respectfully submitted,

*s/Henry T. Morrissette*
HENRY T. MORRISSETTE (MORRH7622)
DOUGLAS W. FINK         (FINKD3798)
Attorneys for Defendant
UnumProvident Corporation

OF COUNSEL:

HAND ARENDALL, L.L.C.
Post Office Box 123
Mobile, Alabama 36601
Phone: (251) 432-5511
Fax:    (251) 694-6375

## CERTIFICATE OF SERVICE

I hereby certify that on this day, February 19, 2007, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which will send notifications of such filing to the following:

tsinclair@cwl-law.com

*s/Henry T. Morrissette*

583410v2