**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **BETTY BULLARD** ) | |
| ) | |
|    **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **CASE NO.** |
| **UNUMPROVIDENT CORPORATION;** ) | |
| **UNUM LIFE INSURANCE COMPANY** ) | **CV-2:05-cv-1217-MEF** |
| **OF AMERICA, et al.,** ) | |
| ) | |
|    **Defendants.** ) | |

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE IN OPPOSITION
TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Comes now the Plaintiff and provides the following reply to Defendants' Response in Opposition to Plaintiff's Motion for Partial Summary Judgment.

**I. INTRODUCTION**

Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment erroneously states that: 1) Plaintiff is not entitled to summary judgment on her breach of contract claim; 2) "Plaintiff did not purchase any long-term disability policy from Unum Life"; and 3) the only evidence of Defendants' failure to look up all of the ICD-9 codes listed by Plaintiff's Attending Physicians in her application for benefits is the deposition testimony of Bonita Connally.  Defendants also improperly characterize Plaintiff's numerous illnesses, by alleging that each illness, "standing alone," does not prevent her from doing her job.  Defendants therefore fail, in their Opposition to Plaintiff's Motion for Partial Summary Judgment, to consider the aggregate effect of all of Plaintiff's

illnesses, just as they failed to consider this aggregate effect in their review of her claim for benefits.

## II. DEFENDANTS HAVE FAILED TO RAISE A GENUINE ISSUE OF MATERIAL FACT

Plaintiff hereby incorporates her Narrative Summary of Undisputed Facts contained her Motion for Partial Summary Judgment as if fully set forth herein. Plaintiff also sets forth a clarification of Defendants' portrayal of the facts as follows: Defendants erroneously state "Plaintiff did not purchase any long-term disability policy from Unum Life … [rather,] plaintiff's employer provided her with long-term disability coverage as an employee benefit." Defendants' Opp to MSJ, pg 2. Defendants cite to a personnel manual as support for this assertion. Plaintiff has testified, however, that she elected to participate in Defendants' long-term disability and life insurance coverage and did in fact pay for the premiums because they were considered by her employer as part of her salary. *See* Bullard Depo pgs. 51-55. Plaintiff testified that she could have elected not to participate in Defendants' insurance plan and if she had elected not to do so, her salary would have been higher. *Id.* Plaintiff therefore purchased her policies from Defendants and paid her premiums through deductions from her paycheck.

Defendants have not raised a genuine issue of material fact through their assertion that Plaintiff's insurance coverage was provided to her as an employee benefit. The facts are undisputed that Plaintiff's policy premiums were deducted from her paycheck and that, had she elected not to participate in Defendants' insurance plan, her paychecks would have been higher. The fact that Plaintiff paid for her insurance premiums through paycheck deductions rather than writing Defendants a check has no bearing on her claims

of breach of contract and bad faith. Further, whether Plaintiff purchased an insurance policy from Defendants is a question of law for this Court to decide, not a genuine issue of material fact.

In Plaintiff's Motion for Partial Summary Judgment, she offered the fact that Defendants failed to even look up the ICD-9 codes listed by her Attending Physicians in support of her claim for benefits as evidence of Defendants' bad faith failure to investigate her claim. *See* Plaintiff's Motion for Partial Summary Judgment, pgs 7-8, 11. Plaintiff cited to the deposition testimony of Bonita Connally, in which she admits that the ICD-9 codes provided by Plaintiff's Attending Physicians were not looked up, as evidentiary support. In Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment, Defendants erroneously state "[t]here is no evidence that other employees of defendants did not look up these codes."

Connally in fact testified that not only did she fail to look up the ICD-9 codes but that the file did not reflect that anyone had looked up the ICD-9 codes. *See* Connally Depo pg 82. Furthermore, Defendants continued their failure to list the medical conditions which were indicated by Plaintiff's ICD-9 codes in their appellate review of Plaintiff's claim. *See* Exhibit 1, Latisha Toney Depo pgs 71-72. Plaintiff has therefore presented evidence that her multiple diagnoses indicated by the ICD-9 codes were not considered at either Defendants' initial review of her claim or their appellate review of her claim. Defendants have presented absolutely no evidence to refute this fact.

### III. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT AS TO HER BREACH OF CONTRACT CLAIM

Defendants assert that somehow the manner in which Plaintiff ordered her Motion for Partial Summary Judgment constitutes a flaw worthy of summary judgment denial. Defendants offer no authority for the proposition and indeed, Plaintiff is aware of none, that holds that the order in which a party chooses to organize her Motion for Summary Judgment can constitute the grounds for denial of such motion.

Defendants are correct that breach of contract is a prerequisite to a bad faith claim. *See Poarch v. Alfa Mut. Ins. Co.*, 799 So. 2d 949, 953-954 (Ala. Civ. App. 2000). The evidence clearly reflects that Plaintiff is entitled to summary judgment as to her breach of contract claim.

The disability policy Defendants issued to Plaintiff provides that they will provide Plaintiff benefits when "you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and – you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury." *See* Exhibit C to Plaintiff's Evidentiary Submissions in Support of Her Motion for Partial Summary Judgment; Disability Policy BULLLTDAP1-53. Defendants' argument that Plaintiff fails to meet this definition because each of her diagnoses, "standing alone," is insufficient to deem her disabled, is characteristic of how they have wrongfully handled Plaintiff's case since she filed her original claim for benefits in May 2004.

It is noteworthy that Defendants' "[f]ailure to evaluate the totality of the claimant's medical condition" was one of the areas of concern noted in the Multistate Examination report, which addressed Defendants' claim handling practices for IDI and

group LTD policies.  *See* Exhibit M to Plaintiff's Evidentiary Submissions in Support of Her Motion for Partial Summary Judgment, Targeted Multistate Market Conduct Examination, pg. 8.  The report contains the following pertinent finding:

> The examination team identified instances in which claimants who suffered from multiple medical conditions were denied benefits as a result of the Companies' apparent failure to properly evaluate the cumulative effects of such conditions.  In some instances, the Companies' failure to properly evaluate such "co-morbid" conditions appeared to steam from an excessively narrow focus upon the specific medical condition for which benefits had originally been sought by the claimant.

Exhibit M to Plaintiff's Evidentiary Submissions in Support of Her Motion for Partial Summary Judgment, Targeted Multistate Market Conduct Examination, pg. 8.

Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment relies entirely on the proposition that any one of Plaintiff's numerous diagnoses, "standing alone," is insufficient to render her totally disabled pursuant to the terms of her policies.  *See* Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment, pgs 5-7.  Defendants state "Plaintiff seems to be of the impression that being diagnosed with a condition equals being disabled by that condition."

Plaintiff's numerous diagnoses are undisputed facts, as Defendants admittedly do not dispute any of her diagnoses.  *See* Connally Depo, pg 126.  Plaintiff's symptoms related to each of her diagnoses are likewise undisputed.  The fact that Plaintiff's ulcerative colitis causes her "a lot of pain" and requires her to remain in close proximity to a restroom is undisputed.  *See* Bullard Depo at 253.  The fact that, despite Plaintiff's attempts to control her ulcerative colitis by medicine, she still experiences painful flare-ups of the disease is undisputed.  *See* Bullard Depo at 254.  The fact that Plaintiff has had to endure surgery related to the herniated disk on her neck yet she still experiences pain is

5

undisputed. *See* Bullard Depo at 256-257. The fact that Plaintiff continues to suffer from four bulging disks in her back which require her to wear a back brace and apply electrical pulses from a Tens Machine remains undisputed. *See* Bullard Depo at 258-259. The fact that Plaintiff has had pins placed in her foot, she experiences pain related to complications from this surgery, and this pain makes it difficult for Plaintiff to stand or walk and impossible for Plaintiff to climb stairs remains undisputed. *See* Bullard Depo 250-251, 257-258. The fact that Plaintiff's cataplexy narcolepsy and hypersomnia with sleep apnea cause her to suffer from lack of concentration and pain and that these conditions are progressively worsening, despite their pharmacological treatment, is undisputed. *See* Bullard Depo at 251-252. The fact that Plaintiff suffers from bursitis, diverticulitis, arthritis, and fibromyalgia, which all cause her intense pain and suffering is undisputed. *See* Bullard Depo 250, 254, 259, 261. The fact that Plaintiff's TMJ causes her pain and is so progressed that not even a mouth piece will help is undisputed. *See* Bullard Depo at 257, 263.

Furthermore, the fact that two of Plaintiff's attending physicians indicated in their Attending Physician's Statements that Plaintiff could not return to work as a result of her diagnoses is undisputed. *See* Exhibit E to Plaintiff's Evidentiary Submissions in Support of Her Motion for Partial Summary Judgment. Finally, Dr. McKinney's follow-up letter to Defendant in which she stated that Plaintiff "is permanently unable to perform [a] full-time job of any kind secondary to her *multiple medical conditions*" remains undisputed. *See* Exhibit H to Plaintiff's Evidentiary Submissions in Support of Her Motion for Partial Summary Judgment.

Defendants attempt to dispute Dr. McKinney's medical opinion that Plaintiff is unable to return to any type of job by restricting Dr. McKinney's restrictions and limitations to only two of Plaintiff's numerous medical conditions. *See* Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment, pg 11. Defendants note that "Dr. McKinney … confirmed that Dr. Vergot 'adequately listed [Plaintiff's] limitations from her ulcerative colitis and rheumatoid arthritis[.]" *Id.* Dr. McKinney's opinion, as one of Plaintiff's attending physicians, that Plaintiff is disabled due to her *multiple medical conditions* remains undisputed. Furthermore, Dr. McKinney clearly stated: "As this is not my area of expertise, I am unable to give an opinion on her true limitation from [narcolepsy and fibromyaglia]. *You may benefit from discussion* with her rheumatologist, Dr. Donna Paul, or her sleep specialist, Dr. Reuben Richardson." Exhibit 23 to Unum Life's Evidentiary Submissions in Support of its Motion for Summary Judgment, February 22, 2005 letter from Dr. McKinney (UACL00417). Not only did Defendants fail to contact Dr. Paul or Dr. Richardson to discuss Plaintiff's true limitations from narcolepsy and fibromyalgia, Defendants failed to even obtain a copy of legible clinical data from Dr. Richardson. *See* Toney Depo pgs. 73-78.

Plaintiff has presented substantial evidence that she met the definition of disability as contained in her insurance policies due to her multiple illnesses. Defendants breached these insurance policies by refusing to provide Plaintiff benefits, despite her well-documented disability. Plaintiff is clearly entitled to summary judgment as to her breach of contract claim.

## IV. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT AS TO HER BAD FAITH CLAIM

Defendants assert that Plaintiff has failed "to submit any information that was not gathered that would have supported plaintiff's disability claim." As Plaintiff has amply set forth, her multiple medical conditions render her disabled pursuant to the terms of the policy and permanently unable to perform a full-time job of any kind. Defendants failed to fully investigate any one of Plaintiff's numerous medical conditions but rather attempted to limit her restrictions and limitations based on her individual conditions.

As Dr. McKinney stated, Plaintiff "is permanently unable to perform [a] full-time job of any kind secondary to her *multiple medical conditions*." A co-morbid review would have revealed that Plaintiff is, indeed permanently unable to perform any full-time job due to her multiple medical conditions and their resulting symptoms. Defendants failed to fully investigate Plaintiff's claim by failing to conduct a co-morbid review of Plaintiff's numerous conditions. *See* Connally Depo pg 173; Toney Depo pgs 114-116.

Furthermore, Defendants failed to adequately investigate all of Plaintiff's indicated medical conditions, even during their appellate review of her claim. Dr. Reuben Richardson was one of Plaintiff's attending physicians who indicated, in his attending physician's statement submitted with Plaintiff's claim for benefits in 2004, that Plaintiff was not released to work in her own occupation or in any occupation. *See* Exhibit E to Plaintiff's Evidentiary Submissions in Support of Her Motion for Partial Summary Judgment. Dr. Richardson submitted numerous pages of clinical data in support of Plaintiff's claim for benefits to Defendants on their appellate review of Plaintiff's claim. It is undisputed that out of the thirteen (13) pages of clinical data

submitted by Dr. Richardson, all were illegible yet Defendants did not contact Dr. Richardson for legible copies or for clarification. *See* Toney Depo pgs. 73-78.

In addition, documentation regarding Plaintiff's foot surgery was missing from her records on Defendants' appellate review. *See* Toney Depo, pgs 81. Despite the absence of this critical information, Defendants did not request any information regarding her foot surgery. *Id.* Defendants likewise did not make any requests to obtain Plaintiff's neurosurgeon's records, which were missing. *See* Toney Depo, pgs 80-81.

## V. DON STEPHENS' LETTER IS ADMISSIBLE AND WAS DISCLOSED TO DEFENDANTS EARLY IN THIS CASE

Defendants assert that "Don Stephens was not disclosed as an expert in this case pursuant to the Court's scheduling Order" and therefore his letter, submitted in support of Plaintiff's Motion for Partial Summary Judgment, is inadmissible. Assuming *arguendo* that Mr. Stephens is a litigation expert in this case, he was disclosed to Defendants on March 8, 2006. *See* Exhibit 2, Letter from Plaintiff's Counsel to Defendants' Counsel dated March 8, 2006 and Don Stephens' Letter (BULL0857). Section 8 of the Court's Amended Scheduling Order, issued November 20, 2006, provides that Plaintiff must disclose to Defendants the "identity of ANY person who may be used at trial to present evidence under Rules 701, 702, 703, or 705" by October 5, 2006 and that the parties must "comply fully with all requirements of Rule 26(a)(2) in regard to disclosure of expert testimony."

On March 8, 2006, Defendants were provided with a written report, in the form of a letter, prepared and signed by Don Stephens. *See* Exhibit 2 (BULL0857). This report contains Mr. Stephens' name, address and telephone number and a description of all the

9

documents used by Stephens in forming his opinion. Mr. Stephens was not "retained or specially employed to provide expert testimony in the case" and therefore the requirements of Fed. R. Civ. P. 26(a)(2) do not apply to his disclosure. Plaintiff has met all requirements of Fed. R. Civ. P. 26(a)(1) and therefore sufficiently disclosed Mr. Stephens' identity to Defendants prior to the October 5, 2006 deadline. Defendants' assertion that Mr. Stephens' letter is inadmissible is therefore clearly erroneous.

### VI.     UNUMPROVIDENT'S LIABILITY

Defendants assert that despite the fact that Unum Life has no employees and notwithstanding Judge DeMent's opinion in *Anderson v. Unum Life Insurance Company of America*, 414 F.Supp.2d 1079 (M.D. Ala. 2006), UnumProvident cannot be held liable for breach of contract of bad faith in this case. Plaintiff hereby incorporates the statement of facts and argument contained in Plaintiff's Opposition to Defendant UnumProvident Corporation's Motion for Summary Judgment as if fully set forth herein. Plaintiff also hereby incorporates the section of Plaintiff's Motion for Partial Summary Judgment entitled "The Relationship of Unum Life Insurance Company of America and UnumProvident Corporation" as if fully set forth herein. The issue of UnumProvident's liability has clearly been extensively briefed in this case.

Plaintiff therefore provides the following brief argument setting forth UnumProvident's clear liability in this case. Pursuant to the General Services Agreement executed by Unum Life and UnumProvident on December 29, 2000, UnumProvident contracted to provide the following pertinent services for Unum Life:

> 4. Claims
>     Provide comprehensive claims management services, including:
>     - Review claims and medical files, determine if claims are payable, maintain and search databases,

            interview doctors, attorneys, employers, and employees, and process claims for payment
- Answer inquiries (written and oral)
- Develop internal and external monthly reports (such as mortality profit reports, death records, state reports, and management reports)

5. Underwriting
    Provide comprehensive underwriting functions, including:
    a. Individual Policies
        - Determine whether applicant's request for coverage is accepted or rejected
        - Determine premiums that should be assessed (based on a review of medical, financial, occupational, avocation and lifestyle information submitted by applicants)
        - Determine the level of risk and the rate that a policy should be assigned
    b. Group Policies
        - Review proposals and forward them to appropriate issuing agent
        - Determine whether to issue policies to applicants (and if so, determine whether to assess a rated premium)
        - Assess and renew contracts and policies
        - Review medical files and research databases on an on-going basis

Exhibit 22 to Plaintiff's Evidentiary Submissions in Support of Its Opposition to Defendants' Motions for Summary Judgment.

The General Services Agreement further provides, in pertinent part, as follows:

UNUMProvident shall indemnify and hold harmless [Unum Life] from and against any fine, penalty, loss, damage, injury, claim, cost, expense (including reasonable attorneys' fees and other reasonable costs and expenses incident to any suit, action, investigation, claim or proceeding) or other liability (individually and collective, "Liabilities") to the extent it is finally determined by a court of competent jurisdiction or arbitrator that such Liabilities arise out of any act or omission of UNUMProvident in connection with the performance of services under this Agreement, if such acts or omissions are determined by such court to constitute:

a. the failure of UNUMProvident to perform its obligations under this Agreement;

      b. ordinary negligence of UNUMProvident or UNUMProvident's Associates, if such negligence has material adverse consequences to [Unum Life]; or

      c. gross negligence or willful misconduct of UNUMProvident or UNUMProvident's Associates (including any dishonest, fraudulent, or criminal acts or omissions, acting alone or in collusion with others).

*Id.*

Not only does the above quoted portion of the Services Agreement provide that UNUMProvident will perform Unum Life's claims management and underwriting responsibilities but it specifically provides that UNUMProvident will indemnify Unum Life for its acts or omissions related thereto. Furthermore, and as is discussed in Plaintiff's Motion for Partial Summary Judgment and Plaintiff's Opposition to Defendant UnumProvident Corporation's Motion for Summary Judgment, UNUMProvident employees handled Plaintiff's claim, all correspondence regarding Plaintiff's policies were printed on UNUMProvident letterhead and Plaintiff's claims were printed on UNUMProvident letterhead. UNUMProvident is clearly liable for breach of contract and bad faith in this case.

## VII.   CONCLUSION

Plaintiff has presented substantial evidence that she is entitled to summary judgment against both Defendants as to both her breach of contract and bad faith claims. Defendants' records related to Plaintiff's claim for benefits were clearly inadequate, as they were missing legible clinical data from Dr. Richardson and any clinical data related to Plaintiff's foot surgery. Defendants never conducted a co-morbid review of Plaintiff's claims, which would have revealed that a consideration of all of Plaintiff's medical conditions render her disabled pursuant to the terms of the policy. Plaintiff is entitled to summary judgment as to her breach of contract and bad faith claims.

                        Respectfully submitted,

                        /s/ Jenifer Champ Wallis_____
                        Jenifer Champ Wallis (WAL191)
                        Attorney for Plaintiff

OF COUNSEL:
Thomas O. Sinclair (SIN018)
Jenifer Champ Wallis (WAL191)
Campbell, Waller & Poer, L.L.C.
2100-A SouthBridge Parkway, Suite 450
Birmingham, AL 35209
(205).803-0051
Fax: (205).803-0053
E-mail: jwallis@cwp-law.com

## CERTIFICATE OF SERVICE

     I hereby certify that on February 26, 2007, I electronically filed the foregoing pleading with the Clerk of the court using the CM/ECF system which will send notifications of such filing to the following:

dfink@handarendall.com
hmorrissette@handarendall.com
jjohnson@handarentdall.com

                        /s/Jenifer Champ Wallis_____
                        Jenifer Champ Wallis (WAL191)