# EXHIBIT

# "1"

EXHIBIT "1"



2100-A Southbridge Parkway • Suite 450
Birmingham • Alabama 35209
205 803-0051 • FX 205 803-0053

THOMAS O. SINCLAIR
tsinclair@cwp-law.com

March 8, 2006

**VIA Hand Delivery**
Douglas W. Fink
Hand Arendall, LLC
PO Box 123
Mobile, AL 36601

    Re:    **Betty Bullard v. UnumProvident Corporation, et. al.**
             **U.S. District Court, Middle District of Alabama**
             **Civil Action No.: 2:05-CV-1217-VPM**

Dear Mr. Fink:

    Enclosed you will find documents bates numbered BULL0001 to BULL1229. These documents are being produced without waiver of our prior objections to your deposition notice.

                                      Sincerely,

                                      Thomas O. Sinclair

TOS/syc

**Vocational Rehabilitation Service**



# Alabama Department of
# REHABILITATION SERVICES



**Bob Riley**
GOVERNOR

**To Whom It May Concern,**

Copy of letter from <u>Don Stephens, Counselor for the Alabama Department of Rehabilitation Services, stating</u> that by the Alabama Department of Rehabilitation's <u>standards I'm disabled and they cannot help me.</u>

Based on conversations with Ms. Bullard, reviewing her treating physician's statements and considering her past job duties, this counselor certifies that Ms. Bullard has permanent disabilities that will prevent her from returning to work. She has been unable to work for well over 12 months and there is no expected improvement for her conditions anytime in the immediate future.

As noted in the medical and psychological documentation, Ms. Bullard has been diagnosed with several disabling conditions. Due to the combination of all of the disabilities along with side effects from the treatment that she is receiving, she has severe limitations to performing any work tasks. Both exertional and non-exertional capacities have been greatly impaired. She is unable to perform jobs that have <u>any</u> physical requirements. She is restricted from meeting the seven strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling), and she experiences extreme, chronic fatigue and exhaustion. She is not capable of performing sedentary jobs, even with her extensive work experience. She has irregular sleeping patterns due to both pain and the narcolepsy. Again, the fatigue and exhaustion factors interfere with concentration, memory loss and proper interaction with co-workers, supervisors and others. It should be noted that all of these problems also interfere with her activities of daily living and have limited her independence and quality of life.

In this counselor's opinion, Ms. Bullard's disabilities prevent her from working on a regular and continuing basis and from performing any substantial gainful activity.

With Ms. Bullard's permission, please contact me with any further questions.

Sincerely,

Don Stephens, M.Ed., CRC
Counselor
Vocational Rehabilitation Service

BULL0857

*PROVIDING SERVICES TO ALABAMIANS WITH DISABILITIES*

2127 East South Boulevard ■ Montgomery, AL 36116-2456 ■ 334-288-0220 ■ 1-800-441-7578
■ Fax: 334-281-1388 ■ www.rehab.state.al.us

# EXHIBIT

# "2"

EXHIBIT "2"

BETTY BULLARD

vs.

UNUMPROVIDENT CORPORATION;
UNUM LIFE INSURANCE COMPANY
OF AMERICA; GENEX SERVICES, INC.

---

DEPOSITION OF LATISHA L. TONEY

JANUARY 25, 2007

---

CATHY H. KERLEY, RPR
HALL & ASSOCIATES
1010 MARKET STREET, SUITE 402
CHATTANOOGA, TENNESSEE  37402
423-267-4328

### Latisha Toney - Direct by Ms. Wallis — 113

nurse with years of experience, do you think that those records should have been reviewed?

MR. MORRISSETTE: Object to the form.

A    I pointed out that they were not present and I left it to the physician and the claims handler to decide whether they needed those files or not.

Q    I see that you turned UACL00200 aside, which is a letter sent to UnumProvident by Dr. McKinney. Do you recall reviewing that in your review of Betty Bullard's claim?

A    Yes

Q    Did you indicate that letter in your medical response?

A    Yes.

Q    Did you consider that when you decided -- scratch that.

Did you consider that in your analysis that some functional loss was supported?

MR. MORRISSETTE: Object to the form.

A    My analysis was of the medical information that was there. So I guess in response to your question, that would be yes.

### Latisha Toney - Direct by Ms. Wallis — 114

MR. MORRISSETTE: When we get to a stopping point, can we take a rest room break?

MS. WALLIS: Yes. Hang on just a second.

I think these are repeats of documents I've already gone over. This is Dr. Richardson's again. We can take a break.

(Thereupon, a brief recess was taken.)

BY MS. WALLIS:

Q    Looking at all of the documents that you reviewed in your review of the claimant's file, I did not see a multidisciplinary review. Was a multidisciplinary review done that you saw?

MR. MORRISSETTE: Object to the form.

A    In my review of the file, I noted that she had multiple conditions.

Q    Does UnumProvident do something called a multidisciplinary review?

A    Yes.

MR. MORRISSETTE: Object to the form.

Q    Was such a multidisciplinary review done in Ms. Bullard's case?

### Latisha Toney - Direct by Ms. Wallis — 115

A    When I reviewed the file, I noted that she had more than one condition.

Q    What is a multidisciplinary review? Does that indicate that more than one person sits down and reviews a file together? What is a multidisciplinary review?

A    I don't know that there's anything written down as to what a multidisciplinary review is. My understanding of it is that if there's more than one condition, we make the physicians aware of it. When the file is sent forward after us, another decision is made as to which direction that file will go in.

Q    Is there something like a round-table discussion that's ever conducted on claims?

MR. MORRISSETTE: Object to the form.

A    I have heard of round table. It's not something that I did in regards to this file.

Q    Have you ever seen a file that had a write-up from a multidisciplinary review or a round-table discussion?

A    I have seen that in some files, yes.

Q    Did you see such a document in

### Latisha Toney - Direct by Ms. Wallis — 116

Ms. Bullard's file?

A    I don't remember.

Q    Do you want to go back through all the documents to see if such a document exists?

A    In my most recent review of the information, I do not recall seeing a round-table review in the file.

Q    If there was a round-table review in the file, would that be something that you would consider?

A    Outside of noting that it was -- outside of being aware that it was present, that would be it.

Q    It wouldn't have any influence on your medical summary or your opinion of the case?

A    No.

Q    Have you ever taken part in any multidisciplinary review?

A    Are you referring to the round-table review?

Q    Yes.

A    No, I haven't.

Q    What type of claims get round-table reviews?

A    I don't know.

Latisha Toney - Direct by Ms. Wallis    69

1  conditions that you were reviewing in your review
2  of her claim?
3  A        I reviewed whatever was outlined in
4  the medical information provided in the file at
5  that time.
6  Q        Where would you put any additional
7  diagnoses in this report?
8  A        If her physicians made mention of a
9  diagnosis in her visits to them, I would have
10 listed it there.
11 Q        Would you have listed all of the
12 diagnoses contained in the attending physicians'
13 statements?
14 A        Most of the time I do.
15 Q        Is that part of your job
16 responsibilities to make sure to list every
17 diagnosed condition?
18           MR. MORRISSETTE:  Object to the
19 form.
20 A        Yes.
21 Q        I am going to refer you to document
22 UACL00022, which is the claimant's statement
23 submitted with her disability claim.  Would you
24 read the paragraph that the claimant provided, in
25 this case Betty Bullard.

Latisha Toney - Direct by Ms. Wallis    70

1  A        I have been diagnosed as having
2  narcolepsy, sleep apnea, ulcerative colitis, high
3  blood pressure.  I have had surgery on my neck
4  for a herniated disc, surgery on both feet, and
5  still need surgery on feet and still have two
6  bulging discs in my back that hurt.  Have
7  arthritis, bursitis, and TMJ, fibromyalgia.
8  Q        Now I'm going to refer you back to
9  Exhibit 3 where you filled in your claimant
10 report section.  Isn't that the same paragraph
11 verbatim?
12 A        Yes.
13 Q        Where on this sheet did you indicate
14 additional diagnoses provided by her attending
15 physicians in her attending physicians'
16 statements?
17 A        Repeat the question, please.
18 Q        Where on your medical response sheet
19 did you provide additional diagnoses provided by
20 her physicians in their attending physicians'
21 statements?
22           MR. MORRISSETTE:  Object to the
23 form.
24 A        In the 2/26/04 visit with Dr. Don
25 Thornbury, his impression was improving ankle

Latisha Toney - Direct by Ms. Wallis    71

1  pain.  In the 3/10/04 visit with McKinney, that
2  assessment was GAD with panic.  In the 4/7/04
3  visit with McKinney, he made assessment of
4  candidal dermatitis.  Whatever the physician
5  identified as the assessment or impression,
6  that's what I tried to put in the review.
7           MS. WALLIS:  Would you please read
8  back her answer for me, please.  I didn't get the
9  full list.
10          (Thereupon, the requested
11 portion of the record was read back as follows:
12 "Answer:  In the 2/26/04 visit with Dr. Don
13 Thornbury, his impression was improving ankle
14 pain.  In the 3/10/04 visit with McKinney, that
15 assessment was GAD with panic.  In the 4/7/04
16 visit with McKinney, he made assessment of
17 candidal dermatitis.  Whatever the physician
18 identified as the assessment or impression,
19 that's what I tried to put in the review.")
20 BY MS. WALLIS:
21 Q        I'm going to show you what is Bates
22 number UAMS00032.  Would you please look -- well,
23 I'll go ahead and say this is an attending
24 physician statement submitted by Dr. Rachel
25 McKinney.  What are these diagnoses listed by

Latisha Toney - Direct by Ms. Wallis    72

1  Dr. McKinney?
2  A        I don't recognize them all off the
3  top of my head.
4  Q        Are those ICD9 codes that she
5  listed?
6  A        Yes.
7  Q        Where in this medical response did
8  you look up those ICD9 codes and provide all of
9  those diagnoses?
10          MR. MORRISSETTE:  Object to the
11 form.
12 A        My review doesn't show that.
13 Q        But you testified that part of your
14 job responsibilities are to list all of the
15 diagnoses of a claimant; correct?
16 A        Yes.
17 Q        I'm going to try not to paper you,
18 not to give you too many of these copies.  Is
19 that mine or yours?
20 A        These are the two that you just
21 passed to me.
22 Q        Okay.  Thank you.  Moving down to
23 your next subject, looking at your medical
24 response, again clinical data reviewed, will you
25 read that paragraph.  Just the paragraph, not the

### Latisha Toney - Direct by Ms. Wallis — Page 73

1  list underneath it of the doctors, just what
2  clinical data you reviewed.
3  A         A full file no-deference review of
4  legible clinical data was performed with focus on
5  records immediately prior to and since the date
6  in question.
7  Q         What is a full file no-deference
8  review?
9  A         We review all of the medical
10 information that's included in the file without
11 weight being given to those medical reviews done
12 prior to our review.
13 Q         But are those reviews included in
14 the full file?
15 A         Yes.
16 Q         Can you request additional documents
17 to be put into the file?
18 A         What do you mean can we -- what do
19 you mean can we request additional documents?
20 Q         Well, earlier in your deposition you
21 read the paragraph relating to key
22 responsibilities of a nurse clinical consultant
23 that states arrange for, obtain, and/or interpret
24 medical reports. And you stated that that was
25 correct; correct?

### Latisha Toney - Direct by Ms. Wallis — Page 74

1  A         Yes.
2  Q         Are you able to request additional
3  medical documents?
4  A         We would make note of -- if there's
5  mention of medical that's not there, we identify
6  for the claims person whether that information is
7  there or not.
8  Q         What happens to illegible data?
9  A         The physician gets an opportunity at
10 interpreting the illegible data.
11 Q         I am going to be referring to
12 documents Bates number UAMS00135 through
13 UAMS00148. This is clinical data provided by
14 Dr. Richardson. Before I pull those out for you,
15 isn't it true that Dr. Richardson was one of the
16 attending physicians who indicated that Betty
17 Bullard could not be released to work in any
18 occupation?
19           MR. MORRISSETTE: Object to the
20 form.
21 A         I have note in this review that he
22 is one of her treating physicians.
23 Q         I'm going to show you what has been
24 marked UAMS00019. And you indicated that you
25 would review the attending physician's statement

### Latisha Toney - Direct by Ms. Wallis — Page 75

1  in your review of a claim. This is
2  Dr. Richardson's attending physician statement.
3  Would you look and see if he's indicated that he
4  has released her to work.
5  A         It states no, she has not been
6  released to work.
7  Q         Would you want to give special
8  attention to the records of those physicians who
9  indicated that based on their diagnoses the
10 claimant cannot return to work?
11           MR. MORRISSETTE: Object to the
12 form.
13 A         Yes. I would want to pay attention
14 to those things.
15 Q         I'm going to show you UAMS00148. It
16 is clinical data provided by Dr. Reuben
17 Richardson. If you could please read that page
18 in its entirety. Just the -- obviously not his
19 address at the top, but his clinical notes. Are
20 you able to read his clinical notes in their
21 entirety?
22 A         No.
23 Q         You don't have to read these then
24 since you can't.
25           Here is UAMS00147, clinical data

### Latisha Toney - Direct by Ms. Wallis — Page 76

1  provided by Dr. Reuben Richardson. Can you read
2  this page of clinical data in its entirety?
3  A         Not in its entirety, no.
4  Q         UAMS00146, clinical data provided by
5  Dr. Reuben Richardson, can you read this page of
6  clinical data in its entirety?
7           MR. MORRISSETTE: Object to the
8  form.
9  A         No.
10 Q         UAMS00145, clinical data provided by
11 Dr. Reuben Richardson, can you read this page of
12 clinical data in its entirety?
13           MR. MORRISSETTE: Same objection.
14 A         No.
15 Q         Without going through every single
16 document that I have in this stack, which I'm
17 going to pass them to you, represent
18 Dr. Richardson's clinical data from 7/98 through
19 5, 2004. Is there any document provided by
20 Dr. Reuben Richardson that you can read in its
21 entirety?
22           MR. MORRISSETTE: Same objection.
23 A         It doesn't appear so.
24 Q         Okay. Thank you.
25           Can I go off the record for a

Latisha Toney - Direct by Ms. Wallis      77

1  second.
2         (Thereupon, an off-the-record
3  discussion was held.)
4         MS. WALLIS: Henry, do you object to
5  my labeling as Exhibit 6 these documents we've
6  been discussing, UAMS00135 through UAMS00148?
7         MR. MORRISSETTE: No. I think we
8  can agree that references to the Bates stamp
9  numbers particularly from the claim file we
10 produced would suffice.
11        MS. WALLIS: Very well.
12        MR. MORRISSETTE: Try our best to be
13 clear as to which ones are which.
14              (Thereupon, the Documents
                 Bates Nos. UAMS00135
15               through UAMS00148 were
                 marked Exhibit No. 6 to
16               the deposition of Ms.
                 Toney and retained by
17               counsel.)
18 BY MS. WALLIS:
19 Q       Referring back to your medical
20 response, which is Exhibit 3, where in this
21 medical response do you indicate that you
22 requested additional documents from Reuben
23 Richardson?
24 A       It doesn't.
25 Q       Did you contact Dr. Richardson

Latisha Toney - Direct by Ms. Wallis      78

1  regarding Betty Bullard's claim at all?
2  A       My duties were to prepare the file
3  for physician review.
4  Q       Great, but did you contact
5  Dr. Reuben Richardson?
6  A       No.
7  Q       You stated earlier that if there is
8  illegible data in a claim file, you would contact
9  the physician and give them the opportunity to
10 clarify that data. Is that not correct?
11        MR. MORRISSETTE: Object to the
12 form, misstates testimony.
13 A       I stated the physician would have an
14 opportunity to review the information, meaning
15 the physicians with UnumProvident.
16        MS. WALLIS: Will you please --
17 we're going to take a break. Can you look back
18 through that to find what her answer was, it was
19 a long time ago, as to which physician?
20        MR. SINCLAIR: Let's go off the
21 record.
22              (Thereupon, a brief recess was
23 taken.)
24 BY MS. WALLIS:
25 Q       Before we took a break you indicated

Latisha Toney - Direct by Ms. Wallis      79

1  that despite the fact you couldn't read
2  Dr. Richardson's clinical data, you did not
3  contact him for additional copies or
4  clarification; is that correct?
5         MR. MORRISSETTE: Object to the
6  form.
7  A       Yes.
8  Q       Did you contact the claimant to let
9  her know that information submitted with her
10 disability claim was illegible?
11 A       No.
12 Q       Did you make any indication
13 whatsoever that the clinical data provided by
14 Dr. Richardson was illegible?
15        MR. MORRISSETTE: Object to the
16 form.
17 A       No.
18 Q       One of Betty Bullard's diagnoses was
19 arthritis; correct? You have it listed in your
20 medical response; is that correct?
21 A       Yes.
22 Q       Dr. Paul is indicated as Betty
23 Bullard's rheumatologist. Is that also correct?
24 A       Yes.
25 Q       Did you review clinical data

Latisha Toney - Direct by Ms. Wallis      80

1  submitted by Dr. Paul?
2  A       Yes.
3  Q       Did you review clinical data
4  submitted from all of Betty Bullard's attending
5  physicians?
6         MR. MORRISSETTE: Object to the
7  form.
8  A       All of the physicians that were in
9  the file at the time.
10 Q       Any physician indicated in the file,
11 you would have reviewed their clinical data;
12 correct?
13 A       Yes.
14 Q       Why then do you indicate on page two
15 of your medical response that documentation from
16 Dr. Patrick Ryan, the neurosurgeon, is not
17 included in the submitted information?
18 A       My statement was that documentation
19 from Dr. Ryan does not appear to have been
20 included in the submitted information.
21 Q       Did you review any clinical data
22 from Dr. Patrick Ryan, the claimant's
23 neurosurgeon?
24 A       It doesn't look like his data was in
25 the file at the time I reviewed it.

Latisha Toney - Direct by Ms. Wallis    81

1   Q       Did you make any requests to obtain
2   his data?
3   A       I noted that it was not there.
4   Q       But did you make any requests to
5   obtain it?
6   A       No.
7   Q       Did you notify the claimant that her
8   file was missing medical or clinical data?
9   A       No.
10  Q       You also note that specific details
11  regarding Betty Bullard's reported foot surgery
12  is not included; is that correct?
13  A       Yes.
14  Q       Did you request any documentation,
15  clinical data regarding her foot surgery?
16  A       No.
17  Q       Did you notify the claimant that her
18  file was missing medical documentation regarding
19  her foot surgery?
20  A       No.
21  Q       Did you do a complete and thorough
22  investigation of Betty Bullard's claim?
23          MR. MORRISSETTE: Object to the
24  form.
25  A       I reviewed the medical information

Latisha Toney - Direct by Ms. Wallis    82

1   that was contained in the file at the time I
2   reviewed it.
3   Q       Did you do a complete and thorough
4   review of Betty Bullard's claim?
5           MR. MORRISSETTE: Object to the
6   form.
7   A       I reviewed the medical information
8   that was in the file at the time of my review.
9   Q       But did you conduct a complete and
10  thorough review?
11  A       Of the medical information --
12          MR. MORRISSETTE: Object to the
13  form.
14  A       -- yes.
15  Q       Of all of Betty Bullard's medical
16  information, it's your testimony that you
17  conducted a complete and thorough review of all
18  of Betty Bullard's medical information related to
19  her claim for disability benefits?
20          MR. MORRISSETTE: Object to the
21  form.
22  A       Yes.
23  Q       But you indicate that you couldn't
24  even read Dr. Richardson's clinical data from
25  1998 through 2004. Isn't that also correct?

Latisha Toney - Direct by Ms. Wallis    83

1           MR. MORRISSETTE: Object to the
2   form.
3   A       I prepared the file for our
4   physician to review. Our physician would have
5   had an opportunity to deal with that issue once
6   he got the file.
7   Q       But your testimony was that you
8   could not read Dr. Richardson's records entirely;
9   isn't that correct?
10          MR. MORRISSETTE: Object to the
11  form.
12  A       Yes.
13  Q       And your testimony is still that you
14  conducted a complete and thorough review of all
15  of the medical records contained in Betty
16  Bullard's file?
17  A       Of the legible clinical data, yes.
18  Q       Only the legible clinical data?
19  A       In my preparation of the file for
20  the physician, yes.
21  Q       So does illegible data become
22  irrelevant?
23  A       No, it doesn't. The physician will
24  have an opportunity -- our physician will have an
25  opportunity to investigate that data further.

Latisha Toney - Direct by Ms. Wallis    84

1   Q       Can you show me in the file where a
2   request for that data was made?
3   A       No, I can't.
4   Q       Was such a request made?
5           MR. MORRISSETTE: Object to the form
6   what data.
7   Q       Dr. Richardson's illegible data.
8   A       I don't know.
9   Q       As we stated a couple of minutes
10  ago, one of Betty Bullard's diagnoses was
11  arthritis and her rheumatologist was Dr. Paul;
12  correct?
13  A       Yes.
14  Q       I see two indications on here in
15  your clinical summary of records provided by
16  Dr. Paul that you reviewed, 6/22/04 and 10/14/04.
17  Do you see those two --
18  A       Yes.
19  Q       -- notations?
20          Do you see anywhere else in your
21  clinical summary that you reviewed any records
22  from Dr. Paul?
23  A       My review doesn't list every visit
24  that they had with every physician. It tries to
25  focus on a specific period of time.